**RECEIVED**
Jan 2, 2008
JAN - 2 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

JAN - 2 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT,

Plaintiff(s) Cynthia D Benson
7387 S Southshore Dr Apt 438
Chicago Il 60649          Case No. ~~07CV7110~~

v.                                        Judge 07C 7100

John E Potter                             Ust. 110
Defendant(s) Postmaster General
United States Postal Services
Great Lakes Area

**AMENDED COMPLAINT**

I am adding to this file case the my
formal complaint of my disability case
with the EEoc & Postal Serivce grievance

Cynthia D Benson

| U. S. Postal Service **EEO INVESTIGATIVE AFFIDAVIT (COMPLAINANT)** | | Page No. **1** | No. Pages **13** | Case No. **4J-604-0045-07** |
|---|---|---|---|---|
| 1. Affiant's Name (First, Middle, Last) Cynthia Diane Benson | | | 2. Employing Postal Facility Matteson Post Office | |
| 3. Position Title Distribution Clerk | 4. Grade Level **5** | 5. Postal Address and Zip + 4 **60443** | | 6. Unit Assigned Not Applicable |

### Privacy Act Notice/USPS Standards of Conduct

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

### Important Information Regarding Your Complaint

This PS Form 2565-A, EEO Investigative Affidavit (Complainant), and the other form mentioned below, are being provided for you to use to fully respond to the accompanying questions. Mail or deliver your completed statement to the EEO complaints investigator within 15 calendar days of the date you received the forms. Use PS Form(s) 2569, EEO Investigative Affidavit (Continuation Sheet), as needed, to complete your written statement. Remember to number the top of each page and sign and date the bottom of each page of your statement. If you return your statement by mail, the return envelope must be postmarked on or before the 15th calendar day after the date that you received the affidavit forms.

Failure to complete your statement and return the forms within the allotted time period could result in your complaint being dismissed based upon your failure to proceed. EEOC complaints processing regulation, 29 C.F.R. 1614.107(a)(7), states, in part, [A complaint may be dismissed] "Where the agency has provided the complainant with the written request to provide relevant information or otherwise proceed with the complaint, and the complainant has failed to respond to the request within 15 days of its receipt, or the complainant's response does not address the agency's request, provided that the request included a notice of the proposed dismissal."

7. Statement A(Continue on Form 2569 if additional space is required)

**Specific issue(s):** The Complainant alleges discrimination based on Physical Disability (Bilateral Carpal Tunnel Syndrome) in that she has been subjected to harassment since approximately August 2001 regarding, including but not limited to, derogatory comments; reduction in work hours; sick and annual leave requests; lunch time lengthened; monthly doctor visits; worked outside of restrictions; worked less hours than others; and on December 30, 2006, she received a Notice of Removal charging her with unacceptable conduct.

Complainant alleges that this activity is discrimination based on Physical Disability

1. Do you have a Representative? If yes, please state his/her name, position title, and address with zip + 4.

   My representative's name is Diana Hayes who is Vice President of the American Postal Workers Union, South Suburban located at Post Office 188, Bedford Park, Illinois 60499

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature *Cynthia D Benson* | Date Signed **5/25/07** |
|---|---|

PS Form 2565-A, March 2001

 **UNITED STATES POSTAL SERVICE**®

EEO Investigative Affidavit *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| 2 | 13 | 4J-604-0045-07 |

2.  **Please state your name, address, and current position/status with the USPS.**

My name is Cynthia Diane Benson of 7337 South South Shore Drive Apartment 1430, Chicago, Illinois 60649-3539. I am currently in a removal status from my position as a Distribution Clerk from the United States Postal Service.

3.  **Please identify your current supervisor with the USPS, including telephone number and email address, if known.**

My supervisor's name is Charrise Jackson who can be reached at (708) 748-8630. I do not have an email address for her.

4.  **Was a grievance filed on any incidents covered in the accepted claim?**
    a.  If so, please note the grievance(s) status and include documentation of any grievance activity to date.

I filed a grievance on the notice of removal. I have been informed by my union steward's secretary that the grievance has been moved to the arbitration process and is still pending resolution. I have enclosed a copy of my grievance packet which was submitted on January 13, 2007 (see Exhibit A - Grievance).

5.  **Was an internal investigation conducted for the issue of harassment?** If so, please state what the findings were and submit a copy of any documentation regarding the internal investigation, if available.

No internal investigation was conducted for the issue of harassment.

6.  You have stated that you were discriminated against in part due to a **Physical Disability.** Please be aware that a *disability* is a physical or mental impairment, which <u>substantially limits</u> one or more major life activities such as walking, seeing, hearing, speaking, breathing, learning, and working. (29 C.F.R. 1614.203(b0 and 29 C.F.R. 1630). For purposes of this complaint, you MUST identify your specific disability and limitations imposed by that disability and how it <u>substantially limits</u> one or more life activities as related to employment.

    a.  **Please describe the medical condition you have alleged.**

I have been diagnosed with bilateral carpal tunnel syndrome, and low back syndrome resulting from repetitive hand motion from my job as a distribution clerk/mail carrier. The symptoms eventually worsened to include the condition of bilateral epicondylitis as a result of my employer's failure to modify my work duties to comply with my doctor's recommendations.

    b.  **Is the condition permanent or temporary? How long is it expected to last?**

My condition is permanent.

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

*Cynthia D. Benson.*

| Date Signed |
|---|
| 5/25/07 |

Form 2569, March 2001


**UNITED STATES POSTAL SERVICE ®**

EEO Investigative Affidavit *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|----------|-----------|-----------|
| 3 | 13 | 4J-604-0045-07 |

c. Has the condition been diagnosed by any health care provider? If so, when was it diagnosed?

My condition has been diagnosed by four doctors, Doctor Maria Martinez in August 2001, Doctor John Sonnenberg on June 12, 2002 and Doctor Jay M. Brooker on February 25, 2003, and Doctor John Fernandez, Orthopedic Hand Specialist on June 29, 2004 (see Exhibit B –Medical Records).

d. What was the diagnosis? What is the prognosis for your recovery? (Please provide a copy of any medical records showing the diagnosis and most recent prognosis.

The diagnosis was bilateral carpal tunnel syndrome, lower back syndrome and subsequently bilateral epicondylitis. The doctor's prognosis is that my condition is permanent. (See Exhibit B – Medical Records).

e. Does the condition substantially limit or restrict your ability to perform any major life activities, such as caring for yourself (for instance, brushing your teeth, bathing, shaving, dressing, grocery shopping, preparing meals, using a computer, etc.), performing manual tasks, working, walking, standing, bending, stooping, twisting, reaching, pushing, pulling, climbing, lifting, eating, seeing, hearing, speaking, breathing, sleeping, learning, thinking, concentrating, and/or controlling body waste?

　　i. If so, please describe in detail what, if any, activities are affected, how they are affected, and to what extent and how severely they are affected.

My condition substantially limits me from performing the duties of Distribution/Window Clerk which require me to sort/case, distribute and lift mail. Each of these activities require some form of repetitive motion such as grasping, reaching overhead, extending my wrist, elbows or shoulders or moving mail from one position to the next at a rapid pace. Any such repetitive motion exacerbates my carpal tunnel syndrome or epicondylitis conditions. Whenever I engage in these activities my hands and wrists began to ache, and I experience sharp and excruciating pains in my neck and lower back. In severe cases I am unable to walk upright. These conditions occur whenever I engage in any form of repetitive movement of my hands, wrist, arms, shoulders etc. and any lifting of weights close to the restricted weight of 8 – 10 lbs.

f. If the limitations and restrictions you experience only occur under certain circumstances, please explain in detail what those circumstances are and how often they occur.

The limitations and restrictions primarily occur when I am engaged in repetitive motions of my hand, wrist, arms, elbows, shoulders, including twisting and turning.

g. Did you provide the Postal Service with medical documentation and/or records identifying and/or describing your alleged impairment, medical condition, and/or limitations?

　　i. If so, please state when you provided any such medical documentation and/or records.

I provided the United States Postal Service with over thirty medical forms documenting my impairment beginning in August 30, 2001 to November 20, 2006 (see Exhibit B – Medical Records).

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

*Cynthia D Brown*

Date Signed
5/25/07

PS Form 2569, March 2001


**UNITED STATES POSTAL SERVICE®**

**EEO Investigative Affidavit** *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| 4 | 13 | 4J-604-0045-07 |

ii. Also, please identify the Postal Service Management Official to whom you provided any such medical documentation and/or records, including his/her (or their) name, current position titles, business addresses, telephone numbers, and email addresses.

The medical documentation was submitted to the following Postal Service Management Officials located at 20650 S. Cicero Ave (708) 748-8630:  1. Marc Sammons, Supervisor Customer Service, 2. Shanun Jackson, Supervisor Customer Service, 3. Linette Johnson, Supervisor Customer Service, 4. Charrise Jackson, Supervisor Customer Service and 5. Carmen Kimble, Postmaster. Email addresses are not available.

h. Please provide copies of the medical documentation and/or records identifying and/or describing your alleged impairment, medical Condition, and/or limitations, including, but not limited to, doctor's notes or letters, Family and Medical Leave Act (FMLA) certification, workers' compensation records, rehabilitation records, Department of Veteran Affair's records, etc.

See attached Exhibit B – Medical Records

I. Are you currently undergoing any treatment and/or taking any medication(s) to help with your alleged medical condition and/or impairment?

i. If so, please explain in detail the treatment you are undergoing and the medications you are taking.

I am currently on a home exercise hand therapy program.  I am also required to wear a hand/wrist band and an elbow band as needed when conditions flare up and take Tylenol to relieve pain.

ii. Please state whether there are times when the treatment and/or medications are less effective, and if so, what effect does this have on you?

The treatments or medications are less effective whenever I am engaged in repetitive hand, arm, wrist, and shoulder motions such as grasping, throwing, reaching, pulling, twisting, and lifting packages over 8 to 10 pounds.

iii. Please explain in detail what, if any, side effects or disadvantages there are to such treatment and/or medication(s)?

There are times when the pain is so excruciating that the medication has little or no effect on relieving my pain.  Since the pain is a result of my damaged nerve the medication generally does not provide relief from the pain.

j. Notwithstanding the medical condition or physical impairment that you have alleged, were you able to perform the essential functions of your position with the Postal Service with or without reasonable accommodation? Please explain your answer in detail and be sure to include in your answer a description of the functions that you were unable to perform.

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Date Signed  5/25/07

Form 2569, March 2001


**UNITED STATES POSTAL SERVICE** ®

**EEO Investigative Affidavit** *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| 5 | 13 | 4J-604-0045-07 |

I am unable to perform my job duties without reasonable accommodations as recommended by my doctor. My job duties require me to repetitively lift, case, sort, twist, or bend using my hands, arms, wrists and shoulders, activities that are strictly prohibited for my conditions. My medical condition requires permanent limited duty accommodations based on my required restrictions.

k. Are you currently alleging disability discrimination for being denied an accommodation for your medical condition or impairment?

I am alleging that I have been discriminated against based on my disability.

    i. If so, did you request accommodations for your alleged medical condition or impairment? Did you make the request in writing? To whom? When? Did you make the request verbally? To whom? When? Please provide a copy of your request for accommodation if it was in writing. What was the response you received? If it was in writing, please produce a copy of it.

    I have repeatedly requested accommodations for my medical impairment. Over thirty requests were submitted in writing during the period of August 30, 2001 to November 20, 2006. The medical documentation was submitted to the following Postal Service Management Officials located at 20650 S. Cicero Ave (708) 748-8630:   1. Marc Sammons, Supervisor Customer Service, 2. Shanun Jackson, Supervisor Customer Service, 3. Linette Johnson, Supervisor Customer Service, 4. Charrise Jackson, Supervisor Customer Service and 5. Carmen Kimble, Postmaster. Verbal request were also made to the above mentioned people during the same time frames. Documentation of the request for accommodations is provided in Exhibit B – Medical Reports. I received numerous Limited Duty Job Offer Assignment form in response to my request for accommodations (see attached Exhibit C – Limited Duty Job Offer Assignment).

    ii. Are you alleging discrimination because you contend that USPS Management did not engage in the interactive process with you concerning an accommodation? If so, please explain.

    I contend that the United States Postal Service Management did not engage in the interactive process with me concerning my accommodations according to the American Disability Act. Management failed to converse directly with me concerning my thoughts or suggestions regarding reasonable work accommodations based on my nineteen years of experience with the Postal Service. In addition management failed to consult with any local or state rehabilitation agencies or organizations representing or providing services to individuals with disabilities Management also failed to contact the job accommodation network which helps employees make individualized accommodations. Finally, they consistently failed to provide a permanent job modification in compliance with my doctors recommended medical restrictions.

    iii. Please state whether you appeared before the District Reasonable Accommodation Committee (DRAC) and, if so, please state when you appeared before the DRAC, and provide copies of documents regarding the DRAC review process.

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

*[signature: Cynthia D. Benson]*

Date Signed 5/25/07

PS Form 2569, March 2001



**UNITED STATES POSTAL SERVICE**®

**EEO Investigative Affidavit** *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| 6 | 13 | 4J-604-0045-07 |

1. What was the accommodation you requested from DRAC? Please produce a copy of all documents you submitted to DRAC.
2. What was DRAC's response to you?
3. If DRAC denied your requested accommodation, please state the reason DRAC gave you. Please produce a copy of any correspondence you received.
4. Do you believe the reason DRAC gave you was false? If so, please state why it was false and produce any documents which support your answers.
5. Are you alleging discrimination because you contend that DRAC did not engage in the interactive process with you concerning an accommodation? If so, please explain.

I did not appear before the District Reasonable Accommodation Committee (DRAC).

IV. Please explain in detail how you were harmed by the alleged denial of the accommodation.

My bilateral carpal tunnel escalated to a worse condition because management failed to provide me with a permanent modified work schedule that adhered to my doctor's recommendations. More therapy was required because I was consistently performing duties outside of restrictions. Management neglected to provide me with a permanent limited duty job assignment, leaving me in a perpetual state of temporary job fluctuation which failed to meet my medical requirement. A permanent job assignment would have stabilized my income (preventing me from giving up my apartment to move home with my mother) and it would have eliminated the need for the frequent doctor visits, as well as reduced the mental anxiety and stress that I endured as a result of loss wages. A permanent job assignment finally would have eliminated the verbal and mental abuse that I experienced and suffered directly from management.

i. Do you believe that the management official(s) you have identified was (were) aware of your alleged impairment and/or medical condition when you allege that he/she/they discriminated against you?

   i. If so, please explain in detail how and when you believe she/he/they became aware of your alleged impairment and/or medical condition. Please state what you believe she/he/they believed your medical condition or impairment was.

   I believe that it is undisputable that Management was aware of my condition when discrimination occurred. I also believe that management believed that I had carpal tunnel syndrome.

7. Describe in detail the circumstances that led you to file a complaint of discrimination in the accepted Claim as outlined above when in that she has been subjected to harassment since approximately August, 2001 regarding, including but not limited to, derogatory comments; reduction in work hours; sick and annual leave requests; lunch time lengthened; monthly doctor visits; worked outside of restrictions; worked less hours than others; and on December 30, 2006, she received a Notice of Removal charging her with unacceptable conduct. (Include in your response a detailed explanation of

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---------------------|-------------|
| | 5/25/07 |

§ Form 2569, March 2001

UNITED STATES
POSTAL SERVICE ®

EEO Investigative Affidavit *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| 7 | 13 | 4J-604-0045-07 |

what occurred that you considered was discrimination towards you, when it occurred, who was responsible, etc.)

a.  For the record, who was the Responsible Management Official(s) (RMOs) who was responsible for allegedly harassing you since approximately August 2001 regarding, including but not limited to, derogatory comments; reduction in work hours; sick and annual leave requests; lunch time lengthened; monthly doctor visits; worked outside of restrictions; worked less hours than others; and on December 30, 2006, issued a Notice of Removal charging her with unacceptable conduct?

I was harassed by Carmen Kimble, Mark Sammons, Shanun Jackson, and Charrise Jackson.

i.  What was the reason, if any, given by the RMO for this action? (Please explain in detail)

The only explanation I was given by Mark Sammons and Ms. Kimble was that there was nothing for me to do.

ii.  Please detail specifically how you were treated that you believe was harassment. Include specific incidents and dates whenever possible.

When I was first aware of the carpal tunnel syndrome I verbally informed my immediate supervisor, Mark Sammons, of my recent doctor's visit and the reason why I was wearing wrist bands. Although I described my pain to him he continued to give me duties which required me to throw parcels and flats throughout the day while wearing wrist bands. Once I gave written notice of my disability and medical restrictions I was immediately sent home for an entire month by Mr. Sammons. He said "If you can't use your hands, then we don't have any work for you", and I was told to go back home. During this time, I made several contacts with Ms. Kimble requesting to return to work. I asked if I could come back to work because I needed my job. She replied that you are a clerk and you can't do any clerk functions. It was only after my doctor sent a letter dated 2/11/02 to Ms. Kimble suggesting that I try the window clerk position for six hours per day that I was allowed to come back to work. While working as a window clerk, Ms Kimble repeatedly refused to purchase for me an additional work shirt. She told me that she did not have an allowance for me to get another shirt. All other clerks had a minimum of two shirts each while I was forced to wash and wear the same shirt everyday. As my condition worsened and my doctor's restrictions on job duties increased the harassment and tension intensified. Mr. Sammons would scream, slam desk drawer, always responding negatively and irritably. He became so hostile that I could not even ask him a simple question. If I had to call him for anything he behaved rudely and belligerent over the phone. Once my doctor had released me to work 40 hrs per week and I immediately requested to have my hours increased and Ms. Kimble said that her hands were tied behind her back and what did I want her to do. She said "I was good for nothing"; I was instantly demoralized and could not believe what I had heard. I was again treated unfairly by management when I was released to work 40 hours per week and Ms. Kimble consistently denied my request to work a full work week similar to other Part-time Flexible employees. Deloris Steele and Mary Vizzard both Part-time Flexible employees received 40-50 hours weekly with a ½ hour lunch break while I received less than 40 hours and a 90-minute lunch break. I have more seniority than both Ms. Steele and Ms. Vizzard. On several occasions my annual and sick leave were not timely entered into the system thus causing my paychecks to be short even more (see Exhibit D – Check Stub). I noticed that this had become a pattern in 2006 and I approached Ms. Charrise Jackson and threatened to file a grievance if this action continued. I was required by management to make monthly doctor visits because management failed to provide me with a Permanent job assignment. Sometimes it was necessary for me to go to the doctor more than once a month in order to get the doctor to review the limited duty job offer assignments to determine if the duties met with his restrictions. Ms. Kimble repeatedly included duties requiring repetitive motion in the job offer assignments that had already

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

Date Signed

5/25/07

PS Form 2569, March 2001


**UNITED STATES POSTAL SERVICE** ®

**EEO Investigative Affidavit** *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| 8 | 13 | 4J-604-0045-07 |

been well established as prohibited activities. Evidence supports Ms. Kimble's willful intent to defy or disregard medical restrictions. For instance, Ms. Kimble shows willful intent to defy the doctor's report of 7/10/03 by presenting a job offer including casing and rifling, both requiring repetitive hand motion. The documentation prohibiting repetitive motion dates back as far as August 2001. Based on the doctor's 2/12/04 report Ms Kimble with willful disregard for medical restrictions presented a job offer which included extensive writing requiring repetitive hand and wrist motion. Based on the doctor's report of 9/3/04 Ms. Kimble with willful intent ignored doctors release to work 40 hours per week with two consecutive days of rest. Based on a doctor's report of 1/12/05 Ms. Kimble willfully defied medical restrictions by preparing a limited duty job order assignment that blatantly rejected the doctor's modifications regarding restricted duties, which is casing mail, a repetitive hand motion. On December 12, 2006, I was asked by my supervisor, Ms Charrise Jackson, to participate in a pre-disciplinary interview with Ms Carmen Kimble. I was not informed of the purpose or the content of this meeting and was not comfortable answering any questions at that time. In addition, the steward representative, who was also present at this interview, stated he also had no knowledge of what was going on in this matter. I strongly believed that I would have been at a disadvantage if I had participated in this interview without being able to properly prepare a defense. Therefore, on December 17, 2006, I prepared a etter to Ms Carmen Kimble, with copies to Lolita Rice, Manager of Operations; Ms Charrise Jackson, Customer Service Supervisor and Ron Steward, Union Representative, requesting that she postpone an interview planned for December 19, 2006 in order to allow me time to review the case against me and to prepare a defense. I further requested copies of my personnel file; a written summary of the alleged complaint; any statutes or regulations; any and all investigative reports, memos or actual notice of proposed charges or other documents related to this case. However, on December 30, 2006, I received a letter of removal from Ms Jackson and Ms Kimble stating "unacceptable conduct. I am contending that this charge s a pretext for wanting to remove me for my on the job injury and disability. It is apparent from this removal letter that the pre-disciplinary interview was conducted in spite of my absence and my written request for postponement. I contend that my right o due process of law has been grossly violated and that Ms Jackson and Ms Kimble acted with malice in their attempts to remove me from my job due to my disability. I also contend the removal in this case was too severe and the Postmaster ailed to use progressive discipline since there was no history of a related or similar disciplinary action on my part. Further, I was never placed on notice of the rule or code violation and I was never advised in reasonable detail, at any time, of what the charges were and therefore was not afforded a reasonable opportunity to defend myself before discipline was issued. Also he pre-disciplinary interview and therefore, neither of us were able to address allegations made in that document. As a result f the notice of removal I have not worked since January 30, 2007.

    iii.  **What occurred in approximately August, 2001 that prompted this alleged harassment?**

        I learned and informed management of my disability and the need for a limited work assignment which resulted in harassment and discrimination.

    iv.  **Has this harassment ended? If so, when and how?**

        The harassment was ongoing through January 30, 2007.

    v.  **Who was the RMO who issued you a Notice of Removal on December 30, 2006? If applicable, who concurred with this decision?**

        Ms. Carmen Kimble issued the Notice of Removal on December 30, 2006 and Ms. Charrise Jackson concurred with this decision.

    b.  **Did you ever advise the RMO that you considered this conduct to be offensive or considered if harassing? If so, what was his/her reaction?**

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature _Cynthia D. Benson_

Date Signed 5/25/07

Form 2566, March 2001


**UNITED STATES**
**POSTAL SERVICE** ®

EEO Investigative Affidavit *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| 9 | 13 | 4J-604-0045-07 |

When I discussed my hours and work duties with Ms. Kimble I expressed my concerns and the unfairness of the way I was being treated by management. I expressed to her my distress about be treated differently than other Part-time Flexible employees. And I felt that I had a justifiable grievance against management. Ms. Kimble's reaction was that she felt that there was nothing that I could do there. She gave me a memo with a phone number to an individual that she claimed could help me with disability retirement assistance (see Exhibit E – Memo from Carmen). At this point it became crystal clear to me that Ms Kimble would do anything to get me out of the US Postal Service rather than to seek outside assistance for employment accommodations. I also discussed with Ms. Kimble about her making false claims to Dale Shultz of the United States Postal Service Workman's Compensation Division that I drove a pink car. She responded that she did not make such claims. However, it was evident that she had been in direct communication with Ms. Schultz as indicated by the attached email from Ms. Schultz to Ms. Kimble wherein it is stated that Ms. Kimble requested that my claim be denied (see Exhibit F – Email from Ms. Schultz ). The email also confirms Ms Kimble's willful and malicious intent to cause me distress by cutting my workman's compensation pay. I consider Ms. Kimble's actions as a gross misconduct by management. I also discussed my concerns with Linette Johnson my immediate supervisor, and she indicated that she could not believe that Ms Kimble would treat me this way knowing that I had a well documented on the job injury. She also stated her unwillingness to go along with the harassment when it was evident to her that I never did anything out of line and was cordial with everyone

c. Did you ever discuss this situation with co-workers? If so, with whom and when? (Please provide names and home address information if you are naming these employees as a witness)

I discussed this situation with the following co-workers: Linette Johnson in 2004-2005 of 2701 201st Place, Linwood, Illinois 60411; Samuel Andrews in 2004-2005 of 505 West Walnut Street, Crown Point, Indiana 469307; and Delois Steele in 2003-2005 of Post Office Box 226, Frankfort, Illinois 60423

d. Did you or your co-workers ever bring this situation to the attention of management officials? If so, to whom did you or your co-workers complain? What, if any, action was taken?

There was never a collaborative effort to bring this situation before management officials.

e. Please explain in detail why you believe that this action was discrimination based on your medical condition.

Management has never hidden the fact that due to my disability I was no longer able to perform at the level of productivity that they were accustomed to receiving. Before my disability I was able to case mail at an above average rate per tray and was always relied upon to efficiently expedite the mail. I believe my disability created much frustration and anxiety for management. Once I was unable to perform the normal duties of a distribution clerk, they began to treat me differently and unfairly.

f. Are you aware of other employees at your facility who were in similar circumstances and who may have been treated similarly by this RMO?

There appears to be a pattern of this discriminate behavior towards injured employees.

If you are aware, please state their full names, as well as their medical condition, if known.

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

*[signature]*

Date Signed: 5/25/07

PS Form 2819, March 2001



**UNITED STATES**
**POSTAL SERVICE ®**

**EEO Investigative Affidavit** *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| 10 | 13 | 4J-604-0045-07 |

Employees that I believe experienced similar discrimination are as follows: Debbie Meyers-Nigero, (back surgery), Samuel Andrews (permanent partial nerve damage) and Stephan Nykaza (unknown)

   ii. How specifically were these employees treated similarly?

Similar to me, both Samuel Andrews and Stephan Nykaza have been asked by management to perform duties outside of their medical restrictions.

g. Are you aware of other employees at your facility who were in similar circumstances and who were treated differently by this RMO?

I am not aware of any employees with similar circumstances who were treated differently.

   i. If you are aware, please state their full names, as well as their medical condition, if known.
   ii. How specifically were these employees treated differently?

h. What rules, contract provisions, or policies do you believe are applicable to your claim that you were discriminated against in this incident? How do you believe those rules were violated?

The American Disability Act states that frequently, when a qualified individual with a disability request a reasonable accommodation, the appropriate accommodation is obvious. The individual may suggest a reasonable accommodation based upon her own life or work experience. However, when the appropriate accommodation is not readily apparent, you must make a reasonable effort to identify one. The best way to do this is to consult informally with the employee about potential accommodations that would enable the individual to perform the essential functions of the job. If this consultation does not identify an appropriate accommodation, you may contact the EEOC, state or local vocational rehabilitation agencies, or state or local organizations representing or providing services to individuals with disabilities. Management failed to do any of the foregoing and therefore is in violation of the act. I contend that my right to due process of law has been grossly violated and that Ms Jackson and Ms Kimble acted with malice in their attempts to remove me from my job due to my disability. I also contend the removal in this case was too severe and the Postmaster failed to use progressive discipline since there was no history of a related or similar disciplinary action on my part. Further, I was never placed on notice of the rule or code violation and I was never advised in reasonable detail, at any time, of what the charges were and therefore was not afforded a reasonable opportunity to defend myself before discipline was issued. Also the Postmaster did not afford the union an opportunity to review the contents of the inspection service memorandum before the pre-disciplinary interview and therefore, neither of us were able to address allegations made in that document. As a result of the notice of removal I have not worked since January 30, 2007. I contend that my due process rights were violated because management failed to comply with Article 15 since the step 2 decision maker (the Postmaster) was involved in the initial decision to terminate me (see Exhibit). The Postmaster prepared the notice of proposed removal on December 30, 2006. Step 1 of Article 15 states that "any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor ... In any such discussions the supervisor shall have authority to settle the grievance." My rights to the Step 1 and the Step 2 process have been violated and ultimately nullified because the Postmaster was involved in the initial decision to discipline. Since the discipline in this case was issued by both the Postmaster and Supervisor, no higher level of concurrence can be obtained. "In the case of the same person making a decision, and then reviewing that decision, there is harm to an individual with regard to the penalty since "there is little likelihood that the initial decision will be changed." I contend that neither the union representative nor I was provided with a copy of the investigative memos before the investigative interviews were attempted. This is in direct violation of my Weingarten rights. The Supreme

I declare under penalty of perjury that the foregoing is true and correct.

Mant's Signature

*Cynthia D. Benson*

Date Signed
5/25/07



**UNITED STATES POSTAL SERVICE**®

**EEO Investigative Affidavit** *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| 11 | 13 | 4J-604-0045-07 |

Court ruled in a decision known as the Weingarten Rights "that an employee may insist upon union representation at an employer's investigatory interview which the employee reasonably believes might result in disciplinary action ... Employees also have the right under Weingarten to a "pre-interview" consultation with a steward, in other words, the right to meet with the steward in advance of the interview to *prepare* for the interview. Federal Courts have extended this right to pre-meeting consultations to cover Inspection Service Interrogations .... Once the employee has requested representation, the employer is required to either: 1. grant the request; 2. deny the request and offer the employee the opportunity to continue the interview without union representation; or 3. deny the request and hold no interview at all." (USPS Memo 8/22/05) Management failed to follow these procedures in that my request for representation was denied because management refused to provide me with all of the documentation as requested in my letters of December 17 and 21, therefore rendering me defenseless. My union representative was forced into a role of a passive observer, because he was denied access to case related documents and memos. How could I have representation when my representative was lacking pertinent information for preparing a defense? My Weingarten rights were consistently violated on the following counts: <u>Count 1 -</u> My Weingarten rights were violated on November 6, 2006 during the inspector's interrogation when I requested a representative and the request was denied. It is apparent, as evidenced by the letter of removal the inspectors disregarded my right to representation when they proceeded with submitting their findings. My request for representation was denied in that my representative was forced to participate as a silent observer because he had no prior knowledge of the interview, its purpose or any information or documentation with which to prepare a defense. Additionally, we were not given sufficient time or opportunity to conduct a pre-interview consultation. <u>Count 2 -</u> My Weingarten rights were violated on December 12, 2006 during the pre-disciplinary interview when my representative was expected to proceed with the interview within minutes of being requested to participate. The Weingarten states, "The Supreme Court, however, clearly acknowledges a representative's right to assist and counsel workers during the interview." My representative's ability to offer fair and informed assistance and counsel was grossly violated, again leaving me defenseless. My right to pre-interview consultation was also violated.

<u>Count 3 -</u> My Weingarten rights were violated on December 19, 2006 when I was again ensnared by management to attend a pre-disciplinary interview. I previously requested in my letter dated December 17, 2006 to receive documents pertaining to the case, as well as, additional time to prepare a defense. As of December 19, 2006 I still had not received either a verbal or written response. This repeated practice of requesting participation in interviews without allowing ample time to confer with my representative and without proper documents and information regarding my case is in direct breach of my right to due process and representation. This can be likened to what I call an institutionalized ambush. My Weingarten rights were further infringed upon when management proceeded without my participation in the interview, as confirmed in Postmaster Kimble's letter of December 30, 2006 when she states "As I recall you refused to answer any questions thereby failing to participate. As a result of your failure to participate, you were advised that a decision would be made without the benefit of your input." This is in direct defiance to the options that management is allowed under the Weingarten rights. Option 3 states that the manager can deny the worker's request for representation, and not hold the interview at all. In summary it is unreasonable for management to expect me to review documents presented during the interview, consult with my representative and prepare a defense, all in a single setting when it is apparent that management have been afforded months or even years to prepare a case of removal against me. This is a blatant attempt to railroad me straight out of my position. I contend that management did not point to any specific procedures or policies that were violated. Management never placed me on notice of rules violated or made me aware of the substance of the case against me. While Postmaster Kimble verbally stated to me on December 12, 2006 and as indicated in her letter of December 30, 2006 that there was no written summary of a complaint against me, this is in total contradiction to the Inspectors' Investigatory Report dated November 14, 2006 wherein an allegation was cited. In a similar case it was ruled "that management did not provide the union and/or grievant with a copy of the investigative report and actual notice of proposed charges in order that she could respond to those charges and therefore the investigative meetings did not meet the requirements of due process. Accordingly, he ruled that the Postal Service both lacked just cause to remove the grievant and the discipline in this case violated due process standards." I contend that management willfully and deliberately withheld pertinent information and documents.  "Due process requires that an employee be made aware of the rule or policy that he or

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

*[signature: Cynthia D. Benson]*

Date Signed 5/25/07

PS Form 2569, March 2001


**UNITED STATES POSTAL SERVICE ®**

**EEO Investigative Affidavit** *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| 12 | 13 | 4J-604-0045-07 |

she is being charged with violating and that the employee have an opportunity to respond to those charges." Even after making numerous requests in writing and talking with management I was not made aware of any code or regulation that I allegedly violated until I received the notice of removal. I contend that management failed to provide progressive and/or corrective discipline. (Handbook Employee Labor -921, 8/90). I have never been reprimanded or disciplined for similar activities. I contend that statute of limitations has expired since charges alleged were more than three years ago. I contend that management lacked just cause for a removal since it failed to conduct a full, fair and impartial investigation before taking actions. I contend that the severity of the discipline is not in line with the charges. It is my belief that the decision was based on emotionalism and/or discrimination. (Handbook Employee Labor-921, 8/90) My employment with the United States Postal Service represents a contract wherein both the employee and employer have responsibilities to uphold. The employee has the responsibility of performing their job to the best of their ability. I have worked for the Postal Service for nineteen years and have never received disciplines or reprimands in performing my assigned duties. I served as a mail carrier for 7 ½ years and worked hard to maintain the highest level of performance in ensuring the deliverance of mail. As a clerk I have always given Postal Service customers the highest quality of assistance as evidenced by the numerous letters of appreciation I have received from customers. I have always acted with the highest level of integrity and loyalty to my employer. While I have made mistakes, none were of willful intent to jeopardize my employment or harm the US Postal Service. To me the CA-7 was a complicated form which made it difficult for me to understand. I have recently resubmitted the CA-7's in question and have had to consult with the Department of Labor to get clarity on a few of the questions. It should be noted that the original form that I was required to complete has been modified and does not include the question that my removal was based on. In other words, if I were required to submit a CA-7 today the question regarding income does not exist, making it appear to be insignificant or irrelevant to the matter. On the other hand, the employer has the responsibility for acting objectively, fairly, honestly and equitably, and following the policies and procedures; rules and regulations; and protecting to the utmost the employee's due process of law. Management in my case has failed considerably by first breaching my Weingarten Rights, second, by violating my rights under the EL-921, third, by failing to uphold Article 15 as supported by case decisions from Regional Discipline Arbitrations, and fourth by violating the ELM (Employee Labor Relation Manual). As part of this contractual obligation management is responsible for reporting the facts honestly and accurately. The letter of removal is fraught with erroneous information and misstatements. Management states that I earned $14,366 through the period of January 15, 2002 through August 15, 2005 earnings over a total period of 32 months. They contend that an omission of this scope is the basis for the decision for removal. When in actually, the periods in questions namely, 12/13/03 – 12/26/03, 1/24/04 – 2/8/04, 6/21/04 – 8/06/04 and 1/26/05 – 3/31/05 total only 4 months for $3,922.78 with a net loss of ($1,058.58) (see enclosed Attachment CA-7 ). It is misleading and dishonest to claim that I omitted this information, when in fact I was never asked or required to provide this information.

    i.   Has this issue been resolved? If so, how?

       This issue is currently unresolved.

8.  Are there any witnesses you would like to be interviewed concerning the acts of alleged discrimination as described in your responses above? If so, please identify the name of the witness, their office of employment, their telephone number, and state what information the named witness will be able to provide that will be beneficial to the investigation of this complaint.

      Samuel Andrews, of the Matteson Post Office who can be reached at 219-201-5957, will provide information regarding management's refusal to provide two consecutive days of rest as required by my doctor. He will also attest to his own experience of discrimination from management as a result of his disability. Linette Johnson, of the United States Postal Service who can be reached at 708-889-0171, will provide information

_____

I declare under penalty of perjury that the foregoing is true and correct.

| Iflant's Signature | | Date Signed |
|---|---|---|
| *Cynthia D. Burns* | | 5/25/07 |

Form 2569, March 2001

**UNITED STATES POSTAL SERVICE®**

EEO Investigative Affidavit *(Continuation Sheet)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| 13 | 13 | 4J-604-0045-07 |

regarding the discriminatory actions of management. Delois Steele, of the Matteson Post office who can be reached at 773-844-0925, will provide information regarding management's discrimination against her.

9. What do you seek as resolution to this EEO investigation?

I am requesting reversal of the 30 day removal; reinstatement of employment, a full-time work schedule based on medically prescribed limited work duties, all loss wages due from work related injuries, all loss wages due to the removal process, compensatory and/or punitive damages resulting from the harassment and discrimination and assurance of "Regular" status employee. I am requesting to be relocated to another Post Office in Chicago, Illinois.

10. Is there anything you would like to add to your affidavit and do you have any documents you would like to submit in support of your claims? If you do have documents you would like to submit, please forward them with your completed affidavit.

I am requesting that the following exhibits be made a part of this affidavit:
Exhibit A – Grievance
Exhibit B – Medical Records
Exhibit C – Limited Duty Job Assignment
Exhibit D – Check Stub and Request for or Notification of Absence Form
Exhibit E – Memo from Carmen Kimble
Exhibit F – Email from Ms. Schultz
END OF STATEMENT

*Cynthia D Benson*

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

*Cynthia D Benson*

Date Signed
5/25/07

PS Form 2859, March 2001

**UNITED STATES POSTAL SERVICE**

# EEO Investigative Affidavit for Compensatory Damages
*Note: Not applicable to Age Discrimination in Employment Act (ADEA) claims*

| Name | Case No. | | Page No. | No. of pages |
|---|---|---|---|---|
| Cynthia Diane Benson | 4J-604-0045-07 | | 1 | 2 |

## Instructions for the Complainant

During an investigation into alleged discrimination, the Postal Service is required to gather evidence regarding appropriate remedies, which may include compensatory damages. The remedy that you are seeking to resolve this complaint includes your claim that you are entitled to receive a monetary award. Therefore, you must provide testimony and evidence concerning the nature, extent and severity of the harm you suffered due to the alleged discriminatory conduct. PS Form 2569-C contains a number of questions and/or statements regarding your claim for damages. Please read the questions or statements carefully before responding. If you need additional space, please use an additional sheet(s). Any additional sheet(s) must show the number of this form (Form 2569-C), the item number(s) to which it pertains, a page number and the total number of pages submitted for this form. *You must declare under penalty of perjury that the information you provide on this form including any attached sheets is true and correct.*

1. I experienced financial difficulties because of the discriminatory act(s) alleged in my complaint.

   [X] Yes          [ ] No

   If yes, provide full explanation. Please include description and cause of difficulty (or difficulties) when occurred, duration of occurrence, and how severe.

   I experienced financial hardship as a result of the discrimination. I was forced to rent out my condominium and move in with my mother to avoid foreclosing on my property. I had difficulty paying my monthly bills as they became due and consequently my credit has suffered tremendously with my credit scores plummeting. I was forced to do a debt consolidation to prevent from filing bankruptcy and take out high interest loans to bridge the gap in my income. I am requesting compensatory damages of loss wages from September 3, 2004 to January 30, 2007. On September 3, 2004 my doctor released me to work 40 hours per week, however, management did not honor it, but allowed others with less seniority to work 40 or more hours per week The total weeks are estimated at 540 weeks (52 weeks per year × 2.417 years). The total hours lost due to discrimination are estimated at 8 – 13 hours per week. Therefore, the total estimated loss wages are computed as an average of 10.50 hours per week ((8+13)/2) at a pay rate of $24.00 per hour × 540 weeks or $12,600.00. I am also requesting compensatory damages of hours, wages, and sick/annual leave lost during the removal which began January 30, 2007. The loss wages are estimated at $16,512.00 (4.3 weeks per month x 4 months x 40 hours per week x $24.00 pay rate per hour). Finally, I am requesting compensatory damages for pain and suffering as my on the job related injury is a permanent condition.

2. I experienced personal medical problems because of the discriminatory act(s) alleged in my complaint.

   [X] Yes          [ ] No

   If yes, provide full explanation. Please include description and cause of problems, when occurred, duration of occurrence, and severity.

   I believe that my condition worsened to include bilateral epicondylitis because of management's failure to meet my medical requirements and my having to continue to perform task which were medically restricted. My carpal tunnel now causes pain to my neck and the pains are so severe that I am often times unable to sleep. I have suffered great pain and numbness in my arms and have had to sleep with a special made hand/wrist brace. At times the pain is so severe that I am unable to walk and move about.

3. I obtained psychological or psychiatric counseling because of the discriminatory act(s) alleged in my complaint.

   [ ] Yes          [X] No

   If yes, provide full explanation. Include description of when, the cause, its extent and severity.

4. I have had to take medication because of the discriminatory act(s) alleged in my complaint.

   [X] Yes          [ ] No

If yes, list type of medication, reason for the medication, and the cost of the medication.

I take ibuprofen as needed for pain and B-complex to calm my nerves.. To keep my wrist in a neutral position while sleeping I wear a specially molded hand/wrist brace. The costs are as follows: ibuprofen $10 every two months, and B-complex is $7.99 every two months.

| Name | Case No. | | Page No. | No. of pages |
|------|----------|--|----------|--------------|
| Cynthia Diane Benson | 4J-604-0045-07 | | 2 | 2 |

5. Did any of the difficulties for which you checked "Yes" in items 1-4 exist prior to the act(s) of discrimination alleged in your complaint?

   [ ] Yes     [X] No

   If yes, please complete question 6 below.

6. Describe for each pre-existing condition how that condition was made worse by the act(s) of discrimination alleged in your complaint. Begin each description with the item number of page 1 (items 1 through 4) to which it pertains.

   Not applicable

7. Is there any other information or evidence regarding your claim for entitlement to compensatory damages that you want to include with this affidavit?

   [ ] Yes     [X] No

   If yes, please provide a full explanation of the information you wish to include. Attach additional pages if necessary.

## IMPORTANT!

You must attach or provide the investigator with copies of documentation, such as bills, doctor's statements, pharmacy bills, statements from other persons, or other paperwork relevant to the difficulty that you claim is related to the discriminatory act(s) alleged in your complaint. If you do not have copies of your documentation, you may provide the original to the investigator who will copy relevant records and return the original documents to you. Alternatively, for medical information and records, you may provide a signed authorization from your health care provider to the investigator permitting him/her to obtain information directly from your health care provider or pharmacy. Or, you may sign a medical information release provided by the investigator if you prefer.

**Privacy Act Notice**

Privacy Act Notice. The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16; The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.633a; The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794; and executive Order 11478, as amended.   This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for the Postal Service employees and other witnesses.

I declare under penalty of perjury that the foregoing, including any attached sheets, is true and correct.

| Affiant's Signature | Date Signed |
|---------------------|-------------|
| Cynthia D Benson | 5/25/07 |

PS Form 2569-C (Page 2 of 2) December 2003

| U.S. Postal Service | Case No. |
| Certification | 4J-604-0045-07 |

I have read the proceeding attached statement, consisting of 13 pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

> "Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

## Privacy Act Notice

Privacy Act Notice: The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16; The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.633a; The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794a; and executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for the Postal Service employees and other witnesses.

## USPS Standards of Conduct

Postal Service Regulations require all postal employees to cooperate in any postal investigation.

Failure to supply the requested information could result in disciplinary action. (ELM 666)

## Oath / Affirmation

Subscribed and (sworn) (affirmed) before me on the _____ day of _____ ,

| Signature of EEO Complaints Investigator | *(Affiant, sign in the presence of an EEO Complaints Investigator.)* |
| | Signature of Affiant |

## Declaration

I declare under penalty of perjury that the foregoing is true and correct.

*(Affiant, sign and date if attached statement was not completed in the presence of an EEO Complaints Investigator.)*

| Signature of Affiant | Date Signed |
| _Urilina D Bexan_ | 5/25/07 |

PS Form 2571, March 2001

# EXHIBIT A

*Grievance*

Grievance Submitted 1/13/07
Cynthia D. Benson

Cynthia D. Benson                    Grievance Statement
January 13, 2007

1

### Detail Statement of facts

On November 6, 2006, I was pulled off the work floor and questioned by two Postal Inspectors in Postmaster Carmen's office. They requested that I write a statement, on the spot, regarding my position on completing several CA-7 forms submitted over three years ago. Feeling overwhelmed, alone, without representation, and under immense pressure because there was not adequate time to recall dates and information, I was compelled to decline any further questioning. Therefore, I immediately requested representation and was allowed to go to get Ron Steward a union representative as counsel. I returned immediately with Mr. Steward and indicated that I would not answer any further questions, as I needed more time to confer with my representative.

On December 12, 2006 I was verbally informed by Charrise Jackson, my supervisor that she needed to question me in an interview with Postmaster, Carmen Kimble. I immediately questioned Ms. Jackson regarding the purpose of the meeting. Ms. Jackson's response was that she did not fully know what the meeting was about; however, she indicated that she had to conduct the interview. I requested a representative and was informed that I could go to got Ron Steward. I asked Mr. Steward if he had any knowledge of the interview or its purpose. He indicated he had no idea. While Mr. Steward agreed to attend the interview with me, I was not comfortable in answering any questions without thorough knowledge of the situation at hand. Therefore, I did not submit to any lines of questioning because I was not adequately informed of the intended purpose of the meeting in a timely fashion.

On December 17, 2006 I requested a written summary of the complaint alleged against me. I also requested a copy of the statutes and regulations of any and all alleged violations and any rules governing same and a complete copy of my personnel file. To give me time to review all the documents requested, consult with my representative and prepare a response, I requested more time and also that the interview scheduled for December 19, 2006 be postponed to a later date.

On December 19, 2006, with no prior verbal or written response to my letter of request dated December 17, 2006, I was pulled off the workroom floor by Charrise Jackson, who indicated that the interview was still scheduled to go forward. Before approaching the office where the interview was to be conducted Ms. Jackson apologized and stated that they were receiving phone calls pressuring them to complete the interview. I asked why I had not received any response to my letter of December 17, 2006. She confided that there was about a 2 inch stack of papers that I could read during the interview. I requested a copy of the documents and was told that I could read them but not make copies. I stood at the doorway and stated that I could not appropriately respond to any questions.

On December 21, 2006, again, I wrote a letter to Postmaster Kimble requesting a summary of any and all proposed complaints against me; a copy of rules and policies regarding complaints against me; a copy of documents produced as a result of the Postal Inspectors interview and/or Inspection Service memorandum; a copy of all independent investigation

Cynthia D. Benson                    Grievance Statement
January 13, 2007

2

reports conducted by management; any and all evidence produced regarding this matter; including my personnel file.

On December 26, 2006 I received a letter from Manager of Postal Operations, Lolita Rice, indicating that she could not assist me with this matter, and to discontinue any correspondence to her regarding this issue.

On December 30, 2006, I received a notice of removal of employment from the Postal service for a charge of unacceptable conduct as evidenced by your failure to disclose pertinent information on Department of Labor Forms CA-7, claim for compensation on account of traumatic injury or occupational disease.

After receiving the notice of removal I asked Ms. Jackson what was really going on. She encouraged me to file a grievance and/or EEO complaint.

On January 3rd I received a letter with a delivery confirmation from Postmaster Carmen Kimble, dated December 30, 2006. This letter responds to my letters dated December 17, and December 21, 2006 requesting documentation and information regarding this case.

## Contention of Grievant

- I contend that my due process rights were violated because management failed to comply with Article 15 since the step 2 decision maker (the Postmaster) was involved in the initial decision to terminate me (see Exhibit). The Postmaster prepared the notice of proposed removal on December 30, 2006. Step 1 of Article 15 states that "any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor ... In any such discussions the supervisor shall have authority to settle the grievance." My rights to the Step 1 and the Step 2 process have been violated and ultimately nullified because the Postmaster was involved in the initial decision to discipline. Since the discipline in this case was issued by both the Postmaster and Supervisor, no higher level of concurrence can be obtained. "In the case of the same person making a decision, and then reviewing that decision, there is harm to an individual with regard to the penalty since "there is little likelihood that the initial decision will be changed." AIRS #4287 – USPS #FOOC-1F-D 04178971 AND 04214029; 4/27/2005)

- I contend that neither the union representative nor I was provided with a copy of the investigative memos before the investigative interviews were attempted. This is in direct violation of my Weingarten rights. The Supreme Court ruled in a decision known as the Weingarten Rights "that an employee may *insist* upon union representation at an employer's investigatory interview which the employee reasonably believes might result in disciplinary action ... Employees also have the right under Weingarten to a "pre-interview" consultation with a steward, in other words, the right to meet with the steward in advance of the interview to *prepare* for the interview. Federal Courts have extended this right to pre-meeting consultations to cover Inspection Service interrogations .... Once the employee has requested representation, the employer is required to either: 1. grant the request; 2. deny the request and offer the employee the opportunity to continue

Cynthia D. Benson
January 13, 2007

Grievance Statement

3

the interview without union representation; or 3. deny the request and hold no interview at all." (USPS Memo 8/22/05) Management failed to follow these procedures in that my request for representation was denied because management refused to provide me with all of the documentation as requested in my letters of December 17 and 21, therefore rendering me defenseless. My union representative was forced into a role of a passive observer, because he was denied access to case related documents and memos. How could I have representation when my representative was lacking pertinent information for preparing a defense?

My Weingarten rights were consistently violated on the following counts:
Count 1

My Weingarten rights were violated on November 6, 2006 during the Inspector's interrogation when I requested a representative and the request was denied. It is apparent, as evidenced by the letter of removal the Inspectors disregarded my right to representation when they proceeded with submitting their findings. My request for representation was denied in that my representative was forced to participate as a silent observer because he had no prior knowledge of the interview, its purpose or any information or documentation with which to prepare a defense. Additionally, we were not given sufficient time or opportunity to conduct a pre-interview consultation.
Count 2

My Weingarten rights were violated on December 12, 2006 during the pre-disciplinary interview when my representative was expected to proceed with the interview within minutes of being requested to participate. The Weingarten states, "The Supreme Court, however, clearly acknowledges a representative's right to assist and counsel workers during the interview." My representative's ability to offer fair and informed assistance and counsel was grossly violated, again leaving me defenseless. My right to pre-interview consultation was also violated.
Count 3

My Weingarten rights were violated on December 19, 2006 when I was again ensnared by management to attend a pre-disciplinary interview. I previously requested in my letter dated December 17, 2006 to receive documents pertaining to the case, as well as, additional time to prepare a defense. As of December 19, 2006 I still had not received either a verbal or written response. This repeated practice of requesting participation in interviews without allowing ample time to confer with my representative and without proper documents and information regarding my case is in direct breach of my right to due process and representation. This can be likened to what I call an institutionalized ambush.

My Weingarten rights were further infringed upon when management proceeded without my participation in the interview, as confirmed in Postmaster Kimble's letter of December 30, 2006 when she states "As I recall you refused to answer any questions thereby failing to participate. As a result of your failure to participate, you were advised that a decision would be made without the benefit of your input." This is in direct defiance to the options that management is allowed under the Weingarten rights. Option 3 states that the manager can deny the worker's request for representation, and not hold the interview at all.

Cynthia D. Benson
January 13, 2007                    Grievance Statement

4

     In summary it is unreasonable for management to expect me to review documents presented during the interview, consult with my representative and prepare a defense, all in a single setting when it is apparent that management have been afforded months or even years to prepare a case of removal against me. This is a blatant attempt to railroad me straight out of my position.

- I contend that management did not point to any specific procedures or policies that were violated. Management never placed me on notice of rules violated or made me aware of the substance of the case against me. While Postmaster Kimble verbally stated to me on December 12, 2006 and as indicated in her letter of December 30, 2006 that there was no written summary of a complaint against me, this is in total contradiction to the Inspectors' Investigatory Report dated November 14, 2006 wherein an allegation was cited. In a similar case it was ruled "that management did not provide the union and/or grievant with a copy of the investigative report and actual notice of proposed charges in order that she could respond to those charges and therefore the investigative meetings did not meet the requirements of due process. Accordingly, he ruled that the Postal Service both lacked just cause to remove the grievant and the discipline in this case violated due process standards." AIRS #4287 – USPS #FOOC-1F-D 04178971 AND 04214029; 4/27/2005)

- I contend that management willfully and deliberately withheld pertinent information and documents. "Due process requires that an employee be made aware of the rule or policy that he or she is being charged with violating and that the employee have an opportunity to respond to those charges." Even after making numerous requests in writing and talking with management I was not made aware of any code or regulation that I allegedly violated until I received the notice of removal. (Weingarten Rights and AIRS #4287 – USPS #FOOC-1F-D 04178971 AND 04214029; 4/27/2005)

- I contend that management failed to provide progressive and/or corrective discipline. (Handbook EL-921, 8/90). I have never been reprimanded or disciplined for similar activities.

- I contend that statute of limitations has expired since charges alleged were more than three years ago.

- I contend that management lacked just cause for a removal since it failed to conduct a full, fair and impartial investigation before taking actions. I contend that the severity of the discipline is not in line with the charges. It is my belief that the decision was based on emotionalism and/or discrimination. (Handbook EL-921, 8/90)

## Particular Contractual Provisions Involved

     My employment with the United States Postal Service represents a contract wherein both the employee and employer have responsibilities to uphold. The employee has the responsibility of performing their job to the best of their ability. I have worked for the Postal Service for

Cynthia D. Benson                Grievance Statement
January 13, 2007

5

nineteen years and have never received disciplines or reprimands in performing my assigned duties. I served as a mail carrier for 7 ½ years and worked hard to maintain the highest level of performance in ensuring the deliverance of mail. As a clerk I have always given Postal Service customers the highest quality of assistance as evidenced by the numerous letters of appreciation I have received from customers. I have always acted with the highest level of integrity and loyalty to my employer. While I have made mistakes, none were of willful intent to jeopardize my employment or harm the US Postal Service. To me the CA-7 was a complicated form which made it difficult for me to understand. I have recently resubmitted the CA-7's in question and have had to consult with the Dept of Labor to get clarity on a few of the questions.

On the other hand, the employer has the responsibility for acting objectively, fairly, honestly and equitably, and following the policies and procedures; rules and regulations; and protecting to the utmost the employee's due process of law. Management in my case has failed considerably by first breaching my Weingarten Rights, second, by violating my rights under the EL-921, third, by failing to uphold Article 15 as supported by case decisions from Regional Discipline Arbitrations, and fourth by violating the ELM (Employee Labor Relation Manual).

As part of this contractual obligation management is responsible for reporting the facts honestly and accurately. The letter of removal is fraught with erroneous information and misstatements. Management states that I earned $14,366 through the period of January 15, 2002 through August 15, 2005 earnings over a total period of 32 months. They contend that an omission of this scope is the basis for the decision for removal. When in actually, the periods in questions namely, 12/13/03 – 12/26/03, 1/24/04 – 2/6/04, 6/21/04 – 8/06/04 and 1/26/05 – 3/31/05 total only 4 months for $3,922.78 with a net loss of ($1,056.58) (see enclosed Attachment CA-7 ). It is misleading and dishonest to claim that I omitted this information, when in fact I was never asked or required to provide this information.

Remedies Sought

I am requesting reversal of the 30 day removal; a full-time work schedule based on medically prescribed limited work duties, all loss wages due from work related injuries, all loss wages due to the removal process, and assurance of a full-time regular status by December 31, 2007 according to the APWU 2007 contract. I have already resubmitted the CA-7 forms in question, to the best of my knowledge, and I am therefore requesting that management accept this as corrective action.

Cynthia D. Benson

# ATTACHMENTS

A     Notice of Removal

B     Letter to Carmen Kimble dated December 17, 2006 and attachment

C     Letter to Carmen Kimble dated December 21, 2006 and attachments

D     Letter from Lolita Rice, Manager Post Office Operations

E     Letter from Carmen Kimble dated December 30, 2006

F     CA-7's revised and resubmitted to Department of Labor and attachments

G     Additional Facts

H     Letter from Doctor dated 2/11/02

I     First CA-7 Claim Form (Employing Agency Portion)

J     Inspector's Report

# ATTACHMENT A

MATTESON, IL POST OFFICE

 **UNITED STATES POSTAL SERVICE**

December 30, 2006

SUBJECT: NOTICE OF REMOVAL

Cynthia Benson
Full-Time Distribution Clerk
SSN: XXX-XX-5758
Matteson, IL 60443-9998

You are hereby notified that you will be removed from the Postal Service no sooner that 30 calendar days from the date of your receipt of this letter.

The reason for this action is:

CHARGE:     UNACCEPTABLE CONDUCT AS EVIDENCED BY YOUR FAILURE TO DISCLOSE PERTINENT INFORMATION ON DEPARTMENT OF LABOR FORMS CA-7, CLAIM FOR COMPENSATION ON ACCOUNT OF TRAUMATIC INJURY OR OCCUPATIONAL DISEASE.

On or about January 8, 2002, you submitted a Department of Labor Form CA-2, Notice of Occupational Disease and Claim for Compensation alleging carpel tunnel syndrome. You accepted a limited duty assignment and are currently working in that status at the Matteson, IL Post Office. Since your injury, you have lost time from work. Thus you submitted several Claims for Compensation On Account of Traumatic Injury or Occupational Disease, using Form CA-7. Section 6 of Form CA-7 asks "Has any pay been received for the period shown in item 4?" Section 4 asks for you to identify the period of wage lost for which compensation is claimed. Section 8 of Form CA-7 states "Complete this item if you worked during the period shown in item 6." Section 8a asks that you list salaried employment, dates & hours, pay rate, total amount earned, type of worked performed and the name and address of Employer. Section 8b asks that you list Commission and Self Employment. "Show all activities, whether or not income resulted from your efforts." Again it asks for dates and

- 2 -

Cynthia D. Benson
Notice of Removal
Page 2 of 6

hours worked, name and address of business, self employed, commission, type of activity
performed and income derived.

A review of the CA-7's you submitted disclosed that you signed Section 19 certifying that
every statement above was true to the best of your knowledge and belief. The section further
states:

> "Any person who knowingly makes any false statement, misrepresentations,
> concealment of fact, or any other act of fraud, to obtain compensation as provided by
> FECA, or who knowingly accepts compensation to which that person is not entitled
> is subject to civil or administrative remedies as well as felony criminal prosecution
> and may, under appropriate criminal provisions, be punished by a fine or
> imprisonment, or both."

You signed a CA-7 on December 24, 2003. You claimed the period of wage lost was
December 13, 2003 thru December 26, 2003. You indicated that you had not received any
pay for this period. You did not make any entries in Sections 8a or 8b. According to records
obtained from Mary Kay Inc., you were employed by them and received a check dated
December 15, 2003 in the amount of $258.97. You signed a duplicate CA-7 on
January 26, 2004 indicating the same period of wage loss but indicating that you had received
pay from the Postal Service for this period in the amount of $87.32.

You signed a CA-7 on August 11, 2004. You claimed the period of wage lost was
June 21, 2004 thru August 6, 2004. You indicated that you had not received any pay for this
period. You indicated that you had limited work at the Postal Service during this period. As
far as Commission, Self-Employment and Name & Address of Business, you entered "NA".
According to records obtained from Mary Kay, Inc., you were employed by them and
received a check dated July 1, 2004 in the amount of $142.09 and a check dated
July 15, 2004 in the amount of $358.72.

You signed a CA-7 on March 12, 2005. You claimed the period of wage loss was
January 26, 2005 thru March 11, 2005. You indicated that you had not received any pay for
this period. You indicated that had some work hours at the Postal Service. However, under
Commission and Self-Employment, you entered "NA". According to records obtained from
Mary Kay, Inc., you received a check dated February 15, 2005 in the amount of $160.20.

- 3 -

Cynthia D. Benson
Notice of Removal
Page 3 of 6

On November 6, 2006, you were interviewed by Special Agent, Office of the Inspector General, Bucciarelli and Workers' Compensation Analyst Taylor. You were asked if you worked for Mary Kay Inc. Cosmetics to which you denied. You were asked if you earned any income selling Mary Kay Inc. products to which you admitted to receiving pay for selling the products and added that most of the money goes back into building your business.

You were then shown several CA-7's you had signed and submitted. Special Agent Bucciarelli read to you section 8b which states "Commission and Self-Employment. Show all activities, whether or not income resulted from your activities." You admitted that you had not disclosed your work for Mary Kay because you didn't think it was relevant. You added that you barely make any money selling Mary Kay products, the minimum income was insignificant, you don't get paid every week and that technically you were not employed by Mary Kay but rather you were a contractor. You were provided an opportunity to provide a sworn statement; however, you declined citing that you did not want to self-incriminate yourself.

On December 12, 2006, a pre-disciplinary interview was held with you. This interview provided an opportunity for you to tell your side of the story. You were represented by Ron Steward, APWU Official. You were advised that the interview was in regard to several CA-7's you had submitted. You were shown five (5) CA-7's and was asked if that was your signature that appeared on each. You responded in the affirmative. You were directed to Section 8 on each of the forms. You were asked why income paid to you from Mary Kay, Inc., was not reported to the Department of Labor. You responded that it was the same money that you paid out for the company and that it was just reimbursement. You were specifically as why the income paid to you from Mary Kay on December 15, 2003, July 1, 2004, July 15, 2004 and February 15, 2005 was not reported to the Department of Labor. You responded that you didn't know and that you would have to go back in your files. You were advised that between the dates of December 24, 2003 and March 12, 2005, you had been compensated by Mary Kay Inc., for a total of $2,660.50 and asked if you had reported this income to the Department of Labor. At that point, you refused to answer any additional questions and stated that you didn't have enough of your personal documentation to answer questions. You requested that you be allowed to review your records and then hold the interview. You requested that the interview be rescheduled after you had the opportunity to review your records. Your request was granted and the interview was scheduled for December 19, 2006. You were provided with a copy of the five (5) CA-7's in question.

- 4 -

Cynthia Benson
Notice of Removal
Page 4 of 6

On December 19, 2006, the agreed upon pre-disciplinary interview was conducted. You were represented by Ron Steward, APWU Representative and he was present at the interview. You stated that you would not answer any questions because you did not fully understand the purpose of a pre-disciplinary interview. It was explained to you by Postmaster Carmen Kimble and Union Representative Steward that the purpose was to allow you an opportunity to tell your side of the story before any decisions were made. You were advised that the interview was part of the investigation and that you were not currently charged with anything. You stated that you would only answer questions with someone of your choosing. You were advised that Ron Steward, APWU Representative, was an authorized representative. You and your representative were advised that you would be provided with the opportunity to review the Office of Inspector General's Report of Investigation and you would be allowed to confer with your representative prior to any questioning. You failed to take advantage of this opportunity. You indicated that you would answer questions when you had someone of your choosing available to go over the documents with you. The interview terminated.

Your conduct is in violation of the following sections of the Employee and Labor Relations Manual.

## 666.2 Behavior and Personal Habits
Employees are expected to conduct themselves during and outside of working hours in a manner which reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal personnel be honest, reliable, trustworthy, courteous, and of good character and reputation. Employees are expected to maintain satisfactory personal habits so as not to be obnoxious or offensive to other persons or to create unpleasant working conditions.

## 665.11  Loyalty
Employees are expected to be loyal to the United States government and uphold the policies and regulations of the Postal Service.

Additionally, your actions are in violation of the following provisions of the Federal Register, Part II, Department of Labor, Office of Workers' Compensation Programs.

- 5 -

Cynthia Benson
Notice of Removal
Page 5 of 6

## 20 CFR 10.525 What information must the employee report.

1. An employee who is receiving compensation for partial or total disability must advise OWCP immediately of any return to work, either part-time or full-time. In addition, an employee who is receiving compensation for partial or total disability will periodically be required to submit a report of earnings from employment or self-employment, either part-time or full-time. (See Sec. 1 0.5(g) for a definition of "earnings")

2. The employee must report even those earnings which do not seem likely to affect his or her level of benefits. Many kinds of income, though not all, will result in reduction of compensation benefits. While earning income will not necessarily result in a reduction of compensation, failure to report income may result in forfeiture of all benefits paid during the reporting period.

Postal regulations require that employees provide truthful and honest answers to all questions asked on its forms as well as Department of Labor forms. Like any other business, the Postal Service cannot operate in an efficient and productive manner when employees fail to disclose pertinent information on CA-7's. Your failure to provide honest and truthful answers is unacceptable. The failure to disclose pertinent information does not satisfy this most basic requirement of employment.

The Postal Service occupies a fiduciary relationship with the public in handling, processing and delivery of mail. The questions on the CA-7's seek to get information that is highly pertinent to the tasks and integrity of the Postal Service and the administration of our Injury Compensation Program. The Postal Service and the Office of Workers' Compensation (OWCP) have a right to full disclosure of facts from employees. Your failure to fully disclose pertinent information prohibited OWCP from making an informed decision whether or not to pay you compensation. The information that you failed to disclose could have affected the amount, if any, that was paid to you, if known. Additionally, your actions have adversely affected management's trust and confidence in you and we clearly have apprehension as to your continued employment.

I find it significant to note that you stated the amount you were paid by Mary Kay Inc. Cosmetics was nominal. A careful review of records obtained from Mary Kay Inc., disclosed that on June 28, 1998, you signed and submitted a Beauty Consultant Agreement with Mary Kay. Under the general terms and conditions of this agreement you agreed "To promote and

- 6 -

Cynthia Benson
Notice of Removal
Page 6 of 6

sell *Mary Kay* products by regularly conducting skin care classes and demonstrations." Mary Kay agreed to pay you a commission. A further review of records obtained from Mary Kay, Inc., disclosed that from January 15, 2002 through August 15, 2005, you received 35 checks totaling in excess of $14,366.

An omission of this scope does not provide for the issuance or corrective and progressive discipline. Your actions have clearly demonstrated a lack of commitment to abide by the proscribed rules and regulations of the Postal Service and of the Office of Workers' Compensation. I find that the charge is a removal offense and that I was not arbitrary or capricious in the decision to remove you from the Postal Service.

**If this action is overturned on appeal, back pay will be allowed, unless otherwise specified in the appropriate award or decision, only if you have made reasonable Efforts to obtain other employment during the relevant non-work period. The extent of documentation to support your back pay claim is explained in the ELM, section 436.**

**You have the right to file a grievance under the Grievance/Arbitration procedure set forth in Article 15 of the National Agreement within fourteen (14) calendar days of your receipt of this notice.**

Charrise Jackson
Supervisor, Customer Services

Carmen Kimble
Postmaster, Matteson, IL

I RECEIVED THE ORIGINAL OF THIS LETTER ON _____

SIGNATURE_____   TIME_____

*Employee does not wish to sign*

# ATTACHMENT  B

December 17, 2006


Carmen Kimble, US Postmaster
United States Postal Service
Matteson, Illinois 60443

Re: Scheduled Meeting on December 19, 2006

Dear Ms. Kimble:

On December 12, 2006 I was verbally informed by Charisse Jackson that she needed to question me in an interview with the three of us. As you are aware, I did not submit to any lines of questioning because I was not adequately informed of the intended purpose of the meeting in a timely fashion. As a matter of due process of law and in an effort to provide you with my full cooperation I am hereby requesting a written summary of the complaint alleged against me. Please provide me with a copy of the statutes and regulations of any and all alleged violations and any rules or codifications governing same. Additionally, I am requesting a complete copy of my personnel file.

Also, please provide me with additional time to review the requested documents, prepare a response, and to secure independent third party representation and witnesses. To that end, please reschedule the meeting for December 19, 2006 for a later date.

Further, please be advised that I fully intend to exercise my rights to file a grievance and to seek a thorough investigation of nearly six years of harassment as a direct result of my on the job injury. I have attached for your review one of numerous documents that I have in my possession supporting such claims

Thank you in advance for your timely response to the foregoing requests.

Sincerely,

Cynthia D. Benson


cc:     Lolita Rice, Manager
        United States Postal Services

        Cynthia Benson- 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
        Please place a copy in personnel file

encl:   Email to Carmen dated Wednesday, December 31, 2003 12:41 pm

7418

~60443 Postmaster, II

| | |
|---|---|
| From: | Schultz, Dale C - Bedford Park, IL |
| Sent: | Wednesday, December 31, 2003 12:41 PM |
| To: | ~60443 Postmaster, II |
| Subject: | PTF Hours |

Hi Carmen:

I cannot find a way not to pay C. Benson for the period of 12/13/03 to 12/26/03. She is asking for 6 hours, when really she is entitled to 10 hours. I will verify she is short 6 hours.

Please work her at least 4.5 hours per day x 6 days which will give her 27 hours per week. I would hate to have to go back further if she asks for compensation because you work her 24 hours per week. Her job offer has her start time as 9 a.m. to 1 p.m. (4 hours per day). How can I argue with the Department of Labor when it is in print and her payroll journal supports this? If she is asking to leave early, support her request with 3971's and charge her time to code 59 so I can differentiate this time from non-scheduled hours in the future.

Sorry, but I can't deny her request for additional compensation because I have nothing to support my denial of her claim.

Dale

# ATTACHMENT C

December 21, 2006

Carmen Kimble, US Postmaster
United States Postal Service
Matteson, Illinois 60443

Re:  Response to Pre-Disciplinary Interview

Dear Ms. Kimble:

This letter serves to substantiate my position concerning the following matters.  In an effort to fully cooperate with a request for an interview I enter this document and make the following appearances:

A formal written request was made on December 17, 2006 to Carmen Kimble- Postmaster, with copies to Lolita Rice – Manager, and my employee personnel file.  In this letter, I asked to receive documentation of a written summary of the complaint alleged against me.  In compliance with EL-921 "...Employees have the right to know with reasonable detail what the charges are and to be given a reasonable opportunity to defend themselves before the discipline is initiated." This failure to comply with my request violates my right to due process.  Due process requires that employees be made aware of the rule or policy that he or she is being charged with violating and that the employee have an opportunity to respond to those charges.  My letter also requested copies of statutes and regulations of any and all alleged violations; and a complete copy of my personnel file.  To date, I have not received any copies, nor have I been allowed to make a copy of an investigative report, memo or actual notice of proposed charges or any other documents related to this case.  (AIRS #42487 – USPS #FOOC-1F-D 04178971 and 04214029; 4/27/2005)

In 1975 the US Supreme Court ruled, in NLRB vs Weingarten, that a representative must be allowed to speak privately with the employee before the interview. It is clear that my Weingarten Rights have been consistently violated.  On the first attempt to interview I was summoned from the workroom floor to a Pre-Disciplinary Interview, at which time I immediately requested to have a union representative to confer with, and to counsel me. I was told it was okay to go to get union representative Ron Steward.  Upon my return to the interview with the union representative the interview began promptly without him or me having been given any information or details regarding the purpose of the interview. Nor were we provided with the opportunity to meet or prepare a defense, which again is a direct violation of my Weingarten Rights.

While the union representative was allowed to attend the interview, his ability to actively participate and provide counsel and representation was negated because he was not given any details of the case or time to review prior to the investigatory interview. In essence, the representative was forced to maintain a "silent presence" as a passive observer. Because his ability to provide informed representation was hindered, my Weingarten Rights to obtain a representative (able to provide counsel and guidance) was once again violated.

Therefore, I am requesting full disclosure of the following:

- A summary of any and all proposed complaints against me
- Copy of my personnel file
- Copy of rules and policies regarding complaints against me
- Copy of all documents produced as a result of the Postal Inspectors interview and/or Inspection Service memorandum
- Copy of all independent investigation reports conducted by management
- Any and all evidence produced regarding this matter

Sincerely,

Cynthia D. Benson

Cc:    Lolita Rice, Manager
       United States Postal Services

       Charisse Jackson, Customer Service Supervisor
       United States Postal Services – Matteson

       Ron Steward
       Union Representative – Matteson Post Office

/encl:  Letter to Carmen Kimble dated December 17, 2006

# ATTACHMENT  D

MANAGER POST OFFICE OPERATIONS
CENTRAL ILLINOIS DISTRICT

 **UNITED STATES**
**POSTAL SERVICE**

December 26, 2006

Cynthia Benson
7337 S. South Shore Drive Apt 1430
Chicago Illinois 60649

Dear Ms. Benson:

I am in receipt of your correspondence dated December 17th and again on December 21, 2006 with regard to grievance issues you are having with the Matteson post office. While the Matteson postmaster is a direct report to me, I am not a part of the grievance process for bargaining unit employees.

It appears that you have been a part of a pre-disciplinary interview to determine if discipline is warranted. If discipline is deemed warranted by your supervisor, you will receive written notice of those charges along with appeal rights based on the National Agreement.

I am uncertain as to why you are including me in your written correspondence since I am not a part of the process with which you are covered. As such, please discontinue your correspondence to me with regard to this issue.

If you need additional information, please feel free to discuss this issue with your APWU representative.

Lolita Rice
Manager, Post Office Operations
Central Illinois District

Cc: Richard Little
    Carmen Kimble

701 HOLBROOK ROAD
GLENWOOD IL 60425-9998
(708) 754-8345
FAX: (708) 754-8315

# ATTACHMENT  E

POSTMASTER

 **UNITED STATES POSTAL SERVICE**

December 30, 2006

Cynthia Benson
7337 S South Shore Dr Apt 1430
Chicago IL 60649

Ms. Benson:

This is in response to your letters dated December 17, 2006 and December 21, 2006. In your December 17, 2006 letter you stated that you failed to submit to any lines of questioning during the December 12, 2006 interview because you had not adequately been informed of the intended purpose of the meeting in a timely fashion. You were initially advised that there were some concerns regarding your submission of several

CA-7's. There was no written summary of a complaint against you as the interview was simply part of the investigation. You had not been charged with anything. You were further advised that this was your opportunity to tell your side of the story. You initially participated in the interview but requested additional time to review personal records. You were provided with copies of the five (5) CA-7's in question. It was agreed that the interview would be continued on December 19, 2006. You requested a copy of your personnel file. I am currently processing your request.

In your December 17, 2006 letter, you then requested additional time to review requested documents, prepare a response and secure independent third party representation and witnesses. You asked that the interview for December 19, 2006 be rescheduled for a later date. I wanted to provide you with every opportunity to clearly support your version of the story. You added that you intended to exercise your rights to file a grievance alleging six years of harassment. While it is your right under the Collective Bargaining Agreement to file a grievance, be advised that I deny all allegations of harassment.

On December 19, 2006, the pre-disciplinary interview was continued as you had been provided with the information that would be discussed, that is five CA-7's and failure to disclose income received from Mary Kay Inc. relative to dates of wage losses entered on those CA-7's on December 12, 2006.

In regards to you December 21, 2006 letter, be advised that you refused to answer any questions at the December 19, 2006 pre-disciplinary interview. As of

20660 S. CICERO AVENUE
MATTESON IL 60443-9998
708-748-8630
FAX: 708-748-4890

- 2 -

December 19, 2006, there were no charges against you so I cannot advise you of any regulations or statutes you may or may not have violated. You were provided a week to prepare a response and an authorized representative was provided for you. You and your representative were provided with an opportunity to confer and review the Office of Inspectors General's Report of Investigation. You failed to take advantage of this opportunity. I am comfortable that you were advised with reasonable detail of the issues of concern and provide an opportunity to defend yourself before any discipline is initiated. Your due process rights have been preserved.

In regards to the Weingarten issues you raised, you did not indicate that you wanted to confer with your representative before the interview at the December 12, 2006 or the one conducted on December 19, 2006. Had you or your representative made such a request on either day, those requests would have been granted. I and your representative explained the purpose of a pre-disciplinary interview. I disagree that your representative was not given any details of the issues and categorically deny that he was forced to maintain a "silent presence" as a passive observer. As I recall, you refused to answer any questions thereby failing to participate. As a result of your failure to participate, you were advised that a decision would be made without the benefit of your input.

Sincerely,

Carmen Kimble
Postmaster

# ATTACHMENT  F

7337 S South Shore Drive #1430
Chicago, Illinois  60649

January 12, 2007

Jeanine Brown, Senior Claims Examiner
Department of Labor
Employment Standards Administration
Office of Workers' Comp Programs
P.O. Box 8300 District 10 CHI
London, KY 40742-8300
Phone (312) 596-7157

Re:  CA -7 Resubmitted for periods 12/13/03 - 12/26/03
                                         1/24/04 – 2/6/04
                                         6/21/04 – 8/6/04
                                         1/26/05 – 3/11/05

Dear Ms. Brown:

Enclosed please find revised CA-7's for the above referenced periods.  I called the
Department of Labor today to seek clarity on items 4, 6, 8a and 8b of the form and was
advised that item 6 should include income from both my Postal Services employment and
self employment.  Please note that I have only included net income from my self
employment as I do not have access to my wages earned from the Postal Service.

I trust that this information is what you required; however, if you have any questions or
require additional information, please feel free to contact me at 773-968-6690.

Sincerely,

Cynthia D. Benson
File #102007512

Cynthia D. Benson
#102007312

Attachment CA-7 Resubmitted as of 1/12/07

| Description | 12/13/03 - 12/15/03 | 1/24/04 - 2/6/04 | 6/31/04 - 8/06/04 | 1/26/06 - 3/11/05 | Totals |
|---|---|---|---|---|---|
| Dates & Hrs Worked | Est 2 hours | Est 15 minutes | Est 10.4 hours | Est 4.2 hours | Est. 17.25 |
| Sales | $ 27.19 | $ 25.55 | $ 762.82 | $ 477.10 | $ 1,292.66 |
| Commission | $ 258.58 | $ | $ 1,139.22 | $ 1,242.32 | $ 2,640.12 |
| Income Before Expenses | $ 285.77 | $ 25.55 | $ 1,892.04 | $ 1,719.42 | $ 3,922.78 |
| Expenditures | $ 378.81 | $ 156.39 | $ 1,826.91 | $ 2,617.25 | $ 4,979.36 |
| Net Income | $ (93.04) | $ (130.84) | $ 65.13 | $ (897.83) | $ (1,056.58) |

Please note the above represents business income net of expenditures, as sales can only be
earned after purchase of products.
Total Earnings for the periods reported show a net loss of ($1,056.58)
Commissions are based on the purchases of product which includes the purchases of other
consultants who are on my team
Commissions are reported for the entire month(s) and are not calculated for the specific period(s).
Hours are estimated on a per sales basis.


There were 10 sales in the period 6/21/04 - 8/6/04 which took an average of 10 minutes each,
4 sales which took 15 minutes each and 1 sale for $219.68 which took 90 minutes.  There were
9 deliveries at 15 minutes each.

| Description | 6/21/04 - 8/06/04 | | |
|---|---|---|---|
| | # of Sales | Time per sale | Minutes |
| Sale of Product | 10 | 10 | 100 |
| Sale of Product | 4 | 15 | 60 |
| Sale of Product | 1 | 90 | 90 |
| Deliveries | 9 | 15 | 135 |
| Admin time | | | 240 |
| Total Minutes | | | 625 |
| Total Est Hours | | | 10.4 |


There were 10 sales in the period 1/26/05 - 3/11/05 which took an average of 10 minutes each,
1 sale which took 15 minutes and another sale for $141.38 which took 30 minutes.  There were
3 deliveries estimated at 15 minutes each.

| | 1/26/05 - 3/11/05 | | |
|---|---|---|---|
| | # of Sales | Time per sale | Minutes |
| Sale of Product | 10 | 10 | 100 |
| Sale of Product | 1 | 15 | 15 |
| Sale of Product | 1 | 30 | 30 |
| Deliveries | 3 | 15 | 45 |
| Admin time | | | 60 |
| Total Minutes | | | 250 |
| Total Est Hours | | | 4.2 |


I have worked as an independent business contractor selling Mary Kay Cosmetics since June 28, 1998.
I am not a direct employee of Mary Kay Cosmetics and therefore do not report hours to them or earn
wages from them.  I earn commissions based on purchases of product from Mary Kay including the purchases
of other consultants who are on my team.  In this business I have the flexibility to operate it according
to my own schedule.  Most of my sales are with repeat customers or are otherwise generated while taking
care of personal business, such as during church attendance, grocery shopping, beauty salon etc.

**Claim for Compensation
On Account of Traumatic Injury
or Occupational Disease**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

OMB No. 1215-0103
Expires: 12-31-95

1. Name of Employee   Last   First   Middle
   Denson   Cynthia   Diane

2. OWCP File Number

3. Social Security Number

4. Period of wages lost for which compensation is claimed
   From: mo. day yr.   Thru: mo. day yr.   Hours

5. Is this a claim for a scheduled award?   ☐ Yes   ☐ No

6. Has any pay been received for period shown in item 4?   ☐ Yes   ☐ No
   If yes, amount   From: mo. day yr.   Thru: mo. day yr.

8. Complete this item if you worked during the period shown in item 4. Attach a separate sheet if needed.

   a. Salaried Employment
   Dates & Hours Worked   Pay Rate (Per hour, day or week)   Total Amount Earned   Type Work Performed   Name & Address of Employer

   b. Commission and Self-Employment. Show all activities, whether or not income resulted from your efforts.
   Dates & Hours Worked   Name and Address of Business   Self-Employed ☐ Commission ☐   Type of Activity Performed   Income Derived (Attach Explanation if Needed)

9. Was claim made against 3rd party?   ☐ Yes   ☐ No

10. Name of 3rd party or insurance carrier

11. Has the claim been settled? Show amount recovered.
    Address
    City   State   Zip

12. Have you ever applied for or received benefits from the Veterans Administration based on disability incurred while serving in the Armed Forces of the United States?   ☐ Yes   ☐ No   If Yes, Complete →
    a. Claim number   b. Address of VA office where claim is filed   c. Nature of disability and monthly payment

13. Have you applied for or received an annuity under the U.S. Civil Service Retirement Act or any other Federal Retirement or Disability Law?   ☐ Yes   ☐ No   If Yes, Complete →
    a. Claim number   b. Date annuity began: mo. day yr.   c. Amount of monthly payment

14. List your dependents.
    Name   Date of Birth mo. day yr.   Relationship   Living with you? (yes/no)   Mailing Address if different from your own

15. Support information for above dependents.
    Are you making support payments for a dependent shown above?   ☐ Yes   ☐ No
    Were support payments ordered by a court?   ☐ Yes   ☐ No

17. If yes, support payments are made to:   Last   First   Middle   18. Amount   Per
    Street   City   State   Zip

19. I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States, said injury not being due to willful misconduct on my part or to any intention to bring about the injury or death of myself or another, or to intoxication. I have been disabled because of this injury and have not refused or failed to perform any work I was able to do during the period for which compensation is claimed, and every statement above is true to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both.

Employee's signature   Date (mo. day year)

20. Employee's home mailing address (Include ZIP Code)
    Street   City   State   Zip

**Claim for Compensation
On Account of Traumatic Injury
or Occupational Disease**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Name of Employee | Last | First | Middle | |
|---|---|---|---|---|
| | Denbow | Cynthia | Diane | |

| 3. Social Security Number | 4. Period for which compensation is claimed | Hours | 5. Is this a claim for a schedule award? |
|---|---|---|---|
| 3 1 8 5 4 5 7 5 8 | From mo. day yr. Thru mo. day yr. | | Yes ☐ No ☑ |

6. Has any wages been received for period shown in item 4? Yes ☐ No ☑

8. Complete this item if you worked during the period shown in item 4. Attach a separate sheet if needed.

a. Salaried Employment

| Dates & Hours Worked | Pay Rate (Per hour, day or week) | Total Amount Earned | Type Work Performed | Name & Address of Employer |
|---|---|---|---|---|
| | | | Clerk | USPS |

b. Commission and Self-Employment: Show all activities, whether or not income resulted from your efforts.

| Dates & Hours Worked | Name and Address of Business | Self-Employed ☐ Commission ☐ | Type of Activity Performed | Income Derived (Attach Explanation if Needed) |
|---|---|---|---|---|
| Cst. 15 hrs/wk | | | Beauty Consultant | |

9. Was claim made against 3rd party? Yes ☐ No ☑

10. Name of 3rd party or insurance carrier

11. Has the claim been settled? Give amount recovered.

| Address | | | |
|---|---|---|---|
| City | | State | Zip |

12. Have you ever applied for or received any benefits from the Veterans Administration based on disability incurred while serving in the Armed Forces of the United States?
Yes ☐ No ☑

13. Have you applied for or received an annuity under the Civil Service Retirement Act or any other Federal Retirement or Disability Law?
Yes ☐ No ☑

14. List your dependents.

| Name | Date of Birth mo. day yr. | Relationship | Living with you? (yes/no) | Mailing Address if different from your own |
|---|---|---|---|---|
| | | | | |

15. Support Information for above dependents
Are you making support payments for a dependent shown above? Yes ☐ No ☑

16. Were support payments ordered by a court? If so, attach a copy of court order. Yes ☐ No ☑

17. If yes, support payments are made to: Last / First / Middle

18. ☐

| Street | City | State | Zip |
|---|---|---|---|

19. I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States, said injury not being due to willful misconduct on my part or to my intention to bring about the injury or death of myself or another, or to the period for which compensation is claimed, and every statement above is true to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentation, concealment of fact, in any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both.

| Employee's signature | Date (mo. day, year) |
|---|---|
| Cynthia D. Denbow | 1-12-2007 |

20. Employee's home mailing address (include ZIP Code)

| Street | City | State | Zip |
|---|---|---|---|
| 1337 S Sayre Ave #4430 | Chicago | IL | 60644 |

Claim for Compensation
On Account of Traumatic Injury
or Occupational Disease

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

OMB No. 1215-0103
Expires: 10-31-99

| 1. Name of Employee | Last | First | Middle | |
|---|---|---|---|---|
| | Denson | Cynthia | Diane | |

| 2. Social Security Number | Period of wage loss for which compensation is claimed | 4. |
|---|---|---|
| 3 1 8 5 4 5 7 5 8 | From | Thru | |

5. Is this a claim for a schedule award? ☐ Yes ☒ No

6. Has any pay been received for period shown in item 4? ☐ Yes ☒ No  If Yes, amount: From ___ Thru ___

7. Complete this item if you worked during the period shown in item 4. Attach a separate Sheet if needed

a. Salaried Employment
(Dates & Hours Worked)

| Pay Rate (Per hour, day or week) | Total Amount Earned | Type Work Performed | Name & Address of Employer |
|---|---|---|---|
| | | Clerk | USPS |

b. Commission and Self-Employment. Show all activities, whether or not the income resulted from your efforts.

Dates & Hours Worked: Est 10.5 Hours

Name and Address of Business: Self Employed ☒  Commission ☐

Type of Activity Performed: Beauty Consultant

8. Was claim made against a third party? ☐ Yes ☒ No

9. Income Details (Attach Explanation if Needed)

10. Name of third party or insurance carrier

11. Has this claim been settled? Give amount recovered: ___ Address: ___

12. Have you ever applied for or received benefits from the Veterans Administration based on disability incurred while serving in the Armed Forces of the United States? ☐ Yes ☒ No  If Yes, furnish:
   A. Claim number
   b. Address of the office where claim is filed
   c. Amount of disability and monthly payment

13. Have you applied for or received an annuity under the Civil Service Retirement Act or any other Federal Retirement or Disability Law? ☐ Yes ☒ No  If Yes, furnish:
   A. Claim number
   B. Date annuity began
   c. Amount of monthly payment

14. List your dependents

| Name | Date of Birth mo. day yr. | Relationship | Living with you? (Yes/No) | Mailing Address if different from your own |
|---|---|---|---|---|
| None | | | | |

15. Support information for above dependents. Are you making support payments for a dependent shown above? ☐ Yes ☒ No

16. Were support payments ordered by a court? If so, attach copy of court order. ☐ Yes ☒ No

17. If yes, support payments are made to: Last ___ First ___ Middle ___

Street ___ City ___ State ___

18. I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States, said injury not being due to willful misconduct or my own intention or my intention to bring about the injury or death of myself or another, or to the period for which compensation is claimed, and every statement above is true to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both.

Employee's signature: _____

19. Employee's home mailing address (include ZIP Code): 1287 S South Shore Dr #4, ___  City ___  State ___  ZIP ___

Date (Mo. day, year): 1-12-04

**Claim for Compensation
On Account of Traumatic Injury
or Occupational Disease**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs



OMB No. 1215-0103
Expires: 10-31-05

1. Name of Employee     Last     First     Middle          2. Claim File No.

Denson     Christina     Diane

3. Social Security Number          4. Period of wage loss for which compensation is claimed          Hours     5. Is this a claim for a scheduled award?
                                    From   mo. day yr.   Thru   mo. day yr.                                    ☐ Yes  ☐ No

___ ___ ___ 54 5758

6. Complete this item if you worked during the period shown in item 4. Attach a separate sheet if needed.
a. Salaried Employment,
Dates & Hours Worked          Pay Rate          Total Amount Earned     Type Work Performed          Name & Address of Employer
                              (Per hour, day or week)

b. Commission and Self-Employment. Show all activities whether or not income resulted from your efforts.
Dates & Hours Worked     Name & Address of Business     ☐ Self-Employed     Type of Activity          Income Derived (Attach
                                                        ☐ Commission       Performed                 Explanation if Needed)

9. Was claim made against     ☐ Yes   ☐ No          10. Name of 3rd party or insurance carrier
3rd party?

11. Has this claim been settled? Give amount.          Address
received.
                                                        City          State          Zip

12. Have you ever applied for or received benefits     a. Claim number     b. Address of the office where     c. Amount of disability and
from the Veterans Administration based on                                  claim is filed                    monthly payment
disability incurred while serving in the Armed
Forces of the United States?          ☐ Yes   ☐ No

13. Have you applied for or received an annuity under   a. Claim number     b. Date annuity began            c. Amount of monthly
the U.S. Civil Service Retirement Act or any other                         mo. day yr.                       payment
Federal Retirement or Disability Law?
☐ Yes   ☐ No

14. List your dependents
Name                          Date of Birth     Relationship     Living     Mailing Address
                              mo. day yr.                        with you?  if different from your own
                                                                 (yes/no)

15. Support information re: above dependents
Are you making support payments to the          ☐ Yes   ☐ No     16. Were support payments ordered by a court?
4 dependents shown above?                                         If so, attach copy of court order.     ☐ Yes   ☐ No

17. If yes, support payments are made to: Last     First     Middle          18. Amount
Street                                             City     State     Zip

19. I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States, said injury not being due to willful misconduct on my part or to my intention to bring about the injury or death of myself or another, or to my intoxication. I have been disabled because of this injury and have not refused to perform any work I was able to do during the period for which compensation is claimed, and every statement above is true to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both.

Employee's signature                                                    Date   mo. day yr.   1-12-97

20. Employee's home mailing address (include ZIP Code)          City     State     Zip
Street   7337 S South Shore Dr. #18          Chgo IL 60649

# ATTACHMENT  G

Cynthia D. Benson

## ADDITIONAL FACTS

In August 2001, I was diagnosed with bilateral carpal tunnel syndrome and later with bilateral epicondylitis, which are both work related injuries attributed to the United States Postal Services. As a result of my injuries, I was placed on limited work duties. My supervisor, Ms Jackson and the Postmaster, Ms Kimble were not pleased with this limited schedule and almost immediately begin to harass and retaliate against me. First, the Postmaster informed me that "I was good for nothing" and that she had no work for me. Second, the Postmaster reduced my hours to 13 to 24 hours per week, even though the medical statement recommended eight hours a day. Third, the Postmaster consistently failed to honor my sick leave and annual leave request. She would cut my pay instead. Fourth, the Postmaster, lengthened my lunch to 90 minutes, while all other PTF employees received only ½ hour lunch, Fifth, the Postmaster, consistently ignored the doctors restrictions by constantly adding duties outside of my permanently limited duties and Seventh, she allowed other PTF employees with less seniority to consistently work more hours than me, and Final, Ms Kimble conspired with Dale Schultz, IC Specialist to prevent from paying me 6 hours of pay when in fact I was entitled to 10 hours, as well as falsifying documents alleging that I drove a pink car.

# ATTACHMENT  H

Exhibit A

*Southeast*
2301 East 93rd Street
2nd & 3rd Floors
Chicago, Illinois 60617
Telephone 773.731.9898
Facsimile 773.731.1750



*Advocate Health Center*

February 11, 2002

RE:  Cynthia Benson
     Date of Birth    09/30/64

TO WHOM IT MAY CONCERN:

Ms. Cynthia Benson is a member of Advocate Southeast Health Center and under my care. Patient's most recent office visit was on Monday, January 14, 2002.

Ms. Benson is a 37 year old female with history of reptitive hand motion and presented wrist pain on August 2001. Ms. Benson has been diagnosed with Carpal Tunnel Syndrome and Low Back Syndrome. Result from repetitive motion from her job. She is under going Physical Therapy. Ms. Benson is unable to work from January 3, 2002 thru February 8, 2002. After completing Physical Therapy, patient is to return to lighter duty e.g. window service less than five hours and with weight limit of 20 pounds.

If any further questions, please contact me at the address above.

Sincerely,

Maria Martinez, M.D.
Internal Medicine

Advocate Health Centers are a part of Advocate Health Care.

# ATTACHMENT I

05/16/2005  15:49  7085539441                    USPS                              PAGE  62

**Employing Agency Portion**
For first CA-7 claim sent, complete sections 8 through 15.  10 -
For subsequent claims, complete sections 12 through 15 only.  2007312

**SECTION 8**

| Date of Injury: | Show Pay Rate as of Base Pay | Additional Pay | Additional Pay | Additional Pay |
|---|---|---|---|---|
| Date: ___/___/___ | $_____ per _____ | Type _____ | Type _____ | Type _____ |
| Grade: _____ Step: _____ | | $_____ per _____ | $_____ per _____ | $_____ per _____ |
| Date Employee Stopped Work: | | Type _____ | Type _____ | Type _____ |
| Date: ___/___/___ | $_____ per _____ | | | |
| Grade: _____ Step: _____ | | $_____ per _____ | $_____ per _____ | $_____ per _____ |

Additional pay types include, but are not limited to: Night differential (ND), Sunday Premium (SP), Holiday Premium (HP), Subsistence (SUB), Quarters (QTR), etc. (List each separately)

**SECTION 9**

a. Does employee work a fixed 40-hour per week schedule?  Yes ☐  No ☐
   1. If Yes, circle scheduled days:  S  M  T  W  TH  F  S
   2. If No, show scheduled hours for the two week pay period in which work stopped. Circle the day that work stopped.

| FOR EXAMPLE ONLY | S | M | T | W | TH | F | S |
|---|---|---|---|---|---|---|---|
| WEEK 1 From _5/14_ to _5/20_ | | 8 | 4 | 6 | (8) | | |
| WEEK 2 From _5/21_ to _5/27_ | | 8 | | 8 | | 4 | |

| | S | M | T | W | TH | F | S |
|---|---|---|---|---|---|---|---|
| WEEK 1 From _____ to _____ | | | | | | | |
| WEEK 2 From _____ to _____ | | | | | | | |

b. Did employee work in position for 11 months prior to injury?  Yes ☐  No ☐
   If No, would position have afforded employment for 11 months but for the injury?  Yes ☐  No ☐

**SECTION 10**    On date pay stopped, was employee enrolled in:

a. Health Benefits under the FEHBP?  ☐ No  ☐ Yes  Code ☐☐☐    c. Optional Life Insurance?  ☐ No  ☐ Yes  Class _____
b. Basic Life Insurance?  ☐ No  ☐ Yes    d. A Retirement System?  ☒ No  ☐ Yes  Plan _____

**SECTION 11**    Continuation of Pay (COP) Received (Show inclusive dates):

From ___/___/___    To ___/___/___    Intermittent?  ☐ Yes — Complete Time Analysis Sheet, Form CA-7a  ☐ No

**SECTION 12**    Show pay status and inclusive dates for period(s) claimed:

| | | | Intermittent? | |
|---|---|---|---|---|
| Sick Leave | From ___/___/___ | To ___/___/___ | ☐ Yes  ☐ No | If intermittent, complete Form CA-7a, Time Analysis Sheet |
| Annual Leave | From ___/___/___ | To ___/___/___ | ☐ Yes  ☐ No | |
| Leave without Pay | From _1_/_26_/_05_ | To _3_/_11_/_05_ | ☒ Yes  ☐ No | If leave buy back, also submit completed Form CA-7b. |
| Work | From ___/___/___ | To ___/___/___ | ☐ Yes  ☐ No | |

**SECTION 13**    Did employee return to work?  Yes ☒  No ☐
   If Yes, date _____

If returned, did employee return to the pre-date-of-injury job, with the same number of hours and the same duties?
Yes ☐  No ☐  If No, explain: _____

**SECTION 14**    Remarks: _This woman works for Mary Kay Cosmetics + drives a "Pink Car", She must have top sales to earn a vehicle. Please investigate, this is "earnings" she is not reporting._

**SECTION 15**    An employing agency official who knowingly certifies to any false statement, misrepresentation, or concealment of fact, with respect to this claim may also be subject to appropriate (felony criminal prosecution.

I certify that the information given above and that furnished by the employee on this form is true to the best of my knowledge, with any captions noted in Section 14, Remarks, above.

Signature _Dale C. Schultz_    Title _IC Specialist_    Date _3/16/05_

Name of Agency _____

If OWCP needs specific pay information, the person who should be contacted is:

Name _____    Title _____

Telephone No. _(708) 563-7478_    Fax No. _(708) 563-9441_

INJURY COMPENSATION UNIT
CENTRAL ILLINOIS DISTRICT
6801 W 73rd STREET
BEDFORD PARK IL 60499-9445

• No: 102007312

# ATTACHMENT  J



# UNITED STATES POSTAL SERVICE
## OFFICE OF INSPECTOR GENERAL
### 433 WEST HARRISON
### SUITE 4000
### CHICAGO, IL 6069

UNITED STATES POSTAL SERVICE
OFFICE OF INSPECTOR GENERAL
CHICAGO FIELD OFFICE

**N.J. BUCCIARELLI**
Special Agent

433 W. HARRISON ST., STE 4000
CHICAGO, IL 60699-4000
EMAIL: nbucciarelli@uspsoig.gov

TEL: (312) 601-3906
FAX: (866) 644-5984

Date: November 14, 2006

Carmen Kimble
Postmaster, Matteson Post Office
Matteson, IL
60443

Subject: **Cynthia Benson**, SSN: 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; Distribution Clerk, Matteson, IL
Post Office, 20650 S. Cicero Ave., Matteson, IL 60443.

Reference: OIG Case No. 05UICH5118H26HC

## RESTRICTED INFORMATION

The United States Postal Service Office of Inspector General (USPSOIG)
recently conducted an investigation into the conduct of Cynthia Benson,
Distribution Clerk, Matteson Post Office, Matteson, IL. The attached Report of
Investigation and exhibits are submitted for your consideration and decision as to
whether administrative action is warranted. The USPSOIG is not authorized to
make decisions concerning discipline or administrative actions.

Please advise Special Agent Nick Bucciarelli (SA Bucciarelli), in writing within 30
days, of your decision in this matter. If you decide to take disciplinary action,
please furnish SA Bucciarelli a copy of the letter to the employee and your final
decision letter. If arbitration or Merit System Protection Board hearings are
required, the case agent will be available to testify concerning this investigation.
Please advise SA Bucciarelli at least two weeks in advance of any scheduled
hearings. Additionally, if your original decision is subsequently modified in any
way, please advise SA Bucciarelli of the final action taken.

The Report of Investigation is "Restricted Information." All USPSOIG reports are
furnished on an official need to know basis and must be protected from
dissemination that may compromise the best interest of the U.S. Postal Service.

2

If you have any questions or need additional information, please contact Assistant Special Agent in Charge Kurt A. Kamradt at 312-601-3923 or SA Buccarelli at 312-601-3906.

_Kurt Kammot_

Kurt Kamradt
Assistant Special Agent in Charge
Chicago Field Office

Enclosure: Report of Investigation

cc:     Rich Little, Manager, Labor Relations

        Nancy Jenson, Regional Director, U.S. Department of Labor



# UNITED STATES POSTAL SERVICE
## OFFICE OF INSPECTOR GENERAL
### 433 WEST HARRISON
### SUITE 4000
### CHICAGO, IL 60699-4000

CASE #: 05UICH5118H26HC          CROSS REFERENCE #:

TITLE: BENSON, CYNTHIA

CASE AGENT (if different from prepared by):

## REPORT OF INVESTIGATION

PERIOD COVERED: FROM June 7, 2005 TO November 6, 2006

STATUS OF CASE: CLOSED PENDING (ADMINISTRATIVE)

JOINT AGENCIES:
N/A

DISTRIBUTION:
Carmen Kimble, Postmaster, Matteson Post Office.

Rich Little, Manager, Labor Relations, Central Illinois District.

Nancy Jenson, Regional Director, U.S. Department of Labor.

| PREPARED BY: SA Bucciarelli | DATE: 11/14/06 |
| APPROVED BY: ASAC Kamradt | DATE: 11/14/06 |

Page 1

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

# TABLE OF CONTENTS

I.     PREDICATION

II.    SYNOPSIS

III.   BACKGROUND

IV.    DETAILS

V.     DISPOSITION

VI.    EXHIBITS

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

## I.    PREDICATION

On May 25, 2005, Special Agent Nicholas Bucciarelli (SA Bucciarelli) spoke to Injury Compensation Specialist Dale Schultz (Schultz) regarding United States Postal Service (USPS) employee Cynthia Benson (Benson).

Schultz stated Benson is currently in a limited duty job status at the Matteson, IL Post Office. Schultz stated Benson allegedly is a contracted sales person for Mary Kay Inc. Schultz stated Benson had not reported her outside employment on five Department of Labor (DOL) forms CA-7, Claim for Compensation (form CA-7). The forms were signed and submitted by Benson.

## II.    SYNOPSIS

Investigation disclosed Benson does sell Mary Kay Inc. products. Investigation also disclosed Benson failed to record her income or activities for Mary Kay Inc., on five DOL forms CA-7, as required. When interviewed, Benson admitted she did not report her income because she felt her income from selling Mary Kay product was not significant enough to include on the forms CA-7.

## III.    BACKGROUND

Benson is currently in a limited duty capacity at the Matteson Post Office in Matteson, IL. Benson has been on limited duty since filing a DOL form CA-2, Notice of Occupational Disease and Claim for Compensation (form CA-2), on January 8, 2002. Benson has been employed with the USPS since August 15, 1987.

## IV.    SUPPORTING DETAILS

**Allegation 1:** Benson has not disclosed her self-employment with Mary Kay Inc. on four DOL forms CA-7, Claim for Compensation.

**Allegation 1 Findings:** On January 8, 2002, Benson filed a DOL Form CA-2 for carpel tunnel syndrome caused by her employment at the USPS. On the form, Benson stated she first realized the disease or illness was caused by her employment on August 1, 2001.

Between the dates of December 24, 2003, and March 12, 2005, Benson submitted five DOL forms CA-7. Section 8 on each form states, "Complete item if you worked during the period shown in Item 6." Item 6 is the period for which compensation is being

Page 3

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

requested. Section 8a states, "Salaried Employment; Dates & Hours Worked, Pay Rate Total Amount Earned, Type Work Performed, Name & Address of Employee." Section 8b states, "Commission and Self-Employment. Show all activities whether or not income resulted from your activities." According to records obtained from Mary Kay Inc., Benson was employed during the above mentioned dates. A copy of the Independent Beauty Consultant Agreement received from Mary Kay, Inc. dated June 28, 1998 is attached as **Exhibit 1**.

On forms CA-7 dated December 24, 2003 **(Exhibit 2)**, and January 26, 2004 **(Exhibit 3)**, Benson requested compensation for the dates of December 13, 2003, through December 26, 2003, during which time Benson was working a limited duty job assignment at the USPS. Benson did not disclose her earnings from the sale of Mary Kay Inc. products in section 8 on either form. According to records obtained from Mary Kay Inc. **(Exhibit 4)**, Benson received a check (#10216480), from Mary Kay Inc., in the amount of $258.97 on December 15, 2003.

On form CA-7 dated February 2, 2004 **(Exhibit 5)**, Benson requested compensation for the time period of wage loss for the dates of January 24, 2004, through February 6, 2004, during which time Benson was working in a limited duty job assignment at the USPS. Benson did not disclose her earning from the sale of Mary Kay Inc. products in section 8 of the form. According to documents received from Mary Kay Inc. **(Exhibit 4)**, Benson received a check (#10347346), from Mary Kay Inc., in the amount of $78.95 on February 13, 2004. The check was payment for sales during the month of January, 2004.

On form CA-7 dated August 11, 2004 **(Exhibit 6)**, Benson requested compensation for the time period of wage loss for the dates of June 21, 2004, through August 6, 2004, during which time Benson was working in a limited duty job assignment at the USPS. Benson did not disclose her earnings from the sale of Mary Kay Inc. products in section 8 of the form. According to documents received from Mary Kay Inc. **(Exhibit 4)**, Benson received a check (#10686982), from Mary Kay Inc., in the amount of $142.09 on July 1, 2004. The check was payment for sales during the first half of June, 2004. On July 15, 2004, Benson received a check (#10694349) in the amount of $358.72. The check was payment for sales during the second half of June, 2004. On August 13, 2004, Benson received a check (#10762808), from Mary Kay Inc., in the amount of $143.43. The check covered the second half of June, 2004. The check was payment for the month of July.

On form CA-7 dated March 12, 2005 **(Exhibit 7)**, Benson requested compensation for the time period of wage loss for the dates of January 26, 2005, through March 11, 2005, during which time Benson was working in a limited duty job assignment at the USPS.

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

Benson did not disclose her earnings for the sale of Mary Kay Inc. products in section 8 of the form. According to documents received from Mary Kay Inc. **(Exhibit 4)**, Benson received a check (#11148162), from Mary Kay Inc. in the amount of $160.20 on February 15, 2005. The check was payment for sales during January, 2005. On March 15, 2005, Benson received a check (#11209359), from Mary Kay Inc., in the amount of $936.96. The check was payment for sales during the month of February 2005. On April 15, 2005, Benson received a check (#11276008) in the amount of $146.16. The check was payment for sales during the month of March, 2005

Benson signed all forms CA-7 in section 19 which states, "Any Person who knowingly makes any false statement, misrepresentations, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both.".

On November 6, 2006, SA Bucciarelli and Workers' Compensation Analyst (WCA) James Taylor (Taylor) interviewed Benson at the Matteson Post Office in Matteson, IL. Prior to interviewing Benson, SA Bucciarelli and Taylor identified themselves and advised Benson of her Garrity Rights. Benson refused to sign the "Acknowledgement of Rights" form. A copy of the "Acknowledgement of Rights" form is attached as **Exhibit 8**.

SA Bucciarelli asked Benson if she works for Mary Kay Inc. Cosmetics. Benson stated she does not work for Mary Kay Inc.; however she is a contractor for them. SA Bucciarelli asked Benson if she earns an income selling Mary Kay Inc. products. Benson stated she gets paid for selling the product, but most of the money goes back into building her business.

Benson was shown four forms CA-7 she had signed and submitted. Benson stated the signature on the forms were hers. SA Bucciarelli read to Benson section 8b which states, "Commission and Self-Employment. Show all activities, whether or not income resulted from your activities." Benson admitted she did not disclose her work for Mary Kay because she did not think it was relevant. Benson stated she barely makes any money selling Mary Kay products. Benson stated she does not get paid for selling Mary Kay Inc. every week and felt the minimal income she made was insignificant. Benson further stated she was technically not an employee of Mary Kay Inc., rather she was a contractor. Benson admitted she probably should have included her self-employment on the forms, but did not think it was significant at the time she was filling out the form.

Benson recalled filling out the forms CA-7 after her normal scheduled hours at the USPS had been reduced. Benson stated the little amount she made selling Mary Kay

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

Inc., was helping her pay bills. Benson stated she was not trying to rob the USPS and stated she recalls informing DOL of her employment. Benson stated she would have to check her records.

Benson advised she is currently working approximately 26 hours a week at the Matteson, IL Post Office in a limited duty status. Benson advised she has not had permanent hours in the last several months.

Benson stated she is willing and able to return to 40 hours a week and stated her physician advised her she could return to working 40 hours a week. Benson stated her physician has advised the USPS she could return to working 40 hours a week and her postmaster, Carmen Kimble (Kimble), was aware she could return to working 40 hours a week. Benson stated she recently submitted medical documents stating she could return to 40 hours a week.

Benson was asked if she would like to volunteer a sworn statement regarding the information she provided SA Bucciarelli and Taylor regarding her ability to work 40 hours a week and failure to disclose her self-employment on forms CA-7. Benson stated she did not want to self-incriminate herself by writing a statement. Benson then requested to speak to a union representative. Ron Stewart (Stewart), union representative, joined the interview.

Stewart and Benson left the room for approximately 5 minutes. Upon returning, Benson stated she did not want to write a statement and did not want to answer anymore question. Benson then terminated the interview. A copy of Benson's Memorandum of Interview (MOI) is attached as **Exhibit 8**.

## V.    DISPOSITION

A Report of Investigation (ROI) has been submitted to postal management, labor relations, and DOL.

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

## VI.    EXHIBITS

1.    A copy of Benson's the Independent Beauty Consultant Agreement dated June 28, 1998.

2.    A copy of form CA-7, submitted by Benson, dated December 24, 2003.

3.    A copy of form CA-7, submitted by Benson, dated January 26, 2004.

4.    A copy of Benson's Consultant Check/Deposit Inquiry, received from Mary Kay Inc.

5.    A copy of form CA-7, submitted by Benson, dated February 2, 2004.

6.    A copy of form CA-7, submitted by Benson, dated August 11, 2004.

7.    A copy of form CA-7, submitted by Benson, dated March 12, 2005.

8.    A copy of Benson's "Acknowledgement of Rights" form.

9.    A copy of Benson's MOI.

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

# EXHIBIT

# 1



MARY KAY

BEAUTY CONSULTANT AGREEMENT

BT9382

Name: Benton                          Cynthia

Home Address: 9537 S. Shore Dr.

Chicago

Home Phone No. (773) 375-1983

Your Social Security No.: 318-__-4758

United States Postal Street          Po Clark

CitiBank Chgo                         8700 Stony Island

Darnell Aldridge                      9551 S. University

Date: 6-28-93

# INDEPENDENT BEAUTY CONSULTANT AGREEMENT
## GENERAL TERMS AND CONDITIONS

**A. THE INDEPENDENT BEAUTY CONSULTANT AGREES:**

1. To promote and sell Mary Kay® products by regularly conducting skin care classes and demonstrations.

2. To sell or display these products in retail sales or service establishments. As a professional Mary Kay Beauty Consultant, it is my responsibility to assure that each initial user is furnished with all of the basic skin care products, is given an opportunity to try them before buying and receives sufficient personal instruction to assure proper use and promote ultimate consumer satisfaction.

3. To provide each consumer with the written Mary Kay Satisfaction Guarantee and to promptly honor it upon request. I understand that Mary Kay Inc. ("Company") sponsors a complete satisfaction or money-back guarantee as to each Mary Kay product sold by me to a consumer.

4. To maintain the highest standards of integrity, honesty and responsibility in dealings with the Company, consumers and other Beauty Consultants. To present Mary Kay products in a truthful and sincere manner and hold the Company harmless from damages resulting from misrepresentations by me.

5. To protect the Mary Kay trademarks and trade name by obtaining the Company's written permission prior to my use in any advertising or literature other than Company-published material. I understand that display or sale of Mary Kay products in public, retail or service establishments of any kind is inconsistent with the terms of this Agreement.

6. As an independent contractor, to assume sole liability for all self-employment (Social Security), income taxes, and other reports required by my activities as an independent Beauty Consultant and to abide by all federal, state and local laws governing my Mary Kay business.

7. To purchase showcase and all Mary Kay products only from Company. All orders submitted to Company shall be accompanied by cash, credit card charge, cashier's or certified check, or money order made payable to the order of "Mary Kay Inc." for the full amount due. I understand that all orders are subject to acceptance by Company and the terms of this Agreement.

8. Only credit card charges for Mary Kay products will be submitted to Company for processing through the Company's Retail Credit Card Reimbursement Service.

9. I am not a joint venturer with, or franchisee, partner, agent or employee of Company. I have no power or authority to incur any debt, obligation or liability on behalf of Company. I understand that all independent Beauty Consultants, Independent Sales Directors and Independent National Sales Directors are independent contractors and are subject to this provision.

10. To present Mary Kay career opportunities in a truthful and sincere manner and to accept the responsibilities of a "Recruiter" by ensuring that any prospective Beauty Consultant recruited by me is the age of 18 years or older and receives education and materials related to a Mary Kay career upon submission of a Beauty Consultant Agreement.

11. Mary Kay Inc. reserves the right to assure continued service to my customers if I cease to be an active Mary Kay Beauty Consultant.

12. Company may release my name and telephone number in response to a customer's request for a Beauty Consultant in my area. If this information is not to be released, I agree to notify Company that I do not want the information released by written notice directed to: Consultant Records Department, P.O. Box 799040, Dallas, TX 75379-9040.

**B. MARY KAY INC. ("COMPANY") AGREES:**

1. To allow a discount from suggested retail prices on Section 1 items of the then current Consultant order sheet ("Section 1 products"). The discount shall not apply to samplers, premiums, demonstrators, literature, hostess gifts or sales promotion items.

2. To pay Beauty Consultant with three or more active team members a monthly personal team commission on all purchases of Company products (excluding showcases and sales aids) made by persons whom Beauty Consultant has personally recruited to become Mary Kay Beauty Consultants and who have been accepted by the Company, with commission to be calculated and paid in accordance with the then current Company-published monthly personal team commission schedule for so long as both Beauty Consultant and team member are active, provided that commissions and bonuses paid on merchandise not sold at retail to ultimate consumers which is subsequently returned for Company repurchase pursuant to Part 6, below, may be charged back or deducted from commissions or other sums payable by Company to Beauty Consultant. A Consultant must be active and have three or more active team members in order to receive a monthly personal team commission. An Independent Beauty Consultant is considered "active" in the month of her minimum $180 wholesale Section 1 product order is received by Company and in the following two calendar months.

3. Company may change suggested retail prices, discounts, commissions, transportation charges, contest rules and active status requirements at any time with ten (10) days prior written notice to Beauty Consultant.

4. No geographical territories or limits concerning sales or recruiting within the United States, Puerto Rico, the American Virgin Islands and Guam are imposed on Beauty Consultant.

5. Company reserves no right of control or direction of Beauty Consultant's activities, other than the right to question results.

6. To repurchase, upon the termination of this Agreement, at ninety percent (90%) of Consultant's original net cost, Consultant's showcase if original and unused, and original and unused Section 1 products, provided such items were purchased by Consultant from Company within one (1) year prior to return. Products must be shipped freight prepaid, accompanied by a "Request for Repurchase" form, to the Mary Kay Repurchase Department in Dallas. Company's cost of any prizes or product bonuses awarded to Consultant because of the original purchase and any indebtedness Consultant owes Company will be deducted from the repurchase amount. Consultants who return merchandise to Company are not eligible to rejoin Mary Kay as a Mary Kay Beauty Consultant. Section 2 items are not intended to be purchased from Company for resale and are not subject to this repurchase provision.

7. Customer names and addresses furnished by Beauty Consultant to Company for Preferred Customer Program (direct mail advertising) will be used by Company for advertising and promotional programs to enhance Beauty Consultant's business, create new sales opportunities for Beauty Consultant and generate additional customer sales which will be financially beneficial to the Beauty Consultant.

8. There will be no direct sales from Company to the Beauty Consultant's customer without a commission being paid to customer's Beauty Consultant, provided Beauty Consultant is a member of the Mary Kay independent sales organization at the time of the sale. Company will not accept an order directly from customer without the name and Beauty Consultant number of customer's Beauty Consultant. Commissions will be charged back on customer returns.

This Agreement is subject to acceptance by Company at its corporate headquarters in Dallas, Texas, through issuance of a Notice of Acceptance. Such acceptance is conditioned upon receipt of a showcase by Beauty Consultant. This Agreement shall be governed by the laws of the State of Texas as to all matters. The parties further agree that if any dispute or controversy arises between them concerning any matter relating to this Agreement that any issues which either party may elect to submit for legal jurisdiction shall be submitted to the jurisdiction of the courts of the State of Texas and the parties agree that the proper venue shall be Dallas, Dallas County, Texas.

This Agreement is not subject to alteration, modification or change, except in writing, signed by an authorized executive of the Company and shall not be deemed to be changed, modified or altered by reason of any advice, suggestions, guides or sales aids furnished by the Company to the Beauty Consultant. This Agreement shall be effective from the date of acceptance until December 31 of the same year and shall thereafter be automatically renewed each January 1, for additional terms of one year each, provided that the Agreement may be terminated by either party effective immediately for any breach of its provisions or by either party at any time during the initial term or any renewal term by not less than thirty (30) days written notice.

It is not necessary to submit a new Agreement (or purchase a new showcase) if reinstating within one year of last order month (anniversary month, if no last order) as the terms and conditions of the then current Beauty Consultant Agreement will continue in full force and effect. For record purposes, a Consultant must have a minimum $180 wholesale Section 1 product order to update her last order date.

This is the sole and only Agreement between the parties relating to the subject matter hereof, and both parties acknowledge that the Independent Beauty Consultant is not an employee of Company and will not be treated as an employee with respect to this Agreement for federal, state or local tax purposes, or otherwise.

1995 Mary Kay Inc., Dallas, Texas 75379-9040

## Independent Beauty Consultant Agreement
### General Terms and Conditions

**A. THE INDEPENDENT BEAUTY CONSULTANT AGREES:**

1. To promote and sell Mary Kay® products to ultimate consumers and not to sell or display those products in retail sales or service establishments.

2. To provide each consumer with the written Mary Kay Satisfaction Guarantee and to promptly honor it upon request. I understand that Mary Kay Inc. ("Company") sponsors a complete satisfaction or money-back guarantee as to each Mary Kay® product sold by me to a consumer.

3. To maintain the highest standards of integrity, honesty and responsibility in dealings with the Company, consumers and other Beauty Consultants. To present Mary Kay® products in a truthful and sincere manner and hold the Company harmless from damages resulting from misrepresentation by me.

4. To protect the Mary Kay® trademarks and trade name by obtaining the Company's prior written permission prior to my use in any advertising (including but not limited to the Internet) or literature other than Company-published material. I understand that display or sale of Mary Kay® products in public, retail or service establishments of any kind is inconsistent with the terms of this Agreement.

5. As an independent contractor, to assume sole liability for all self-employment (Social Security), income taxes, and other reports required by my activities as an Independent Beauty Consultant and to abide by all federal, state and local laws governing my Mary Kay business.

6. To purchase the Starter Kit and all Mary Kay® products only from Company. All orders submitted to Company shall be accompanied by cash, credit card charge, cashier's or certified check, or money order made payable to the order of "Mary Kay Inc." for the full amount due. I understand that all orders are subject to acceptance by Company and the terms of this Agreement.

7. Only credit card charges for Mary Kay® products will be submitted to Company for processing through the Company's Retail Credit Card Reimbursement Program.

8. I am not a joint venturer with, or franchisee, partner, agent or employee of Company. I have no power or authority to incur any debt, obligation or liability on behalf of Company. I understand that all Independent Beauty Consultants, Independent Sales Directors and Independent National Sales Directors are independent contractors and are subject to this provision.

9. When presenting Mary Kay business opportunities, to do so in a truthful and sincere manner and ensure that any prospective Beauty Consultant recruited by me is the age of 18 years or older and receives education and materials related to a Mary Kay business upon submission of an Independent Beauty Consultant Agreement.

10. Company reserves the right to assure continued service to my customers through other active Beauty Consultants if I cease to be an active Beauty Consultant.

11. Company may release my name and telephone number in response to a customer's request for a Beauty Consultant in my area. If this information is not to be released, I agree to notify Company that I do not want this information released by written notice directed to: Consultant Records Department, P.O. Box 799040, Dallas, TX 75379-9040.

12. To comply with any changes to the General Terms and Conditions of the Independent Beauty Consultant Agreement that may be made by the Company.

**B. MARY KAY INC. ("COMPANY") AGREES:**

1. To allow a discount from suggested retail prices on Section 1 items of the then current Consultant order form ("Section 1 products"). The discount shall not apply to samplers, premiums, demonstrators, literature, hostess gifts or sales promotion items.

2. To pay Beauty Consultant with one or more active team members a monthly personal team commission on all purchases of Company products (excluding Starter Kits and sales aids) made by persons whom Beauty Consultant has personally recruited to become Mary Kay Beauty Consultants and who have been accepted by the Company, with commissions to be calculated and paid in accordance with the then current Company-published monthly personal team commission schedule for so long as both Beauty Consultant and team member are active, provided that commissions and bonuses paid on merchandise not sold at retail to ultimate consumers which is subsequently returned for Company repurchase pursuant to this Agreement, may be charged back or deducted from commissions or other sums payable by Company to Beauty Consultant. A Consultant must be active and have one or more active team members in order to receive a monthly personal team commission. An Independent Beauty Consultant is considered "active" in the month a minimum $200 wholesale Section 1 product order is received by Company and in the following two calendar months.

3. Company may change suggested retail prices, discounts, commissions, transportation charges, contest rules and active status requirements at any time. Company will give Beauty Consultant at

least ten (10) days' prior written notice of: a) any changes to contest rules and active status requirements; b) increases in suggested retail prices and transportation charges; and c) decreases in standard discount and commission schedules. Written notice may be given by posting notice on the Company Web site(s).

4. No geographical territories or limits concerning sales or recruiting within the United States, Puerto Rico, the U.S. Virgin Islands and Guam are imposed on Beauty Consultant.

5. Company reserves no right of control or direction of Beauty Consultant's activities, other than the right to question results.

6. To accept Consultant's cancellation of this Agreement within thirty (30) days after acceptance of the Agreement by Company, and upon return of Consultant's original and unused Starter Kit, to refund to Consultant the Consultant's cost of the Starter Kit; or if Agreement is terminated and Consultant's original and unused Starter Kit is returned to Company after the cancellation period and within one (1) year of purchase, to repurchase the Starter Kit at ninety percent (90%) of Consultant's original net cost.

7. To repurchase, upon termination of this Agreement, to repurchase at ninety percent (90%) of Consultant's original net cost, original and unused Section 1 products, provided such items were purchased by Consultant from Company within one (1) year prior to return.

8. Starter Kit and Section 1 products must be shipped and freight prepaid, accompanied by a "Request for Repurchase" form to the Mary Kay Repurchase Department in Dallas. Consultant agrees that Company's cost of any prizes or product bonuses awarded to Consultant because of the original purchase and any indebtedness Consultant owes Company will be deducted from the repurchase amount. Consultants who return merchandise to Company are not eligible to rejoin Mary Kay as a Mary Kay Beauty Consultant. Consultant agrees that Section 2 items are not intended to be purchased from Company for resale and are not subject to the repurchase provisions.

9. Customer names and addresses furnished by Beauty Consultant to Company in connection with optional programs shall remain the sole property of Beauty Consultant and will not be used by Company or disclosed by Company to other parties without Beauty Consultant's permission, except as may be required by law.

10. There will be no direct sales from Company to the Beauty Consultant's customer without a commission being paid to customer's Beauty Consultant, provided Beauty Consultant is a member of the Mary Kay independent sales organization at the time of the sale. Company will not accept an order directly from customer without the name and Beauty Consultant number of customer's Beauty Consultant. Commissions will be charged back on customer returns.

This Agreement is subject to acceptance by Company at its corporate headquarters in Dallas, Texas, through issuance of a Mayer of Acceptance. Such acceptance is conditioned upon receipt of a Starter Kit by Beauty Consultant. This Agreement shall be governed by the laws of the State of Texas as to all matters. The parties further agree that if any dispute or controversy arises between them concerning any matter relating to this Agreement that cannot be resolved, they may elect to submit for legal jurisdiction which either party may elect to submit for legal jurisdiction shall be submitted to the jurisdiction of the courts of the State of Texas and the parties agree that the proper venue shall be Dallas, Dallas County, Texas.

This Agreement is not subject to alteration, modification or change, except in writing, signed by an authorized executive of the Company, and shall not be deemed to be changed, modified or altered by Means of any advice, suggestions, guides or sales aids furnished by Company to the Beauty Consultant. This Agreement shall be effective from the date of acceptance until December 31 of the same year and shall thereafter be automatically renewed each January 1, for additional terms of one year each, provided that the Agreement may be terminated by either party effective immediately for any breach of this Agreement by either party at any time during the initial term or any renewal term by not less than thirty (30) days' written notice.

It is not necessary to submit a new Agreement (or purchase a new Starter Kit) if reinstating within one year of last order month (anniversary month. If no last order) as the terms and conditions of the then current Independent Beauty Consultant Agreement will continue in full force and effect. For record purposes, a Consultant must have a minimum $200 wholesale Section 1 product order to update her last order date.

This is the sole and only Agreement between the parties relating to the subject matter hereof, and both parties acknowledge that the Independent Beauty Consultant is not an employee of Company and will not be treated as an employee with respect to this Agreement for federal, state or local tax purposes, or otherwise.

©2000, 2001, 2002, 2003, 2004 Mary Kay Inc.

Printed in U.S.A.

# EXHIBIT

# 2

Claim for Compensation
On Account of Traumatic Injury
or Occupational Disease

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs



| 1. Name of Employee | Last | First | Middle | | OMB No. 1215-0103 Expires: 10-31-99 |
|---|---|---|---|---|---|
| | Benson | Cynthia | Diane | | |

| 3. Social Security Number | 4. Period of wage loss for which compensation is claimed | | Hours | 2. OWCP File Number |
|---|---|---|---|---|
| 318.54 5758 | From mo. day yr. | Thru mo. day yr. | | 102007312 |
| | 12 15 03 | 12 26 03 | 16 | 5. Is this a claim for a schedule award? ☐ Yes ☐ No |

6. Has any pay been received for period shown in item 4? ☐ Yes ☒ No    7. If yes, amount _____ From mo. day yr. Thru mo. day yr.

8. Complete this item if you worked during the period shown in item 5. Attach a separate sheet if needed.

a. Salaried Employment
Dates & Hours Worked | Pay Rate (Per hour, day or week) | Total Amount Earned | Type Work Performed | Name & Address of Employer

Mathison 20659 SCicero

b. Commission and Self-Employment. Show all activities, whether or not income resulted from your efforts.
Dates & Hours Worked | Name and Address of Business | Self-Employed ☐ Commission ☐ | Type of Activity Performed | Income Derived (Attach Explanation if Needed)

9. Was claim made against 3rd party? ☐ Yes ☒ No    10. Name of 3rd party or insurance carrier

11. Has the claim been settled? Give amount recovered. _____ Address _____ City _____

12. Have you ever applied for or received benefits from the Veterans Administration based on disability incurred while serving in the Armed Forces of the United States? ☐ Yes ☒ No    If Yes, furnish >
a. Claim number | b. Address of VA office where claim is filed | c. Nature of disability and monthly payment | ZIP

13. Have you applied for or received an annuity under the U.S. Civil Service Retirement Act or any other Federal Retirement or Disability Law? ☐ Yes ☒ No    If Yes, furnish >
a. Claim number | b. Date annuity began mo. day yr. | c. Amount of monthly payment $

14. List your dependents
Name | Date of Birth mo. day yr. | Relationship | Living with you? (Yes/no) | Mailing Address If different from your own

N A

DEC 31 2003

15. Support Information for above dependents
Are you making support payments for a dependents shown above? ☐ Yes ☐ No

16. Were support payments ordered by a court? If so, attach copy of court order. ☐ Yes ☐ No

17. If yes, support payments are made to: Last _____ First _____ Middle _____
Street _____ City _____ State _____ ZIP _____
18. Amount _____ Per _____

19. I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States, said injury not being due to willful misconduct on my part or to my intention to bring about the injury or death of myself or another, or to my intoxication. I have been disabled because of this injury and have not refused or failed to perform any work I was able to do during the period for which compensation is claimed, and every statement above is true to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentations, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both.

Employee's signature _Cynthia D. Benson_

20. Employee's home mailing address (Include ZIP Code)
Street 7337 S. Shore Dr #1430    City Chicago    State IL    ZIP 60649

Date (Mo., day, year) 12/24/03

# EXHIBIT

# 3

Claim for Compensation
On Account of Traumatic Injury,
or Occupational Disease

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

Duplicate
benefits

| | | |
|---|---|---|
| 1. Name of Employee Last | First | Middle |
| Benson | Cynthia | D. |

OMB No. 1215-0103
Expires: 10-31-99

| 3. Social Security Number | 4. Period of wages loss for which compensation is claimed | | | Hours | 5. Is this a claim for a schedule award? |
|---|---|---|---|---|---|
| 3 1 8 5 4 5 7 5 8 | From mo. day yr. 12 13 03 | Thru mo. day yr. 12 26 03 | | 4 | ☑ Yes ☐ No |

2. OWCP File Number 10 200 7312

| 6. Has any pay been received for period shown in item 4? | 7. If yes, amount | | |
|---|---|---|---|
| ☑ Yes ☐ No | $ 8 7 32 | From mo. day yr. 12 13 03 | Thru mo. day yr. 12 26 03 |

8. Complete this item if you worked during the period shown in item 6. Attach a separate sheet if needed.

a. Salaried Employment,
Dates & Hours Worked

| Pay Rate (Per hour, day or week) | Total Amount Earned | Type Work Performed | Name & Address of Employer |
|---|---|---|---|
| | | | |

b. Commission and Self-Employment. Show all activities, whether or not income resulted from your efforts.

| Dates & Hours Worked | Name and Address of Business | Self-Employed ☐ Commission ☐ | Type of Activity Performed | Income Derived (Attach Explanation if Needed) |
|---|---|---|---|---|
| | | | | |

| 9. Was claim made against 3rd party? ☐ Yes ☐ No | 10. Name of 3rd party or insurance carrier |
|---|---|
| 11. Has the claim been settled? Give amount recovered. | Address |
| | City                    State                    ZIP |

| 12. Have you ever applied for or received benefits from the Veterans Administration based on disability incurred while serving in the Armed Forces of the United States? ☐ Yes ☐ No    If Yes, furnish > | a. Claim number | b. Address of VA office where claim is filed | c. Nature of disability and monthly payment |
|---|---|---|---|

| 13. Have you applied for or received an annuity under the U.S. Civil Service Retirement Act or any other Federal Retirement or Disability Law? ☐ Yes ☐ No    If Yes, furnish > | a. Claim number | b. Date annuity began mo. day yr. | c. Amount of monthly payment $ |
|---|---|---|---|

14. List your dependents

| Name | Date of Birth mo. day yr. | Relationship | Living with you? (yes/no) | Mailing Address, if different from your own |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

15. Support information for above dependents
Are you making support payments for a dependents shown above? ☐ Yes ☐ No

16. Were support payments ordered by a court? If so, attach copy of court order. ☐ Yes ☐ No

| 17. If yes, support payments are made to: Last | First | Middle | 18. Amount |
|---|---|---|---|
| Street | City | State ZIP | $ Per |

19. I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States, said injury not being due to willful misconduct on my part or to my intention to bring about the injury or death of myself or another, or to my intoxication. I have been disabled because of this injury, and have not refused or failed to perform any work I was able to do during the period for which compensation is claimed, and every statement above is true to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentations, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both.

| Employee's signature | Date (Mo., day, year) |
|---|---|
| Cynthia D. Benson | 1-26-04 |

| 20. Employee's home mailing address (include ZIP Code) | | |
|---|---|---|
| Street 7337 S. Shore Dr #1430 | City Chicago | State IL ZIP 60649 |

# EXHIBIT

# 4



MODE:F ACTION:_____ CONSULTANT CHECK/DEPOSIT INQUIRY

CH1020IN-06

Consultant Number: BT9552  CYNTHIA BENSON

| | Period | Pay Type | Status | Method | Pay Date | Amount | Check Number | Trans ID |
|---|---|---|---|---|---|---|---|---|
| 01 | 2005/07 | END | I | CHECK | 08/15/05 | 82.61 | 11586548 | Z33708159 |
| 02 | 2005/06 | END | I | CHECK | 07/15/05 | 845.89 | 11458140 | Z334315B2 |
| 03 | 2005/05 | END | I | CHECK | 06/15/05 | 31.54 | 11421461 | Z33140660 |
| 04 | 2005/04 | END | I | CHECK | 05/13/05 | 627.55 | 11350285 | Z32844979 |
| 05 | 2005/03 | END | I | CHECK | 04/15/05 | 145.16 | 11276008 | Z32535986 |
| 06 | 2005/02 | END | I | CHECK | 03/15/05 | 936.96 | 11209559 | Z32234872 |
| 07 | 2005/01 | END | I | CHECK | 02/15/05 | 160.20 | 11148162 | Z31947808 |
| 08 | 2004/12 | MID | I | CHECK | 01/03/05 | 218.14 | 11081030 | Z31494800 |
| 09 | 2004/12 | END | I | CHECK | 01/14/05 | 547.87 | 11088910 | Z31673030 |
| 10 | 2004/10 | END | I | CHECK | 11/15/04 | 187.19 | 10956580 | Z91104718 |
| 11 | 2004/08 | END | I | CHECK | 09/15/04 | 494.98 | 10824099 | Z30537016 |
| 12 | 2004/07 | END | I | CHECK | 08/13/04 | 143.43 | 10762808 | Z30256198 |
| 13 | 2004/06 | MID | I | CHECK | 07/01/04 | 142.09 | 10686982 | Z29769523 |
| 14 | 2004/06 | END | I | CHECK | 07/15/04 | 358.72 | 10694349 | Z50005290 |
| 15 | 2004/05 | MID | I | CHECK | 06/01/04 | 148.36 | 10622315 | Z29488547 |

MODE:F ACTION:_____ CONSULTANT CHECK/DEPOSIT INQUIRY

CH1020IN·06

Consultant Number: BT9362  CYNTHIA BENSON

| | Period | Pay. Type | Status | Method | Pay Date | Amount | Check Number | Trans ID |
|---|---|---|---|---|---|---|---|---|
| 01 | 2004/03 | MID | I | CHECK | 04/01/04 | 180.57 | 10472134 | Z29859177 |
| 02 | 2004/01 | END | I | CHECK | 02/18/04 | 78.95 | 10347346 | Z26459298 |
| 03 | 2003/11 | END | I | CHECK | 12/15/03 | 258.97 | 10216480 | Z27906835 |
| 04 | 2003/07 | END | I | CHECK | 08/15/03 | 38.36 | 09940539 | Z25795116 |
| 05 | 2003/05 | END | I | CHECK | 06/18/03 | 229.20 | 09779569 | Z26142114 |
| 06 | 2003/04 | MID | I | CHECK | 05/01/03 | 138.65 | 09699495 | Z25644274 |
| 07 | 2003/03 | END | I | CHECK | 04/15/03 | 190.39 | 09634733 | Z25539321 |
| 08 | 2002/11 | MID | I | CHECK | 11/27/02 | 294.00 | 09378521 | Z24229398 |
| 09 | 2002/09 | END | I | CHECK | 10/15/02 | 102.19 | 09248696 | Z23895487 |
| 10 | 2002/08 | END | I | CHECK | 09/13/02 | 637.90 | 09187555 | Z23555177 |
| 11 | 2002/07 | END | I | CHECK | 08/15/02 | 8.40 | 09129702 | Z23271968 |
| 12 | 2002/06 | MID | I | CHECK | 07/01/02 | 265.35 | 09050157 | Z22821842 |
| 13 | 2002/05 | END | I | CHECK | 07/15/02 | 1,390.35 | 09058511 | Z23010497 |
| 14 | 2002/05 | MID | I | CHECK | 05/31/02 | 177.33 | 08984509 | Z22533177 |
| 15 | 2002/05 | END | I | CHECK | 06/14/02 | 55.04 | 08992580 | Z22715940 |

MODE:F ACTION:_____ CONSULTANT CHECK/DEPOSIT INQUIRY

OH1020IN-05

Consultant Number: BT9382  CYNTHIA BENSON

| | Period END | Pay Type | Status | Method | Pay Date | Amount | Check Number | Trans ID |
|---|---|---|---|---|---|---|---|---|
| 01 | 2002/04 | END | I | CHECK | 05/15/02 | 910.71 | 08919905 | Z22428578 |
| 02 | 2002/03 | END | I | CHECK | 04/15/02 | 1,472.14 | 08854074 | Z22135985 |
| 03 | 2002/02 | END | I | CHECK | 03/15/02 | 1,219.55 | 08793391 | Z21849929 |
| 04 | 2002/01 | END | I | CHECK | 02/15/02 | 934.00 | 08731336 | Z21574150 |
| 05 | 2001/12 | END | I | CHECK | 01/15/02 | 513.79 | 08675836 | Z21519284 |
| 06 | 2001/11 | MID | I | CHECK | 11/30/01 | 146.11 | 08607563 | Z20968070 |
| 07 | 2001/11 | END | I | CHECK | 12/14/01 | 402.68 | 08607504 | Z21048702 |
| 08 | 2001/11 | END | V | CHECK | 12/14/01 | 402.68 | 08614184 | Z21048702 |
| 09 | 2001/10 | END | I | CHECK | 11/15/01 | 28.07 | 08551251 | Z20771204 |
| 10 | 2001/09 | END | I | CHECK | 10/15/01 | 1,049.41 | 08493158 | Z20482480 |
| 11 | 2001/08 | MID | I | CHECK | 08/31/01 | 159.38 | 08427480 | Z20012387 |
| 12 | 2001/06 | END | I | CHECK | 07/13/01 | 495.09 | 08317657 | Z19676499 |
| 13 | 2001/05 | END | I | CHECK | 06/15/01 | 159.44 | 08259370 | Z19398257 |
| 14 | 2001/04 | END | I | CHECK | 05/15/01 | 82.36 | 08204696 | Z19134226 |
| 15 | 2001/03 | END | I | CHECK | 04/12/01 | 562.15 | 08146998 | Z18876385 |

MODE:F ACTION:_____ CONSULTANT CHECK/DEPOSIT INQUIRY

CH1020IN-06

Consultant Number: BT9382  CYNTHIA BENSON

| | Period | Pay Type | Status | Method | Pay Date | Amount | Check Number | Trans ID |
|---|---|---|---|---|---|---|---|---|
| 01 | 2001/01 | END | I | CHECK | 02/15/01 | 829.36 | 08028003 | Z16364235 |
| 02 | 2000/12 | MID | I | CHECK | 01/02/01 | 234.00 | 07979792 | Z17975899 |
| 03 | 2000/12 | END | I | CHECK | 01/12/01 | 243.50 | 07977428 | Z18116493 |
| 04 | 2000/09 | END | I | CHECK | 11/15/00 | 442.85 | 07860893 | Z17619908 |
| 05 | 2000/09 | END | I | CHECK | 10/13/00 | 45.48 | 07806948 | Z17364723 |
| 06 | 2000/08 | END | I | CHECK | 09/15/00 | 186.18 | 07754897 | Z17057991 |
| 07 | 2000/07 | END | I | CHECK | 08/15/00 | 291.09 | 07712178 | Z16832100 |
| 08 | 2000/06 | END | I | CHECK | 07/14/00 | 308.73 | 07662712 | Z16616195 |
| 09 | 2000/05 | END | I | CHECK | 06/15/00 | 390.21 | 07613968 | Z16385727 |
| 10 | 2000/04 | END | I | CHECK | 05/15/00 | 285.42 | 07569451 | Z16152196 |
| 11 | 2000/03 | END | I | CHECK | 04/14/00 | 197.77 | 07522970 | Z15947079 |
| 12 | 2000/02 | END | I | CHECK | 03/15/00 | 232.66 | 07477949 | Z15717129 |
| 13 | 2000/01 | END | I | CHECK | 02/15/00 | 498.90 | 07435140 | Z15509705 |
| 14 | 1999/12 | END | I | CHECK | 01/14/00 | 490.44 | 07396486 | Z15308005 |
| 15 | 1999/11 | END | I | CHECK | 12/15/99 | 345.87 | 07871961 | Z15107545 |

MODE: F ACTION: _____  CONSULTANT CHECK/DEPOSIT INQUIRY

CH1020IN-06

Consultant Number: BT9982   CYNTHIA BENSON

| | Period | Pay Type | Status | Method | Pay Date | Amount | Check Number | Trans ID |
|---|---|---|---|---|---|---|---|---|
| 01 | 1999/11 | END | I | CHECK | 12/15/99 | | 07371961 | Z15107545 |
| 02 | 1999/11 | END | V | CHECK | 12/15/99 | 345.87 | 07328798 | Z15107545 |
| 03 | 1999/10 | END | I | CHECK | 11/15/99 | 345.87 | 07288207 | Z14894123 |
| 04 | 1999/08 | END | I | CHECK | 09/15/99 | 712.69 | 07212832 | Z14487591 |
| 05 | 1999/07 | END | I | CHECK | 08/13/99 | 52.92 | 07180091 | Z14297030 |
| 06 | 1999/06 | END | I | CHECK | 07/15/99 | 125.67 | 07131698 | Z14104166 |
| 07 | 1999/05 | END | I | CHECK | 06/15/99 | 65.54 | 07087925 | Z13873187 |
| 08 | 1999/04 | END | Y | CHECK | 05/14/99 | 91.21 | 07049851 | Z13668473 |
| 09 | 1999/03 | END | I | CHECK | 04/15/99 | 196.24 | 06991032 | Z13436925 |
| 10 | 1999/02 | END | I | CHECK | 03/15/99 | 54.82 | 06965375 | Z13201935 |
| 11 | 1998/12 | END | I | CHECK | 01/15/99 | 130.85 | 06924289 | Z12868248 |
| 12 | 1998/11 | END | I | CHECK | 12/15/98 | 23.15 | 06898152 | Z12705631 |
| 13 | 1998/10 | END | I | CHECK | 11/13/98 | 76.64 | 06875277 | Z12530937 |
| 14 | 1998/09 | END | I | CHECK | 10/15/98 | 55.67 | 06852629 | Z12358803 |
| 15 | | | | | | 43.87 | | |

# EXHIBIT

# 5

Claim for Compensation
On Account of Traumatic Injury,
or Occupational Disease

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs



| 1. Name of Employee    Last | First | Middle | OMB No. 1215-0103 Expires: 10-31-99 |
|---|---|---|---|

Benson                 Cynthia

| 3. Social Security Number | 4. Period of wage loss for which compensation is claimed | 2. OWCP File Number |
|---|---|---|

318 545 758

From mo. day yr.  Thru mo. day yr.   Hours   02007312

5. Is this a claim for a schedule award?   ☐ Yes   ☐ No

6. Has any pay been received for period shown in item 4?   ☐ Yes   ☐ No

7. If yes, amount     From mo. day yr.  Thru mo. day yr.

8. Complete this item if you worked during the period shown in item 6. Attach a separate sheet if needed.

a. Salaried Employment.
Dates & Hours Worked

| | Pay Rate (Per hour, day or week) | Total Amount Earned | Type Work Performed | Name & Address of Employer |
|---|---|---|---|---|

b. Commission and Self-Employment. Show all activities, whether or not income resulted from your efforts.
Dates & Hours Worked     Name and Address of Business     Self-Employed ☐   Type of Activity Performed     Income Derived (Attach Explanation if Needed)
Commission ☐

9. Was claim made against 3rd party?   ☐ Yes   ☐ No

10. Name of 3rd party or insurance carrier

11. Has the claim been settled? Give amount recovered.

Address

City                                    State                          ZIP

12. Have you ever applied for or received benefits from the Veterans Administration based on disability incurred while serving in the Armed Forces of the United States?
☐ Yes   ☐ No     If Yes, furnish >

| a. Claim number | b. Address of VA office where claim is filed | c. Nature of disability and monthly payment |
|---|---|---|

13. Have you applied for or received an annuity under the U.S. Civil Service Retirement Act or any other Federal Retirement or Disability Law?
☐ Yes   ☐ No     If Yes, furnish >

| a. Claim number | b. Date annuity began   mo. day yr. | c. Amount of monthly payment  $ |
|---|---|---|

14. List your dependents

| Name | Date of Birth mo. day yr. | Relationship | Living with you? (yes/no) | Mailing Address, if different from your own |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

15. Support information for above dependents
Are you making support payments for a dependents shown above?   ☐ Yes   ☐ No

16. Were support payments ordered by a court? If so, attach copy of court order.   ☐ Yes   ☐ No

17. If yes, support payments are made to: Last                First                Middle

Street                          City               State          ZIP

18. Amount     $          Per

19. I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States, said injury not being due to willful misconduct on my part or to my intention to bring about the injury or death of myself or another, or to my intoxication. I have been disabled because of this injury and have not refused or failed to perform any work I was able to do during the period for which compensation is claimed, and every statement above is true to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentations, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both.

Employee's signature     Cynthia D Benson

20. Employee's home mailing address (include ZIP Code)
Street   7337 Us. Shore Dr #1430          City   Charlotte     State   Carolina

Date (Mo., day, year)   2-2-2004

# EXHIBIT

# 6

Claim for Compensation
On Account of Traumatic Injury
or Occupational Disease

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Name of Employee | | | |
|---|---|---|---|
| Last Benson | First Cynthia | Middle | OMB No. 1215-0103 Expires: 10-31-99 |

| 3. Social Security Number 3 1 8 6 4 5 7 5 8 | 4. Period of wage loss for which compensation is claimed From mo. day yr. 06 21 04 Thru mo. day yr. 08 06 04 | Hours 69 | 2. OWCP File Number 10 2007312 |
|---|---|---|---|

5. Is this a claim for a schedule award? ☑ Yes ☐ No

6. Has any pay been received for period shown in item 4? ☐ Yes ☑ No     7. If yes, amount     From mo. day yr. Thru mo. day yr.

8. Complete this item if you worked during the period shown in item 8. Attach a separate sheet if needed.

a. Salaried Employment.
Dates & Hours Worked     06-21-04  08-06-04

Pay Rate (Per hour, day or week)  FLC

Total Amount Earned

Type Work Performed  Limited work

Name & Address of Employer  USPS  #46505 S. Cicero  Matteson IL 60

b. Commission and Self-Employment. Show all activities, whether or not income resulted from your efforts.
Dates & Hours Worked  NA     Name and Address of Business  NA     Self-Employed ☐  Commission ☐     Type of Activity Performed     Income Derived (Attach Explanation if Needed)

9. Was claim made against 3rd party?  ☐ Yes ☑ No     10. Name of 3rd party or insurance carrier  NA

11. Has the claim been settled? Give amount recovered.  NA     Address  NA

City

12. Have you ever applied for or received benefits from the Veterans Administration based on disability incurred while serving in the Armed Forces of the United States?  ☐ Yes ☑ No     If Yes, furnish >

| | a. Claim number | b. Address of VA office where claim is filed | c. Nature of disability and monthly payment |
|---|---|---|---|
| | | State | ZIP |

13. Have you applied for or received an annuity under the U.S. Civil Service Retirement Act or any other Federal Retirement or Disability Law?  ☐ Yes ☑ No     If Yes, furnish >

| | a. Claim number | b. Date annuity began mo. day yr. | c. Amount of monthly payment $ |
|---|---|---|---|

14. List your dependents.

| Name NA | Date of Birth mo. day yr. | Relationship | Living with you? (Define) | Mailing Address. If different from your own. |
|---|---|---|---|---|

15. Support information for above dependents
Are you making support payments for a dependents shown above?  ☐ Yes ☐ No     16. Were support payments ordered by a court? If so, attach copy of court order.  ☐ Yes ☐ No

17. If yes, support payments are made to: Last  NA     First     Middle     18. Amount     Per

Street     City     State     ZIP

19. I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States, said injury not being due to willful misconduct on my part or to my intention to bring about the injury or death of myself or another; or to my intoxication. I have been disabled because of this injury and have not refused or failed to perform any work I was able to do during the period for which compensation is claimed; and every statement above is true to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentations, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both.

Employee's signature  Cynthia D. Benson

20. Employee's home mailing address (include ZIP Code)
Street  7337 S. Shore Dr #1430     City  Chicago     State  IL     ZIP  60649

Date (Mo., day, year)  8-11-04

# EXHIBIT

# 7

Claim for Compensation
On Account of Traumatic Injury
or Occupational Disease

U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Name of Employee    Last | First | Middle | OMB No. 1215-0103 Expires: 10-31-99 |
|---|---|---|---|
| Benson | Cynthia | Diane | |

| 3. Social Security Number | 4. Period of wage loss for which compensation is claimed | | 2. OWCP File Number |
|---|---|---|---|
| 318 54 5258 | From mo. day yr. 01 26 05  Thru mo. day yr. 03 11 05 | Hours 66 | 102007312 |

| 6. Has any pay been received for period shown in item 4? ☐ Yes ☒ No | 7. If yes, amount | From mo. day yr.  Thru mo. day yr. | 5. Is this a claim for a schedule award? ☐ Yes ☒ No |

8. Complete this item if you worked during the period shown in item 6. Attach a separate sheet if needed.

a. Salaried Employment.

| Dates & Hours Worked | Pay Rate (Per hour, day or week) | Total Amount Earned | Type Work Performed | Name & Address of Employer |
|---|---|---|---|---|
| SEE Attachment | | | | SEE Attachment Sheet |

b. Commission and Self-Employment. Show all activities, whether or not income resulted from your efforts.

| Dates & Hours Worked | Name and Address of Business | Self-Employed ☐  Commission ☐ | Type of Activity Performed | Income Derived (Attach Explanation if Needed) |
|---|---|---|---|---|
| NA | | | | |

| 9. Was claim made against 3rd party? ☐ Yes ☒ No | 10. Name of 3rd party or insurance carrier | | |
|---|---|---|---|
| 11. Has the claim been settled? Give amount recovered. | Address | | |
| | City | State | ZIP |

| 12. Have you ever applied for or received benefits from the Veterans Administration based on disability incurred while serving in the Armed Forces of the United States? ☐ Yes ☒ No   If Yes, furnish > | a. Claim number | b. Address of VA office where claim is filed | c. Nature of disability and monthly payment |
|---|---|---|---|

| 13. Have you applied for or received an annuity under the U.S. Civil Service Retirement Act or any other Federal Retirement or Disability Law? ☐ Yes ☒ No   If Yes, furnish > | a. Claim number | b. Date annuity began mo. day yr. | c. Amount of monthly payment $ |
|---|---|---|---|

14. List your dependents

| Name | Date of Birth mo. day yr. | Relationship | Living with you? (yes/no) | Mailing Address, if different from your own |
|---|---|---|---|---|
| NA | | | | |

15. Support Information for above dependents
Are you making support payments for dependents shown above? ☐ Yes ☒ No

17. If yes, support payments are made to: Last _____ First _____ Middle _____
Street _____ City _____ State _____ ZIP _____

16. Were support payments ordered by a court? If so, attach copy of court order. ☐ Yes ☐ No

18. Amount _____ Per _____

19. I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States, said injury not being due to willful misconduct on my part or to my intention to bring about the injury or death of myself or another, or to my intoxication. I have been disabled because of this injury and have not refused or failed to perform any work I was able to do during the period for which compensation is claimed, and every statement above is true to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both.

Employee's signature _____ Cynthia D. Benson _____

20. Employee's home mailing address (include ZIP Code)
Street 7337 S Shore Dr Apt 1430   City Chicago   State IL   ZIP 60119

Date (Mo., day, year) 3-12-05

MAR 16 2005 TO OWCP

# EXHIBIT

# 8

Attachment B

## UNITED STATES POSTAL SERVICE
### OFFICE OF INSPECTOR GENERAL

#### 1735 NORTH LYNN STREET
#### ARLINGTON, VA 22209-2020

### GARRITY WARNING: ACKNOWLEDGMENT OF RIGHTS

I, Cynthia Benson VTE Rescuer1 _____, have been advised by Special Agent _____, who has identified himself/herself to me as a Special Agent of the United States Postal Service, Office of Inspector General, that he/she is conducting an investigation into a matter affecting my official duties.

In connection with this, I have been advised that:

_____ 1. I have the right to remain silent if my answers may result in a criminal charge being brought against me.

_____ 2. Anything I say or do may be used as evidence in administrative proceedings, civil proceedings, or any future criminal proceeding involving me.

_____ 3. If I refuse to answer the questions posed to me on the grounds that the answers may tend to incriminate me, I cannot be discharged solely for remaining silent.

_____ 4. However, my silence can be considered in an administrative proceeding for its evidentiary value that is warranted by the facts surrounding my case.

_____ 5. This interview is strictly voluntary and I may leave at any time.

I have read the Acknowledgment of Rights or had them read to me and I understand them as set forth above.

Signature: _Refused to Sign_

Date & Time: _4/6/06_

Investigator: _____

Witnessed: _____

Place: _Matteson Post Office_

RESTRICTED INFORMATION GARRITY

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

# EXHIBIT

# 9



# UNITED STATES POSTAL SERVICE
## OFFICE OF INSPECTOR GENERAL
### 433 WEST HARRISON
### SUITE 4000
### CHICAGO, IL 60699-4000

## MEMORANDUM OF INTERVIEW

| | |
|---|---|
| Interview Date: | 11/6/06 |
| Case Name: | Benson, Cynthia |
| Case Number: | 05UICH5118H26HC |
| Interviewee: | Cynthia Benson |
| Interview Location: | Matteson Post Office |
| Interviewed By: | SA Bucciarelli WCA Taylor |
| Witnesses: | |

| Interviewee's Personal Identification Information | | | |
|---|---|---|---|
| DOB: | SSN: | HmTel: | WkTel: |
| Home Address: | | Work Address: | |

On November 6, 2006, Special Agent Nicholas Bucciarelli (SA Bucciarelli) and Workers' Compensation Analyst (WCA) James Taylor (Taylor) interviewed United States Postal Service (USPS) employee Cynthia Benson (Benson) at the Matteson Post Office in Matteson, IL. Prior to interviewing Benson, SA Bucciarelli and Taylor identified themselves and advised Benson of her Garrity Rights. Benson refused to sign the "Acknowledgement of Rights" form.

Benson advised she is currently working approximately 26 hours a week at the Matteson Post Office in a limited duty status. Benson advised she has not had permanent hours in the last several months.

Benson stated she is willing and able to return to 40 hours a week and stated her physician advised her she could return to working 40 hours a week. Benson stated her physician has advised the USPS she could return to working 40 hours a week and her postmaster, Carmen Kimble (Kimble), was aware she could return to working 40 hours a week.

| | |
|---|---|
| PREPARED BY: SA Bucciarelli | |
| APPROVED BY: ASAC Kamradt | DATE: 11/7/06 |
| | DATE: 11/7/06 |

Page 1

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

Benson stated, in recent medical documentation, her physician advised her to return to work with restrictions to include having two continuous days off for rest. Benson was asked if she felt she needed two continuous days off. Benson stated the two days off help her hands and wrists recover.

Benson stated her latest medical indicates she could work 8 hours a day, and did not understand why she was not working full time. Benson stated she feels Kimble does not want to allow her Saturday and Sunday off in a row, and therefore is scheduling her for two days off during the week to fulfill her restrictions. Benson stated she is off on Wednesday's and Thursday's. Benson stated other than the 2 continuous days off restriction, her physician states she can return to 40 hours. Benson stated she had been asking for 40 hours a week, but had recently stopped because she was not getting a response. Benson stated she felt she was being discriminated against by the USPS because she was injured.

SA Bucciarelli asked if Benson would accept a limited duty job offer to return to working 40 hours a week. Benson stated she would like to return to working 40 hours a week. Benson stated she felt she could physically work 40 hours a week. Benson said she would review the job offer with her physician prior to signing it.

Benson stated her wrists still bother her when she does repetitive work. Benson stated she does not want to have surgery because her physician advised her there is only a 50 percent chance the surgery will be successful. Benson stated she is altering her diet and taking a lot of vitamins and trying different herbs to help relieve the symptoms.

SA Bucciarelli asked Benson if she works for Mary Kay Cosmetics. Benson stated she does not work for Mary Kay; however she is a contractor for them.

Benson was shown 4 Department of Labor (DOL) forms CA-7, Claim for Compensation (CA-7), she had signed and submitted. Benson stated the signature on the forms were hers.

SA Bucciarelli read to Benson section 8b on form CA-7 which states, "Commission and Self Employment. Show all activities, whether or not income resulted from your efforts." Benson stated she probably should have included her self-employment on the forms, but did not think it was significant at the time she was filling out the form. Benson advised she did not disclose her work for Mary Kay because she did not think it was relevant. Benson advised, she barely makes any money selling Mary Kay products. Benson stated she does not get paid for selling Mary Kay every week and felt the minimal income she made was insignificant. Benson further advised she was not technically an employee of Mary Kay, rather she was a contractor. Benson advised most of the money she was making selling Mary Kay products was going back into the business.

Page 2

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

Benson recalled filling out the forms CA-7 after her normal scheduled hours at the USPS had reduced. Benson stated the little amount she made selling Mary Kay products was helping her pay bills. Benson stated she was not trying to rob the USPS and stated she recalls informing DOL of her employment. Benson stated she would have to check her records.

Benson was asked if she would like to volunteer a sworn statement regarding the information she provided SA Bucciarelli and Taylor regarding her ability to work 40 hours a week and failure to disclose her self-employment on forms CA-7. Benson stated she did not want to self-incriminate herself by writing a statement. Benson requested to speak to a union representative. Ron Stewart (Stewart), union representative, joined the interview.

Stewart and Benson left the room for approximately 5 minutes. Upon returning, Benson advised she did not want to write a statement and did not want to answer anymore question. Benson then terminated the interview.

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.