RECEIVED

JAN 0 4 2008
JAN 04 2008
MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

CH

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**Plaintiff(s)**

Cynthia D Benson
7337 S. South Shore Dr #1430
Chgo Il 60649

V.

John E. Potter,
Postmaster General
Great Lakes Area Operations

**Defendant(s)**

Case No. 07 CV 7100

Judge Castillo

## AMENDED COMPLAINT

I am Adding the results of my disability care
from Eeoc Final Agency decision and my pre Complaint form


Cynthia D Benson

Reference. 46760 - PRE-008695-2007

| Certified Mail No. | | Date Mailed *or* | Hand Delivered on |
|---|---|---|---|
| By *(Initials)* | | Case No. | |

## Information for Pre-Complaint Counseling

On __12/21/2006__, you requested an appointment with a Dispute Resolution Specialist.
  *(Month, Day, Year)*

**Important: Please read.** You should complete this form and return it to the EEO office **within 10 calendar days** of receipt. This is the only notification that you will receive regarding the necessity for you to complete this form.

### A. Requester Information

Name *(Last, First, MI)*
Benson Cynthia Diane

Social Security
318 54 5758

Home Telephone No.
(773) 375-1933

Your Mailing Address
7337 S. South Shore Dr #1430 Chgo IL, 60649

Finance Number
16-4944

Name of Postal Facility Where You Work
Matteson Post Office

Address of Postal Facility
20650 S. Cicero Ave Matteson IL 60443

Office Telephone No.
708 748 8630

Email Address*

Employment Status *(Check One)*
[ ] Applicant — Pay Location
[ ] Casual — Tour
[ ] TE — Duty Hours
[x] Career

Position Title
Clerk

Off Days *(If Tour I, Show Nights Off)*

Grade Level
6

Time in Current Position
12 Years ___ Months

Your Supervisor's Name
Charrise Jackson

Supervisor's Title
Customer Service Supervisor

Supervisor's Telephone No.
708 748 8630

*Providing this information will authorize the U.S. Postal Service to send you important documents electronically.

### B. Discrimination Factors

Prohibited discrimination includes actions taken based on your **Race, Color, Religion, Sex, Age (40+), National Origin, Physical and/or Mental Disability, or in Retaliation** (actions based on your participation in prior EEO activity). These categories are referred to on this form as factors.
What factor(s) of Discrimination are you alleging? (Please be specific, i.e., Race-African American, Sex-Female).

SEE ATTACHMENT

**For Retaliation Allegations Only.** If you are alleging retaliation discrimination, provide the date(s) and specifics of the EEO activity that you feel caused you to be retaliated against.

1. On _____, I engaged in EEO activity. Case No.: _____
      *(Month, Day, Year)*

2. On _____, I engaged in EEO activity. Case No.: _____
      *(Month, Day, Year)*

### C. Description of Incident/Action

Please use the space below to briefly describe the incident or action that prompted you to seek EEO counseling at this time.

On __December 2012__ 20 __06__
     Month, Day         Year

SEE ATTACHMENT

## D. Comparisons

Explain why, based on the factors you cited in Section B, you believe that you were treated differently than other employees or applicants in similar situations.

1. SEE ATTACHMent
*(Name of Employee)*                    Factor(s) that describe the employee, i.e., sex *(male)*, National Origin *(Hispanic)*

was treated differently than I when:

2. SEE ATTACHMent
*(Name of Employee)*                    Factor(s) that describe the employee, i.e., sex *(male)*, National Origin *(Hispanic)*

was treated differently than I when:

3.
*(Name of Employee)*                    Factor(s) that describe the employee, i.e., sex *(male)*, National Origin *(Hispanic)*

was treated differently than I when:

## E. Official(s) Responsible for Action(s)

List the name(s) of the official(s) who took the action that prompted you to seek counseling at this time.

| 1a. Name | CARMen Kimble | b. Title | PostmAster |
| c. Office | mAtteson IL 60443 | d. Grade Level | |
| 2a. Name | CHArrise JAckson | b. Title | Customer Service Supervisor |
| c. Office | mAtteson IL 60443 | d. Grade Level | |

**Retaliation Allegations Only:** Was/were the official(s) listed in Section D above aware of your prior EEO activity?

☒ No  ☐ Yes   If yes, explain how the official(s) became aware:

## F. Resolution

What are you seeking as a resolution to your pre-complaint?

SEE ATTAChment

## G. Grievance/MSPB Appeal

On the incident that prompted you to seek EEO counseling, have you:

1. Filed a grievance on the same issue?   ☒ No   ☐ Yes   If yes, _____ _____
   *(Date)*                    *(Current Step)*

2. Filed a MSPB appeal on this issue?   ☒ No   ☐ Yes   If yes, _____
   *(Date Appeal Filed)*

PS Form **2564-A**, March 2001 *(Page 2 of 3)*

## H. Anonymity

You have the right to remain anonymous during the pre-complaint process.

Do you desire anonymity?  ☒ No    ☐ Yes

## I. Representation

You have the right to retain representation of your choice. *(check one)*

☐ I waive the right to representation at this time.    ☒ I authorize the person listed below to represent me.

Name of Representative
Diana Hayes

Representative's Title
Apwu-& Union Steward

Organization
Apwu

Telephone Number
708-563-2946

Email Address

Mailing Address *(Street or P.P. Box, City, State and Zip +4)*
PO Box 188 Bedford Park IL 60499

**\* Providing this information will authorize the U.S. Postal Service to send your representative important documents electronically.**

## J. Documentation

Please attach any documentation you wish to submit to support your allegation(s). Include a copy of any written action(s) that caused you to seek counseling at this time.

Note: If you are alleging mental and/or physical disability, it is important for you to submit medical documentation of your disability during the pre-complaint process.

## K. Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses,

grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## L. Authorization

I am aware that the claim(s) contained herein shall by-pass the pre-complaint process *if* like or related to a formal complaint that I have already filed, or *if* the claim(s) constitutes a spin-off complaint. (A spin-off complaint contests the manner in which a previously filed complaint is being processed.) In completing this PS Form 2564-A, *Information for Pre-complaint Counseling*, I recognize that the Manager, Dispute Resolution will review the claim(s) contained herein and determine how they shall be processed. I will be notified, in writing, if the Manager determines that my claim(s) shall be processed as amendments or appendages to a formal complaint that I have already filed.

Please print your name here
Cynthia D. Benson

Your Signature
Cynthia D Benson

Date signed
January 3, 2007

**Please return this form to:**

National EEO Investigative Services Office
EEO Contact Center
U.S. Postal Service
PO Box 21979
Tampa FL 33622-1979

U.S. Postal Service

# Agreement to Extend 30-Day EEO Counseling Process

Case No.

Date of Contact

I, _Cynthia D Benson_, in accordance with 29 C.F.R. §1614.105(e), hereby agree to postpone the final interview and to extend the informal counseling process for a period up to 60 additional days. In signing this agreement, I understand that I retain my right to file a formal complaint if the matter(s) which I raised during counseling is not resolved within 90 calendar days from the date of my first contact with the EEO Office, and at any time thereafter up to 15 calendar days after my receiving my notice of right to file a discrimination complaint.

## Privacy Act Notice

The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a

congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees                    and                    other                    witnesses.

Signature of Counselee

_Cynthia D Benson_

Date    1-3-2007

PS Form 2567-A, March 2001

# Agreement to Participate in REDRESS®, an Alternative Dispute Resolution Process

| Case No. | |
|---|---|
| | Date Initiated |

I, Cynthia D Benson, have been advised that, in accordance with 29 C.F.R. §1614.105(f), I have the option of participating in mediation instead of the counseling process. The EEO complaints processing office has given me information about the mediation procedure, and I voluntarily agree to participate in REDRESS® mediation during the pre-complaint processing period. I am aware that REDRESS® mediation sessions are confidential, and that resolutions reached during the procedure are handled in the same manner as are resolutions reached during the counseling process. In signing this agreement, I acknowledge that the pre-complaint processing period will be 90 calendar days. If the matter that I brought to the dispute resolution specialist's attention has not been resolved before the 90th day, I have the right to file a formal complaint at any time thereafter up to 15 calendar days after receiving my notice of right to file a discrimination complaint.

| Signature of Counselee | Date |
|---|---|
| Cynthia D Benson | January 3, 2007 |

PS Form 2567-B, March 2001

## Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and /or Postal Service employees and other witnesses.

## Allegations of Discrimination Based on Age

Case No.

To: (Full Name and Address)

The Age Discrimination in Employment Act (ADEA) of 1967, as amended, prohibits discrimination in employment on the basis of age (40 years or older). The ADEA allows persons claiming age discrimination to go directly to court without going through an agency's administrative complaint procedures. The following information is being provided to you to explain the procedures concerning age discrimination.

If your complaint alleges age discrimination, you may bypass the administrative complaint process by electing not to file a formal complaint and instead filing a civil action in an appropriate U.S. district court. Before filing suit in U.S. district court, you must file a notice of intent to sue with the Office of Federal Operations, Equal Employment Opportunity Commission. You must file the notice within 180 calendar days of the date of the alleged discriminatory action. Once you have timely filed the notice of intent to sue with the EEOC, you must wait at least thirty (30) calendar days before filing a civil action.

A.  Notices of intent to sue must be mailed to the EEOC at the following address:

> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
> OFFICE OF FEDERAL OPERATIONS
> FEDERAL SECTOR PROGRAMS
> P.O. BOX 19848
> WASHINGTON DC 20036-9848

or delivered to:

> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
> OFFICE OF FEDERAL OPERATIONS
> FEDERAL SECTOR PROGRAMS
> 1801 L STREET, NW
> WASHINGTON DC 20507-0001

or faxed (if no more than 10 pages) to:

> OFFICE OF FEDERAL OPERATIONS
> FEDERAL SECTOR PROGRAMS
> (202) 663-7022.

B.  The notice of intent to sue should be dated and must contain the following information:

(1)  Statement of intent to file a civil action under section 15(d) of the Age Discrimination in Employment Act of 1967, as amended;
(2)  Name, address, and telephone number;
(3)  Name, address, and telephone number of your designated representative, if any;
(4)  Name and location of the Postal facility where the alleged discriminatory action occurred;
(5)  Date on which the alleged discriminatory action occurred;
(6)  Statement of the nature of the alleged discriminatory action(s); and
(7)  Your signature or your representative's signature.

C.  If you choose to file a formal EEO complaint, you must exhaust your administrative remedies before you can file a civil action. 29 C.F.R. §1614 provides that you exhaust administrative remedies under the ADEA: (1) 180 days after filing a complaint, if the Postal Service has not taken final action and you have not filed an appeal; or (2) within 90 calendar days after receiving a final action by the Postal Service; or (3) 180 days after filing an appeal with the EEOC; if the Commission has not issued a final decision; or (4) within 90 days after receiving the Commission's final decision on appeal.

| Signature of Dispute Resolution Specialist | Date Issued | Your Signature | Date Received |
|---|---|---|---|
|  |  |  |  |

PS Form **2563-B**, March 2001



**UNITED STATES**
**POSTAL SERVICE** ®

## Certification of Receipt — Publication 133

**Privacy Act Notice**

**Privacy Act Notice.** The collection of this information is authorized the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Disrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations,

contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

### Certification of Receipt — Publication 133

I hereby certify that on this date I received a copy of Publication 133, *What You Need to Know About EEO*, to keep for my personal records.

Signature of Recipient

*Cynthia D. Benson*

Date

*January 3 2007*

**Note:** Recipient, when you receive this form by mail, please sign and return it to the EEO Office at the same time you return your completed PS Form 2564-A, *Information for Pre-Complaint Counseling.*

### Certification of Service — Publication 133

I hereby certify that on this date, Publication 133, *What You Need to Know About EEO,*

was mailed to _____

Via Certified Mail No. _____

*or* delivered by hand to _____

Signature of Server _____

Date _____

PS Form **2563-A**, March 2001

ATTACHMENT

**What factors of Discrimination are you alleging?**

I'm filing my claim under 29 C.F.R. (code of Federal Regulations} Americans with Disabilities Act 29 CFR 1614.203 (2)(1). In August 2001, I was diagnosed with bilateral carpal tunnel syndrome and later with bilateral epicondylitis, which are both work related injuries attributed to the United States Postal Services. (See Exhibits A)  As a result of my injuries, I was placed on limited work duties.  My supervisor, Ms Jackson and the Postmaster, Ms Kimble were not pleased with this limited schedule and almost immediately begin to harass and retaliate against me. First, the Postmaster informed me that "I was good for nothing" and that she had no work for me. Second, the Postmaster reduced my hours to 13 to 24 hours per week, even though the medical statement recommended eight hours a day. Third, the Postmaster consistently failed to honor my sick leave and annual leave request. She would cut my pay instead. Fourth, the Postmaster, lengthened my lunch to 90 minutes, while all other PTF employees received only ½ hour lunch, Fifth, the Postmaster, required that I visit the doctor every month for approximately three years, Sixth, the Postmaster, consistently ignored the doctors restrictions by constantly adding duties outside of my permanently limited duties and Seventh, she allowed other PTF employees with less seniority to consistently work more hours than me, and Final, Ms Kimble conspired with Dale Schultz, IC Specialist to prevent from paying me 6 hours of pay when in fact I was entitled to10 hours, as well as falsifying documents alleging that I drove a pink car. (See Exhibits B & C)

**Description of Incident/Action**

On December 12, 2006, I was asked by my supervisor, Ms Charrise Jackson, to participate in a pre-disciplinary interview with Ms Carmen Kimble, Postmaster, a few minutes before the meeting was to begin.  My immediate response was to ask Ms. Jackson the purpose of the meeting.  She replied to me that she did not know; but it was something that she just had to do.  Since I was not informed of the purpose or the content of this meeting I was not comfortable answering any questions at that time. In addition, the steward representative, who was also present at this interview, stated he also had no knowledge of what was going on in this matter.  I strongly believed that I would have been at a disadvantage if I had participated in this interview without being able to properly prepare a defense according to the Weingarten Rights.

Therefore, on December 17, 2006, I prepared a letter to Ms Carmen Kimble, Postmaster with copies to Lolita Rice, Manager of Operations and my personnel file requesting, that she postpone an interview planned for December 19, 2006 in order to allow me time to review the case against me and to prepare a defense. I further requested copies of my personnel file; a written summary of the alleged complaint; any statutes or regulations; any and all investigative reports, memos or actual notice of proposed charges or other documents related to this case.  Additionally, on December 21, 2006 I wrote again to Ms. Kimble with copies to Lolita Rice, Charrise Jackson, Customer Service Supervisor and

Ron Steward, Union Representative. To this date, I have not received a response to my request. (See Exhibits D and E). However, on December 30, 2006, I received a letter of removal from Ms Jackson and Ms Kimble stating "unacceptable conduct". I am contending that this charge is a pretext for wanting to remove me for my on the job injury. It is apparent from this removal letter that the pre-disciplinary interview was conducted in spite of my absence and my written request for postponement. (See Exhibit F)

I contend that my right to due process of law has been grossly violated and that Ms Jackson and Ms Kimble acted with malice in their attempts to remove me from my job due to my disability. I also contend the removal in this case was too severe and the Postmaster failed to use progressive discipline since there was no history of a related or similar disciplinary action on my part. Further, I was never placed on notice of the rule or code violation and I was never advised in reasonable detail, at any time, of what the charges were and therefore was not afforded a reasonable opportunity to defend myself before discipline was issued. Also the Postmaster did not afford the union steward an opportunity to review the contents of the inspection service memorandum before the pre-disciplinary interview and therefore, neither of us were able to address allegations made in that document.

## Comparisons

Deloris Steele          Black Female PTF

She receives 40-50 hours weekly while I only receive less than 40 hours. I also have more seniority than Ms. Steele. She also only receives ½ hour lunch while I am required to take a 90 minutes lunch.

Mary Vizzard            White Female PTF

She receives 40-50 hours weekly and is not required to 90 minutes lunch breaks. I also have more seniority than Ms. Vizzard.

## Resolution

I am requesting reversal of the 30 days removal; a full-time work schedule based on medically prescribed limited work duties and all loss wages due from of work related injuries.

### UNITED STATES POSTAL SERVICE
### EQUAL EMPLOYMENT OPPORTUNITY CASE
### IN THE MATTER OF:

Cynthia Benson,
Complainant

v.

Agency Case No.    4J-604-0045-07

John E. Potter,
Postmaster General,
c/o Great Lakes Area Operations
Respondent

Formal Filed:    March 31, 2007

## FINAL AGENCY DECISION

This is the final agency decision of the U.S. Postal Service regarding your complaint of discrimination identified above.  In that complaint, you alleged discrimination based on Physical Disability (Bilateral Carpal Tunnel Syndrome) in that you had been subjected to harassment since approximately August 2001 regarding, including but not limited to, derogatory comments; reduction in work hours; sick and annual leave requests; lunch time lengthened; monthly doctor visits; worked outside of restrictions; worked less hours than others; and on December 30, 2006, you received a Notice of Removal charging you with unacceptable conduct.

## CASE CHRONOLOGY

An Equal Employment Opportunity Investigator processed your complaint, and a copy of the Investigative Report was transmitted to you on June 28, 2007. Following receipt of that report, you had 30 days in which to request a hearing before an Administrative Judge (AJ) of the Equal Employment Opportunity Commission (EEOC) or a final agency decision without a hearing.  On July 30, 2007, you requested a final agency decision on the merits of your complaint. Thus, this decision is being issued pursuant to your request.

## APPLICABLE LAW

### Person with a Disability

In order to assert a claim of disability discrimination, a complainant must satisfy the threshold requirement that he or she is a "person with a disability" as that term is defined in the Rehabilitation Act and Equal Employment Opportunity

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 2

Commission regulations. Title 29, Code of Federal Regulations, Part 1630.2(g) defines a person with a disability as an individual who (i) has a physical or mental impairment which substantially limits one or more of that person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment. See also Melahn v. Department of the Navy, EEOC Appeal No. 01832380 (October 21, 1985). Whether an individual has a disability is not based on the name or diagnosis of the impairment involved but rather the effect which that impairment has on the individual's life. Sutton et al. v. United Airlines, Inc., 527 U.S. 471, at 483 (1998). Also, the mere fact that an agency relied on a complainant's physical condition in taking a personnel action does not indicate that the agency perceived that the complainant had a substantially limiting condition. Kelly v. U.S. Postal Service, EEOC Appeal No. 01830028 (November 15, 1983). Similarly, the mere fact that an agency processed an employee's claim for benefits under the Federal Employees Compensation Act and/or granted the employee a modified work assignment in connection with that claim would not prove that the agency regarded the employee as disabled. Brown v. U.S. Postal Service, EEOC Appeal No. 01990686 (February 21, 2002).

According to EEOC regulations, major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. See 29 C.F.R. 1630.2(i). The Interpretive Appendix to the regulations also identifies sitting, standing, lifting, and reaching as other major life activities. The term "impairment" is defined broadly at 29 C.F.R. 1630.2(h) and the Commission's guidance on having a record of an impairment or being perceived as disabled appears at 29 C.F.R. 1630.2 (k) and (l). The regulations define "substantially limited" as meaning that the individual cannot perform the major life activity at all or is significantly limited in the ability to perform the activity compared to the average person in the general population. 29 C.F.R. 1630.2(j) and Toyota Motor Manufacturing of Kentucky, Inc. v. Williams, 534 U.S. 184 (2002). See also Harrison v. Department of Justice, EEOC Appeal No. 01A03948 (July 30, 2003). Courts also look to mitigating factors such as assistive devices or medication in determining whether an individual is substantially limited. Sutton, Id. Temporary or intermittent conditions are not covered. Heino v. Postmaster General, EEOC Appeal No. 01994965 (January 28, 2002); Anderson v. National Gallery of Art, EEOC Appeal No. 03910108 (September 17, 1991); and Wolfe v. Postmaster General, EEOC Appeal No. 01993796 (July 8, 2002). If the major life activity of "working" is involved, the individual must be unable to perform an entire class of jobs or a broad range of jobs within the class in order to be substantially limited. 29 C.F.R. 1630.2(j)(3). See also Webber v. Department of the Air Force, EEOC Appeal No. 01989587 (March 2, 2001).

A generalized assertion, without specific evidence to support it, that an individual is substantially limited is not sufficient to satisfy a complainant's burden of proof.

Lohr v. U.S. Postal Service, EEOC Request No. 05930799 (May 19, 1994); Zeigler v. Postmaster General, EEOC Appeal No. 01930854 (May 12, 1994) and Jenkins v. Postmaster General, EEOC Appeal No. 01954572 (March 24, 1997). It is also not enough that the agency is in possession of a diagnosis, that an individual's supervisor knows that they have a particular condition, that the complainant has an approved claim with the Office of Workers Compensation Programs, or that the complainant has a percentage disability awarded by the Department of Veterans' Affairs. Black v. U.S. Postal Service, EEOC Request No. 05930748 (May 12, 1994); Pascale v. Department of the Navy, EEOC Petition No. 03850092 (March 5, 1986); Schnabele v. U.S. Postal Service, EEOC Appeal No. 01982634 (July 13, 2001); and Bono v. Postmaster General, EEOC Appeal No. 01951113 (August 11, 1997).

## Disability – Accommodation

Assuming that a complainant has established that he or she is a person with a disability, the next element of a *prima facie* case based on a failure to accommodate is to establish that he or she is "otherwise qualified." The regulations define a "qualified individual with a disability" as a person who satisfies the requisite skill, experience, educational, and other job-related requirements of the position the individual holds or desires and who, with or without reasonable accommodation, can perform the essential functions of that position without endangering the health and safety of the individual or others. 29 C.F.R. 1630.2(m). The essential functions of a position are the fundamental job duties of the position the complainant holds or desires considering whether the position exists to perform the function, whether there are a limited number of individuals available to perform the function, or whether the function is highly specialized and the incumbent was hired for his or her expertise. 29 C.F.R. 1630.2(n). The complainant has the burden of proving that he or she is a "qualified individual with a disability." Jasany v. United States Postal Service, 755 F. 2d 1244 (6th Cir. 1985). The complainant must also show that the agency was aware of the allegedly disabling condition and that an accommodation can be made. Mikovich v. Postmaster General, EEOC Appeal No. 01A11150 (June 20, 2002) and Lincovich v. U.S. Postal Service, EEOC Appeal No. 01810610 (August 9, 1982).

If it is determined that the complainant is unable to perform the essential functions of his or her position, the next inquiry is concerning whether there is any reasonable accommodation by the employer which would enable him or her to perform those functions. White v. York International Corporation, 45 F. 3d 357, at 361-362 (10th Cir. 1995). An employer is not required to provide an accommodation which does not assist the complainant in performing the essential functions of his or her position. Conley v. Postmaster General, EEOC

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 4

Appeal No. 01984624 (July 6, 2001) The employer must be able to accommodate the individual without undue hardship. Brown v. Secretary of the Interior, EEOC Petition No. 03A00004 (May 22, 2002) and Hoang v. Postmaster General, EEOC Appeal No. 01923725 (March 30, 1993). The employer is not required to accommodate an individual by eliminating the essential functions of his or her job or by creating a job not already existing within the organization, including a light duty position. Turco v. Hoechst Celanese Corporation, 101 F. 3d 1090, at 1093-1094 (5th Cir. 1996); Shiring v. Runyon, Postmaster General, 90 F. 3d 827, at 831-832 (3rd Cir. 1996); and Watson v. Lithonia Lighting and National Service Industries, Inc., 304 F. 3d 749 (7th Cir. 2002), cert. denied 123 S. Ct. 1286 (2003) The Rehabilitation Act does not require an employer to lower or substantially modify standards to accommodate an individual or to take an action inconsistent with the contractual rights of others under a collective bargaining agreement. Jasany, 755 F. 2d at 1250-1251; Foreman v. Babcock & Wilcox Company, 117 F. 3d 800, at 810 (5th Cir. 1997); Williams v. Widnall, 79 F. 3d 1003 (10th Cir. 1996); and Hufford-Smith v. Attorney General, EEOC Appeal No. 01995040 (February 13, 2002). In addition, a disabled worker is not entitled to the reasonable accommodation which he or she prefers and must show a connection between the disabling condition and the requested accommodation. Gile v. United Airlines, Inc., 95 F. 3d 492, at 498 (7th Cir. 1996); Wiggins v. U.S. Postal Service, EEOC Appeal No. 01953715 (April 22, 1997) ; and Metzenbaum v. Office of Personnel Management, EEOC Appeal No. 01986974 (April 4, 2002).

An employer may accommodate an individual through reassignment. However, the employer does not have to accommodate him or her by promoting him to a higher level position or bumping another employee out of a job to create a vacancy. Shiring, 90 F. 3d at 832. The court held that the employee would have to establish that "…there were vacant, funded positions whose essential duties [the employee] was capable of performing, with or without reasonable accommodation, and that those positions were at an equivalent level or position [as the position the employee previously held]." Therefore, for the accommodation of reassignment to be reasonable, a position must exist within the organization and be vacant, the employee must be "otherwise qualified" to meet the criteria for this position, and the reassignment must not offend the contract rights of others under the applicable collective bargaining agreement. Foreman, 117 F. 3d at 810.

## PROCEDURAL AND FACTUAL BACKGROUND

At all times relevant to the issue in this complaint, you held the position of a Part-Time Flexible [PTF] Mail Processing Clerk, PS-05, at the Matteson Post Office, Illinois. You alleged discrimination based on Physical Disability (Bilateral Carpal Tunnel Syndrome) in that you had been subjected to harassment since approximately August 2001 regarding, including but not limited to, derogatory

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 5

comments; reduction in work hours; sick and annual leave requests; lunch time lengthened; monthly doctor visits; worked outside of restrictions; worked less hours than others; and on December 30, 2006, you received a Notice of Removal charging you with unacceptable conduct. (Investigative File [IF], Issues to be Investigated dated April 11, 2007, Exhibit 1).

You testified that you have been diagnosed with bilateral Carpel Tunnel syndrome and low back syndrome resulting from repetitive hand motion from your job as a Distribution Clerk/Mail Carrier. You asserted that the symptoms eventually worsened to include the condition of bilateral epicondylitis as a result of your employer's failure to modify your work duties to comply with your doctor's recommendations. You noted that your doctors' prognosis is that your condition is permanent. You attested that your condition has been diagnosed by four doctors; Doctor [Dr.] Maria Martinez in August, 2001; Dr. John Sonnenberg on June 12, 2002; Dr. Jay M. Brooker on February 25, 2003; and Dr. John Fernandez, Orthopedic Hand Specialist on June 29, 2004. (IF, Affidavit [Aff.] A, Attachments to Affidavit - Pages [pgs.] 95-215).

You testified that your condition substantially limits you from performing the duties of Distribution Window Clerk which require you to sort/case, distribute, and lift mail. You explained that each of these activities require some form of repetitive motion such as grasping, reaching overhead, extending your wrist, elbows or shoulders or moving mail from one position to the next at a rapid pace. You claimed that any such repetitive motion exacerbates your Carpel Tunnel syndrome or epicondylitis conditions. You stated that whenever you engaged in these activities, your hands and wrists began to ache, and you experienced sharp and excruciating pains in your neck and lower back. You commented that at times you were unable to walk upright. You testified that these conditions occur whenever you engaged in any form of repetitive movement of your hands, wrist, arms, elbows, and shoulders, any lifting of weights close to the restricted weight of 8 to 10 lbs. including twisting or turning. (IF, Aff. A, Attachments to Affidavit – pgs. 95-215).

You claimed that you have provided the Postal Service with over thirty (30) medical forms documenting your impairment beginning August 30, 2001. You stated that the medical documentation was submitted to the following management officials: Marc Sammons (Postmaster, EAS-18, Peotone Post Office), Supervisor Customer Service; Shaunnon Jackson (EAS-17, Matteson Post Office), Supervisor Customer Service; Linette Johnson (EAS-17, Whiting Post Office), Supervisor Customer Service; Charrise Jackson, (EAS-17, Matteson Post Office); and Carmen Kimble, Postmaster (EAS-21, Matteson Post Office). (IF, Aff. A, Attachments to Affidavit – pgs. 95-215).

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 6


You noted that you are currently on a home exercise hand therapy program and added that you are also required to wear a hand/wrist band and an elbow band as needed when conditions flare up and that you take Tylenol to relieve pain. You asserted the treatments or medications are less effective whenever you are engaged in repetitive hand, arm, wrist, and shoulder motions such as grasping, throwing, reaching, pulling, twisting, and lifting packages over 8 to 10 pounds. You added that there are times when the pain is so excruciating that the medication has little or no effect on relieving your pain. You commented that since the pain is a result of a damaged nerve, the medication generally does not provide relief from the pain. (IF, Aff. A, Attachments to Affidavit – pgs. 95-215).

You testified that you are unable to perform your job duties without reasonable accommodation as recommended by your doctor. You observed that your job duties require you to repetitively lift, case, sort, twist, or bend using your hands, arms, wrists and shoulders, activities that are strictly prohibited for your conditions. You asserted that your medical condition requires permanent limited duty accommodations based on your required restrictions. (IF, Aff. A).

When asked if you are currently alleging disability discrimination for being denied an accommodation for your medical condition or impairment, you stated that you are alleging that you have been discriminated against based on your disability. You claimed that you have repeatedly requested accommodations for your medical impairment, noting that over 30 written requests were submitted. You added that verbal requests were also made. You noted that you had received numerous Limited Duty Job Offer Assignment forms in response to your request for accommodation. (IF, Aff. A, Attachments to Affidavit, pgs. 95-215).

You avowed that the management did not engage in the interactive process with you concerning your accommodations according to the Americans with Disability Act (ADA) and you that you did not appear before the District Reasonable Accommodation Committee (DRAC). You claimed that management failed to converse directly with you concerning your thoughts or suggestions regarding reasonable work accommodations based on your 19 years of Postal experience. In addition, you claimed that management failed to consult with any local or state rehabilitation agencies or organizations representing or providing services to individuals with disabilities. You added that management also failed to contact the job accommodation network which helps employees make individualized accommodations. Finally, you claimed that management consistently failed to provide a permanent job modification in compliance with your doctor's recommended medical restrictions. (IF, Aff. A, Exhibit (Exh.) 4).

You indicated that you were harmed by the alleged denial of the accommodation as your bilateral Carpel Tunnel escalated to a worse condition because management failed to provide you with a permanent modified work schedule that

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 7

adhered to your doctor's recommendations. You asserted that more therapy was required because you were consistently performing duties outside your restrictions. You maintained management neglected to provide you with a permanent limited duty job assignment, leaving you in a perpetual state of temporary job fluctuation which failed to meet your medical requirements. You reasoned that a permanent job assignment would have stabilized your income, eliminated the need for the frequent doctor visits, reduced mental anxiety and stress and eliminated the verbal and mental abuse that you experienced and suffered directly from management. (IF, Aff. A).

Harassment

You explained the August, 2001 event that prompted this ongoing alleged harassment, was when you learned and informed management of your medical condition and the need for a limited work assignment.    (IF, Aff. A).

While working as a Window Clerk, you claimed Postmaster Kimble repeatedly refused to purchase an additional work shirt for you, telling you that you did not have an allowance to get another shirt. You commented that all other clerks had a minimum of two shirts each while you were forced to wash and wear the same shirt every day. (IF, Aff. A).

You testified that as your condition worsened and your doctor's restrictions increased, the harassment and tension intensified. You contended that Supervisor Sammons would scream and slam desk drawers, always responding negatively and irritably to you. You maintained that he became so hostile that you could not even ask him a simple question. You alleged that if you had to call him for anything, he behaved rudely and belligerently over the phone. (IF, Aff. A)

You alleged that no internal investigation was conducted for the issue of harassment. You asserted that you were harassed by management officials, Carmen Kimble, Mark Sammons, Shaunnon Jackson, and Charrise Jackson. When asked the reason given by the RMOs for this action, you stated that the only explanation you were given by Mark Sammons and Postmaster Kimble was that there was nothing for you to do. (IF, Aff. A).

You claimed that when you were first aware of the Carpel Tunnel Syndrome you verbally informed your immediate supervisor, Mark Sammons, of your recent doctor's visit and the reason why you were wearing wrist bands. You asserted that although you described your pain to him, he continued to give you duties which required you to throw parcels and flats throughout the day while wearing wrist bands. You claimed that once you gave written notice of your condition and medical restrictions, you were immediately sent home for an entire month by Mr. Sammons, who said, "If you can't use your hands, then we don't have any work

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 8

for you."   During this time, you stated that you made several contacts with Postmaster Kimble requesting to return to work because you needed your job. You alleged that Postmaster Kimble replied to you, "You are a clerk and you can't do any clerk functions."   You claimed that it was only after your doctor sent a letter dated February 11, 2002 to Postmaster Kimble suggesting that you try the Window Clerk position for six hours per day that you were allowed to come back to work.  (IF, Aff. A).

Derogatory Comments - Worked Less Hours than Others – Lunch Hour Lengthened

You allege that once your doctor had released you to work 40 hours per week, you immediately requested to have your hours increased.  Postmaster Kimble said that her hands were tied and what did you want her to do?  You allege that Postmaster Kimble said that "you were good for nothing." You remarked that you were instantly demoralized and could not believe what you had heard.  You were again treated unfairly when you were denied 40 hours of work per week.   You allege Deloris Steele and Mary Vizzard, both PTF's employees received 40-50 hours weekly with a ½ hour lunch break while you received less than 40 hours and a 90 minute lunch break and you allegedly had more seniority than both employees.  (IF, Aff. A).

Sick and Annual Leave Requests

You claimed that on several occasions your annual and sick leave were not timely entered into the system thus causing your paychecks to be short.   You stated that you noticed that this had become a pattern in 2006 and you approached Supervisor Charrise Jackson and threatened to file a grievance if this action continued.  (IF, Aff. A, Attachments to Affidavit – pgs. 259 - 260).

Monthly Doctor Visits

You testified that you were required by management to make monthly doctor visits because management failed to provide you with a permanent job assignment; sometimes it was necessary for you to go to the doctor more than once a month in order to get the doctor to review the limited duty job offer assignments to determine if the duties met with your restrictions.  (IF, Aff. A).

Worked Outside of Restrictions

You alleged that Postmaster Kimble repeatedly included duties requiring repetitive motion in the job offer assignments which had already been well established as prohibited activities. You claimed that that evidence supports Postmaster Kimble's willful intent to defy or disregard your medical restrictions.

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 9

For instance, after the doctor's report of July 10, 2003, you were presented a job offer including casing and lifting, both requiring repetitive hand motion. You claimed that the documentation prohibiting repetitive motion dates back as far as August, 2001. You contented that based on the doctor's February 12, 2004, report of medical restrictions, you were presented a job offer which included extensive writing requiring repetitive hand and wrist motion. You asserted that based on the doctor's report of September 3, 2004, Postmaster Kimble ignored the doctor's release for you to work 40 hours per week with two consecutive days of rest. You added that based on a doctor's report of January 12, 2005, a limited duty job order assignment blatantly rejected the doctor's modifications regarding restricted duties of casing mail, a repetitive hand motion. (IF, Aff. A, Attachments to Affidavit – pgs. 217 – 257).

Notice of Removal

You testified that you are currently in a 'Removal' status from your position as a Distribution Clerk. You claimed you have filed a grievance on the Notice of Removal and this grievance has been moved to the arbitration process and is still pending. (IF, Aff. A, Attachments to Affidavit – pgs. 19 - 23).

Records reveal a Notice of Removal dated December 30, 2006 was issued to you for Unacceptable Conduct as Evidenced by your Failure to Disclose Pertinent Information on Department of Labor Forms CA-7, Claim for Compensation on Account of Traumatic Injury or Occupational Disease signed by Supervisor Charrise Jackson and Postmaster Carmen Kimble. In essence the charge reflects your having received monetary compensation from Mary Kay, Inc. a number of times during the time you were claiming that you received no other pay such as commission or as the result of being self-employed. You continually stated "NA" when posed the question in regard to wage loss on the CA-7. An investigation by the Office of Inspector General (OIG) revealed this discrepancy. Though you acknowledge receiving these funds, you believed this pay was irrelevant and that you were not employed by Mary Kay, but rather were a contractor. (IF, Aff. A, Attachments to Affidavit – pgs 26 – 32)

On December 12, 2006, you testified that you were asked by your supervisor, Charrise Jackson, to participate in a Pre-Disciplinary Interview with Postmaster Kimble. You maintained that you were not informed of the purpose or the content of this meeting and were not comfortable answering any questions at that time. In addition, you stated that the union representative stated he also had no knowledge of what was going on. You believed you would have been at a disadvantage if you participated in this interview without being able to properly prepare a defense; therefore, on December 17, 2006, you prepared a letter to Postmaster Kimble, with copies to Lolita Rice, Manager of Operations, Ms. Charrise Jackson, and Ron Steward, Union Representative, requesting that the

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 10

interview be postponed in order to allow you time to review the case against you and to prepare a defense. You noted that you requested copies of your personnel file; a written summary of the alleged complaint; any statutes or regulations; any and all investigative reports, and memos or actual notice of proposed charges or other documents related to this case. However, you were issued the Letter of Removal citing "unacceptable conduct." (IF, Affidavit A, Attachments to Affidavit – pgs. 33 – 34, 26 - 31).

You contended that this charge is a pretext for wanting to remove you for your on the job injury and disability. You asserted that it is apparent from this removal letter that the Pre-Disciplinary Interview was conducted in spite of your absence and written request for postponement. You alleged that your right to due process of law has been grossly violated and that Supervisor Jackson and Postmaster Kimble acted with malice in their attempts to remove you from your job due to your disability. You also allege that the removal was too severe and the Postmaster failed to use progressive discipline since you had no history of a related or similar disciplinary action. You further reasoned that you were never placed on notice of the rule or code violation and you were never advised in reasonable detail of what the charges were and therefore were not afforded a reasonable opportunity to defend yourself before discipline was issued. You claimed the Postmaster did not afford the union an opportunity to review the contents of the Inspection Service Memorandum and therefore, were unable to address the allegations made in that document. As a result, you testified that you had not worked since January 30, 2007. (IF, Aff. A).

When asked if you ever advised the RMOs that you considered their conduct to be offensive or considered it harassing, you testified that when you discussed your hours and work duties with Postmaster Kimble, you expressed your concerns with the unfairness of the way you were being treated and that you felt that you had a justifiable grievance against management. You stated that Postmaster Kimble's reaction was that she felt that there was nothing that you could do there. You noted that she gave you a memo with a phone number to an individual that she claimed could help you with disability retirement assistance. You testified that at this point it became crystal clear to you that Postmaster Kimble would do anything to get you out of the Postal Service rather than to seek outside assistance for employment accommodations. You alleged that you also discussed with Postmaster Kimble about her making false claims to Dale Shultz of the Workman's Compensation Division that you drove a pink car; Postmaster Kimble responded that she did not make such claims. However, you noted that it was evident that she had been in direct communication with Ms. Schultz as indicated by an email from Ms. Schultz to Postmaster Kimble wherein it is stated that Postmaster Kimble requested that your (OWCP) claim be denied. You assert that the email also confirms Ms. Kimble's willful and malicious intent to cause you distress by cutting your workman's compensation pay. You considered

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 11

Postmaster Kimble's actions gross misconduct.    (IF, Aff. A, Attachment to Affidavit – pgs. 33 – 34).

You alleged that you also discussed your concerns with Linette Johnson, your immediate supervisor, and Supervisor Johnson indicated that she could not believe that Postmaster Kimble would treat you this way knowing that you had a well-documented on-the-job injury. You added that Supervisor Johnson also stated her unwillingness to go along with the harassment when it was evident to her that you never did anything out of line and were cordial with everyone. You testified that you discussed this situation with co-workers: Linette Johnson in 2004-2005; Samuel Andrews in 2004-2005; and Delois Steele in 2003-2005. You attested that there was never a collaborative effort to bring this situation before management officials. (IF, Aff. A).

You believed that this action was discrimination based on your medical condition as management has never hidden the fact that due to your disability, you were no longer able to perform at the level of productivity that they were accustomed to receiving. You asserted that before your disability, you were able to case mail at an above average rate per tray and were always relied upon to efficiently expedite the mail. You believed your disability created much frustration and anxiety for management. You contend that once you were unable to perform the normal duties of a distribution clerk, management began to treat you differently and unfairly. (IF, Aff. A).

You observed that the ADA states, "Frequently, when a qualified individual with a disability requests a reasonable accommodation, the appropriate accommodation is obvious; the individual may suggest a reasonable accommodation based upon her own life or work experience. However, when the appropriate accommodation is not readily apparent, you must make a reasonable effort to identify one. The best way to do this is to consult informally with the employee about potential accommodations that would enable the Individual to perform the essential functions of the job. If this consultation does not identify an appropriate accommodation, you may contact the EEOC, state or local vocational rehabilitation agencies, or state or local organizations representing or providing services to individuals with disabilities." You asserted that management failed to do any of the foregoing and therefore are in violation of the Act. You contended that your right to due process of law has been grossly violated and Supervisor Jackson and Postmaster Kimble acted with malice in their attempts to remove you from your job due to your medical condition. (IF, Aff. A).

You alleged that your due process rights were violated in the grievance process because management failed to comply with Article 15 of the National Agreement between the Postal Service and the American Postal Workers Union since the Step 2 decision maker was involved in the initial decision to terminate you. You

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 12

further charged continual violation of your Weingarten rights to include when on December 12, 2006 during the Pre-Disciplinary Interview your representative was expected to proceed with the interview within minutes of being requested to participate. You charged that your representative's ability to offer fair and informed assistance and counsel was grossly violated, again leaving you defenseless, and your right to pre-interview consultation was also violated. On December 19, 2006 you were again ensnared by management to attend a Pre-Disciplinary Interview despite not receiving documents pertaining to the case, as well as additional time to prepare a defense. Further, management proceeded without your participation in the interview. You reiterated that the manager can deny the worker's request for representation, and not hold the interview at all. (IF, Aff. A, Attachments to Affidavit - pgs. 36 -37, 41- 42, 51, Exh. 10)

You contend that management did not point to any specific procedures or policies that were violated. Management never placed you on notice of the rules violated or made you aware of the substance of the case against you. You contend that management failed to provide progressive and/or corrective discipline and maintained that you have never been reprimanded or disciplined for similar activities. You asserted that the statute of limitations has expired since the charges alleged were more than three years ago and you contend that management lacked just cause for a removal since it failed to conduct a full, fair, and impartial investigation before taking action. You argued that the severity of the discipline is not in line with the charges. It is your belief that the decision was based on emotionalism and/or discrimination. (IF, Aff. A).

You testified that your employment with the Postal Service represented a contract wherein both the employee and employer have responsibilities to uphold. You asserted that you have always acted with the highest level of integrity and loyalty to your employer. You acknowledged that while you have made mistakes, you stated that none were of willful intent to jeopardize your employment or harm the Postal Service. You testified that the CA-7 was a complicated form which made it difficult for you to understand. You claimed that you have recently resubmitted the CA-7s in question and have had to consult with the Department of Labor to get clarity on a few of the questions. You noted that the original form that you were required to complete has been modified and does not include the question which was the basis for your removal. In other words, you explained that if you were required to submit a CA-7 today, the question regarding income does not exist, making it appear to be insignificant or irrelevant to the matter. On the other hand, you asserted that the employer has the responsibility for acting objectively, fairly, honestly and equitably, and following the policies and procedures; rules and regulations; and protecting to the utmost the employee's due process of law. (IF, Aff. A, Attachments to Affidavit - pgs. 44 – 49).

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 13

You testified that management has failed considerably by breaching your Weingarten Rights, violating the EL-921; failing to uphold Article 15, and by violating the ELM (Employee Labor Relation Manual). You claimed that management is responsible for reporting the facts honestly and accurately. You asserted that the Letter of Removal is fraught with erroneous information and misstatements. You indicated management stated that you earned $14,366 during the period of January 15, 2002 through August 15, 2005, earnings over a total period of 32 months. You added that they contend that an omission of this scope is the basis for the decision for removal. You avowed that, in actuality, the period in question, namely, December 13, 2003 through December 26, 2006, January 24, 2004 through February 6, 2004, June 21, 2004 through August 6, 2004, and January 26, 2005 through March 31, 2005 total only four months for $3,922.78 with a net loss of $1,056.58. You maintained that it is misleading and dishonest to claim that you omitted this information, when in fact you were never asked or required to provide this information. (IF, Aff. A, Attachments to Affidavit - pgs. 19 - 23 ).

## COMPLAINANT'S *PRIMA FACIE* CASE

Disability Claim

In order to assert a claim of disability discrimination, a complainant must satisfy the threshold requirement that he or she is a "person with a disability" as that term is defined in the Rehabilitation Act and Equal Employment Opportunity Commission regulations. Title 29, Code of Federal Regulations, Part 1630.2(g) defines a person with a disability as an individual who (i) has a physical or mental impairment which substantially limits one or more of that person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment. See also Melahn v. Department of the Navy, EEOC Appeal No. 01832380 (October 21, 1985).

As is indicated by the record evidence and the applicable law section above, you have not established that you are an "individual with a disability" as defined by the Rehabilitation Act. The mere fact that an agency processed an employee's claim for benefits under the Federal Employees Compensation Act and/or granted the employee a modified work assignment in connection with that claim would not prove that the agency regarded the employee as disabled. Brown v. U.S. Postal Service, EEOC Appeal No. 01990686 (February 21, 2002). While the documentation in the Investigative File indicates that some of your impairments may be limiting, you provided no evidence that you were substantially limited in any major life activity.

In order to show yourself a person with a disability under the Act, you must demonstrate that the medical condition substantially limits one of your major life

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 14

activities. <u>Melahn v. Dept of Navy</u>, No. 01832380 (1985). A generalized allegation that a major life activity is affected by a medical condition is insufficient to establish that the condition in fact substantially limits a major life activity. In order for a limitation of a major life activity to be substantial, it must either render an individual unable to perform that life activity or significantly limit the ability to perform that activity when compared to the average person. <u>Toyota Motor Manufacturing, Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002). In other words, it is possible for an impairment to affect major life activities, but not place a substantial limitation on those activities. The term "substantially limits" means that you are significantly restricted as to the condition, manner or duration under which you can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j) (1). Major life activities include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i).

On its face, the record does not establish that you have any major life activity that is substantially limited by your medical impairments. You speak to the limitations your condition presents in the performance of your job.  (IF, Affidavit A). However, you failed to provide evidence regarding how you were substantially limited compared to the average person. *See* <u>Davis v. United States Postal Service</u>, EEOC Appeal No. 01A42275 (August 26, 2005); <u>Harvey et. al. v. United States Postal Service</u>, EEOC Appeal Nos. 07A10074; 07A10091; 07A10092; 07A10113 (July 11, 2003) (arm injury that affected tasks like cooking, putting the dishes away, lifting pots, putting on necklaces, and hugging her family found not a substantial limitation of ability to perform manual tasks). *See* <u>Miles v. United States Postal Service</u>, EEOC Appeal No. 01A12528 (March 13, 2003) (complainant not substantially limited in major life activities of walking or standing where complainant did not provide evidence relating to his walking or standing limitations, beyond a doctor's indication that he could do so between 1 and 4 hours per workday); *See* <u>Thompson v. United States Postal Service</u>, EEOC Appeal No. 01971189 (August 31, 2000) (complainant who is unable to walk and/or stand for more than three to four hours at a time is not substantially limited in ability to walk or stand); *see also* Appendix, 1630.2(j)(1).

"Working" may also be considered a major life activity, however, where "working" is the life activity that is claimed to be substantially limited, the evidence must show that you are unable to perform an entire class of jobs, or a broad range of jobs within the class, in order to be substantially limited. 29 C.F.R. 1630.2(j)(3). See also <u>Webber v. Department of the Air Force</u>, EEOC Appeal No. 01989587 (March 2, 2001). In short, you have failed to establish that you are person with a disability within the meaning of the Rehabilitation Act, and for that reason you have not met the elements of a *prima facie* claim for disability discrimination.

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 15

A generalized assertion, without specific evidence to support it, that an individual is substantially limited is not sufficient to satisfy a complainant's burden of proof. Lohr v. U.S. Postal Service, EEOC Request No. 05930799 (May 19, 1994); Zeigler v. Postmaster General, EEOC Appeal No. 01930854 (May 12, 1994) and Jenkins v. Postmaster General, EEOC Appeal No. 01954572 (March 24, 1997). It is also not enough that the agency is in possession of a diagnosis, that an individual's supervisor knows that they have a particular condition, that the complainant has an approved claim with the Office of Workers Compensation Programs, or that the complainant has a percentage disability awarded by the Department of Veterans' Affairs. Black v. U.S. Postal Service, EEOC Request No. 05930748 (May 12, 1994); Pascale v. Department of the Navy, EEOC Petition No. 03850092 (March 5, 1986); Schnabele v. U.S. Postal Service, EEOC Appeal No. 01982634 (July 13, 2001); and Bono v. Postmaster General, EEOC Appeal No. 01951113 (August 11, 1997).

The fact that you accepted and continued to work your modified job is an indication that you are not substantially limited in the major life activity of working. As you have not shown that you are an individual with a disability as defined by the Rehabilitation Act, you have failed to establish a *prima facie* case of disability discrimination.

Finally, assuming that you established that you are a person with a disability, the next element of a *prima facie* case based on a failure to accommodate is to establish that you are "otherwise qualified." The regulations define a "qualified individual with a disability" as a person who satisfies the requisite skill, experience, educational, and other job-related requirements of the position the individual holds or desires and who, with or without reasonable accommodation, can perform the essential functions of that position without endangering the health and safety of the individual or others. 29 C.F.R. 1630.2(m). The essential functions of a position are the fundamental job duties of the position the complainant holds or desires considering whether the position exists to perform the function, whether there are a limited number of individuals available to perform the function, or whether the function is highly specialized and the incumbent was hired for his or her expertise. 29 C.F.R. 1630.2(n). The complainant has the burden of proving that he or she is a "qualified individual with a disability." Jasany v. United States Postal Service, 755 F. 2d 1244 (6th Cir. 1985).

If it was determined that you are unable to perform the essential functions of your position, the next inquiry is concerning whether there is any reasonable accommodation by the employer which would enable him or her to perform those functions. White v. York International Corporation, 45 F. 3d 357, at 361-362 (10th Cir. 1995). An employer is not required to provide an accommodation which does not assist the complainant in performing the essential functions of his or her

position.  Conley v. Postmaster General, EEOC Appeal No. 01984624 (July 6, 2001) The employer must be able to accommodate the individual without undue hardship.  Brown v. Secretary of the Interior, EEOC Petition No. 03A00004 (May 22, 2002) and Hoang v. Postmaster General, EEOC Appeal No. 01923725 (March 30, 1993).

You have not established yourself as a person with a disability, therefore the issue of whether you are otherwise qualified is not pertinent to your claim. However, record evidence and testimony discloses you were provided with reasonable accommodation in the form of Limited Duty Job Offers. The last limited duty job offer outlined your duties to include: Customer Service Advisor-Customer Service Assistance and Telephone. Representative Passport Processing and Acceptance, Finalize 8125 Drop Shipment scanning and updating receipts, Bulletin Board Maintenance and Updates throughout the facility, APC Director and Lobby Director; Coordinator of Lobby beautification; other work related activities that are within your medical restrictions, all 8 hours as needed.  (IF, Aff. A, Attachment to Affidavit A – pg. 255)

The physical requirements to perform the above tasks of the modified assignment must be in accordance with the physical restrictions based on medical documentation that include: Lifting/carrying 8 lbs 1-2 hours; Walking 8 hours; Pushing/Pulling 15 lbs, 1-2 hours w/cart; Standing 8 hours; Bending/Stooping 4-5 hours;  Sitting 8 hours; Twisting 4-5 hours; Reaching Above Shoulder 1-2 hours none over shoulder; Kneeling 4-5 hours; Driving 1-2 hours; Simple grasping Within restrictions.  Supervisor Jackson testified you were provided with 27 hours of work within your medical restrictions as a Part-Time-Flexible employee.  The record evidence is clear that you were provided accommodation within your restrictions.

Disability Claim - Harassment

Postmaster Kimble testified that your physical condition was never considered on any decisions she made.  She asserted that you never asked her for another shirt and explained that the other clerks assigned to window services are full-time and would have a uniform allowance, so she would not be required to buy them shirts. She did not know how many shirts you had as you had not worn a uniform shirt in several years, since you quit doing window clerk duties.  Postmaster Sammons testified that he had left your office in May 2002 and didn't even remember what injury or illness you had. (IF, Aff. B, C).

Disability Claim - Reduction in Work Hours

Postmaster Kimble testified your work hours were reduced as required by your limitations of two consecutive days off and asserted that you worked the required

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 17

number of hours suggested by Injury Compensation that were averaged prior to you disability, which were 27 hours per week. (IF, Aff. B).

Disability Claim – Sick and Annual Leave Requests

Postmaster Kimble indicates that she was not aware of your allegation that on several occasions your annual and sick leave were not timely entered into the system thus causing your paychecks to be short. Supervisor Charrise Jackson affirmed that you approached her on two occasions about your leave not being on your paycheck. She stated that she explained to you that one had been a system error and the other was human error, not deliberate. (IF, Aff. B, E).

Disability Claim – Lunch Hour Lengthened

Postmaster Kimble testified your work hours were reduced as required by your limitations of two consecutive days off and asserted that you worked the required number of hours suggested by Injury Compensation. Record evidence also disclosed that in order to accommodate your medical restrictions your lunch hour had to be extended. (IF, Aff. B, Attachment to Affidavit A – pg. 255).

Disability Claim – Monthly Doctor Visits

Postmaster Kimble affirmed that it was sometimes necessary for you to go to the doctor more than once a month in order to have your doctor review the limited duty job offer assignments to determine if the duties met with your restrictions. She noted that Injury Compensation required monthly updates for employees on limited duty; this requirement was to substantiate continued limited duty status. Postmaster Kimble indicated that you were presented with new limited duty job offers only when there was a change in restrictions. (IF, Aff. B).

Disability Claim – Worked Outside of Restrictions

Postmaster Kimble testified that each CA-17 (Limited Duty Job Offer) submitted to a physician has the job duties consistent with the position and the physician is required to state the limitations of the employee. She affirmed that upon returning from the physician with the limitations prescribed by your physician, you signed a job offer to perform the duties within your restrictions. indicates that she had no documentation to substantiate your claim that these job offer assignments presented required repetitive motion in the job offer assignments. Supervisor Shaunnon Jackson testified that you were worked within your restrictions and denied your allegation you were worked outside of your medical restrictions. also testified that comparative employees Debbie Meyers-Nigero, Samuel Andrews and Stephan Nykaza, were never required to work outside of their restrictions as alleged. (IF, Aff. B, D).

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 18

Disability Claim – Worked Less Hours than Others

Postmaster Kimble testified your work hours were reduced as required by your limitations of two consecutive days off and asserted that you worked the required number of hours suggested by Injury Compensation, 27 hours per week.    She testified that employees Debris Steele and Mary Vizzard were not comparative as they did not have any medical restrictions.  (IF, Aff. B).

Disability Claim – Notice of Removal

Postmaster Kimble testified that you were issued the Notice of Removal based on an investigation conducted by the Office of Inspector General – Inspection Service.  Postmaster Kimble and Supervisor Charrise Jackson both testified that you were issued this Notice of Removal based on your failing to disclose pertinent information on Department of Labor Form CA-7, Claim for Compensation on Account of Traumatic Injury or Occupational Disease. Supervisor Jackson reiterated that she issued the discipline to you and the Postmaster concurred.  She maintained that management complied with Article 15 and your rights were not violated.    Testimony and record evidence disclosed that you were provided with opportunities to have a representative available, time to prepare for your defense and opportunities to file your grievance within applicable regulations.  Additionally, Postmaster Kimble and Supervisor Jackson both testified that your Weingarten rights were never violated.  Accordingly, you have failed to prove a *prima facie* case of disability discrimination.  (IF, Aff. B, E.)

## MANAGEMENT'S LEGITIMATE NON-DISCRIMINATORY REASON

Postmaster Kimble testified that your physical condition was never considered on any decisions she made during this matter.  Postmaster Kimble testified that you have been in a limited duty status since August, 2001 and that you have Carpel Tunnel which prevents you from performing the requirements of your original position of Distribution Clerk as you could no longer case mail or lift over ten pounds; you could have no repetitive motion, and you needed two consecutive days off to rest your wrists.    She affirmed that you provided medical documentation to substantiate your condition, including regular updates as required by the Injury Compensation Department. (IF, Aff. B).

Postmaster Kimble asserted that you never asked her for another shirt, full-time window services personnel had a uniform allowance; she did not know how many shirts you had, you had not worn a uniform shirt in several years.  She denied that she told you that you were good for nothing.  She has no knowledge of your allegations that Postmaster Sammons would scream and slam desk drawers and was always responding negatively and irritably toward you.  (IF, Aff. B).

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 19

Postmaster Kimble attested that she did not recall a discussion with you where she told you that you were a Clerk and could not do Clerk functions. She asserted that the only conversation she recalled about you being a Clerk was when you asked her if it would be possible for you to transfer to another office. Postmaster Ms. Kimble stated that she told you that as a Clerk, the likelihood that an office would accept an employee with limitations that prevented you from performing the duties of Clerk would not happen. She added that she told you that she could write letters to various offices requesting a transfer, but it would be up to the other office to accept you and she could not influence them either way. Postmaster Mark Sammons testified that he had left your office in May 2002 and didn't even remember what injury or illness you had. (IF, Aff. B, C).

Postmaster Kimble maintained that your work hours were reduced as required by your limitations of two consecutive days off and asserted that you worked the required number of hours suggested by Injury Compensation that were averaged prior to you disability, which were 27 hours per week. She added that your lunch time was lengthened to meet the needs of the service and provide work within your limitations. She asserted that you could not work the same hours as others because you had restrictions, whereas, the others did not and at times there was no work available within your restrictions. She stated that some annual leave requests were denied because you did not have enough annual leave to cover your requests. (IF, Aff. B).

When asked why you were only allowed to come back to work after your doctor suggested you try the window clerk position, Postmaster Kimble testified that she did not have any documentation that this took place. She noted the accident report o f February 13, 2002 stating you brought in a doctor's s tatement on January 8, 2002, after being off sick for a week, and your restrictions included no lifting 0-10 lbs and no sorting mail. Postmaster Kimble asserted that she told you that although you could work 40 hours per week, your current limitations prevented you from doing so because you needed two consecutive days off, which could not be Saturday and Sunday or Sunday and Monday becaus e Saturday and Monday were their busiest days of the week. With your current restrictions, she reasoned that this would only allow you to work four days a week, eight hours per day, otherwise you would go into an overtime status after eight hours which could not be justified based on your restrictions and limitations. (IF, Aff. B).

When asked about your allegations of harassment and your belief that Postmaster Kimble would do anything to get you out of the Postal Service rather than to seek outside assistance for employment accommodations, the Postmaster reasoned that she stood no personal gain if you stay or leave the

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 20

Postal Service. She indicated you were provided accommodations to work 27 hours per week within your limitations since 2001. (IF, Aff. B).

Supervisor Charrise Jackson reiterated that the Postal Service provided you with accommodations in that you were provided limited job duties within your restrictions for 27 hours per week since your injury. (IF, Aff. E).

Record evidence and testimony disclosed that your lunch was extended in order to provide you work within your restrictions and provide you with two consecutive days off. (IF, Aff. B, Attachments to Affidavit A – pg. 255).

Sick and Annual Leave Requests

Postmaster Kimble indicates that she was not aware of your allegation that on several occasions your annual and sick leave were not timely entered into the system thus causing your paychecks to be short even more. She noted that a Supervisor, Customer Services would be responsible for inputting your annual and sick leave. (IF, Aff. B).

Supervisor Charrise Jackson affirmed that there was no discrimination involved. She stated that any leave requests that were denied would have been due to your not having enough leave to cover the requests. She affirmed that you approached her on two occasions about your leave not being on your paycheck. She stated that she explained to you that one had been a system error and the other was human error, not deliberate. Supervisor Jackson testified that she was responsible for inputting your annual and sick leave from August, 2005 to present. (IF, Aff. E).

Monthly Doctors Visits

Postmaster Kimble affirmed that it was sometimes necessary for you to go to the doctor more than once a month in order to get the doctor to review the limited duty job offer assignments to determine if the duties met the restrictions. She noted that Injury Compensation required monthly updates for employees on limited duty to substantiate continued limited duty status. (IF, Aff. B).

Regarding your allegation that you were required by management to make monthly doctor visits because management failed to provide you with a permanent job assignment, Supervisor Shaunnon Jackson stated that at one particular time your restrictions were not permanent and that employees are required to make monthly doctor's visits. Supervisor Jackson affirmed that you were presented with limited duty job offers every 30 days after your updated medical was received. (IF, Aff. D).

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 21

When asked about your allegation that you were required by management to make monthly doctor visits because management failed to provide you with a permanent job assignment, Supervisor Charrise Jackson acknowledged that there was one time when you were asked to go to the doctor when Injury Compensation required additional documentation to be completed by your physician. (IF, Aff. E).

Worked Outside of Restrictions

Regarding your allegation that  repeatedly included duties requiring repetitive motion in the job offer assignments that had already been well established as prohibited activities,  testified that each CA-17 (Limited Duty Job Offer) submitted to a physician has the job duties consistent with the position and the physician is required to state the limitations of the employee.   She affirmed that upon returning from the physician with the limitations prescribed by your physician, you signed a job offer to perform duties within your restrictions.   indicates that she had no documentation to substantiate your claim that these job offer assignments presented required repetitive motion in the job offer assignments.  (IF, Aff. B, Attachment to Affidavit A – pgs. 217 -257).

When asked about your allegation about duties requiring repetitive motion in your job offer assignments, Supervisor Shaunnon Jackson commented that writing was not ongoing or constant.  He indicated that this job offer assignment was presented before the dates of the restrictions.  Supervisor Jackson testified that you were worked within your restrictions. For the remaining incidents as alleged by you, Supervisor Jackson indicated that he did not witness them or that he had no knowledge of them. (IF, Aff. D).

Supervisor Charrise Jackson testified that she was aware that you had Carpel Tunnel as she became aware when she became your supervisor in August, 2005. Supervisor Jackson indicated that medical documentation was provided to her as required by Injury Compensation.  Ms. Jackson attests that you were unable to perform the regular duties of a Distribution Clerk.  She explained that the essential functions of the Complainant's position are casing and distributing letters, flats and parcels, Post Office box mail, scanning parcels and accountable items, and Sales and Service Associate duties.  Supervisor Jackson testified that the functions that you could perform due to your physical condition were as follows: no casing mail, distributing parcels, no Sales and Service Associate duties (window clerk), no repetitive duties.  Supervisor Jackson asserted that you were not referred to the District Reasonable Accommodation Committee (DRAC) for your medical condition because work was being provided within your restrictions. (IF, Aff. E).

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 22

Notice of Removal

Postmaster Kimble claimed that you are currently in a LWOP status, pending Removal. She noted that a grievance was filed on the above activity (Removal) and stated that the grievance was currently at the arbitration step of the grievance process. She testified that an Internal Investigation was done by the Inspection Service. Her involvement was as the concurring official in the disciplinary process. She disagreed that there has been any harassment, or derogatory comments. (IF, Aff. B).

When questioned about your notification of a Pre-Disciplinary Interview on December 12, 2006, Postmaster Kimble asserted that a Pre-Disciplinary Interview does not require prior notification. She explained that it is a part of the investigation and gives the employee an opportunity to give their answers to the questions presented. She noted that you stated you needed time to review your records and requested another opportunity to discuss your answers a few days later, which was granted. She noted that the Pre-Disciplinary Interviews occurred on December 12, 2006 and December 19, 2006. She also testified that other employees are not given advance notice of a Pre-Disciplinary Interview so that they can prepare for it. (IF, Aff. B).

Postmaster Kimble affirmed that you were issued a Notice of Removal on December 30, 2006 which was issued by Charrise Jackson and concurred by her. In response to your allegation that you were not afforded a reasonable opportunity to defend yourself before discipline was issued, she maintained that you and your representative were allowed (time) to review and discuss the findings of the Investigative Memorandum, but you declined. (IF, Aff. B).

Postmaster Kimble denied that your rights to the Step 1 and Step 2 (grievance) process were violated or that your Weingarten rights were violated. She testifies that your medical condition was not a consideration in these incidents. (IF, Aff. B)

Postmaster Kimble acknowledged that you once mentioned your allegation of her making false claims to Dale Shultz that you drove a pink car. She claimed that she does not know anything about you driving a pink car, nor did she have this discussion with Injury Compensation. She stated that as far as she knew, you drove a red car. (IF, Aff. B)

When asked about your allegation that the Postmaster suggested to Ms. Schultz that your claim be denied, Postmaster Kimble reasoned that she did not have the authority to approve or deny any injury compensation claim. She states that the Department of Labor approves and disapproves claims. (IF, Aff. B).

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 23

Marc Sammons testified that he is the Postmaster of the Peotone Post Office, Illinois. Postmaster Sammons testified that he has not supervised you since May, 2002. He added that he took no documentation with him when he left the Matteson Post Office. Postmaster Sammons asserted that he had no knowledge of anything that has transpired since May, 2002. Postmaster Sammons testified that he did not remember what injury or illness you had. He stated that he knew you were off for an extended period caring for your sick Father and commented that the last time he worked with you, you were working within your restrictions as a Window Clerk. Postmaster Sammons testified that he did not remember what your exact problem was, but you were only able to work a certain amount of hours in a day. (IF, Aff. C).

Shaunnon A. Jackson testified that he is Supervisor, Customer Services at the Matteson Post Office, Illinois. He clarified that he is not your current supervisor, but Charrise Jackson is. Supervisor Jackson attested that he did supervise you for about five to seven months, four to six months of which were during the time of the accepted claim. (IF, Aff. D).

Charrise Jackson testified that she is Supervisor, Customer Service of the Matteson Post Office and that she has been in the position since August, 2005. Supervisor Jackson testified that she issued a Notice of Removal to you on December 30, 2006. She noted that Postmaster Carmen Kimble concurred with the Removal. She maintained that Management complied with Article 15 and your rights to the Step 1 and Step 2 process were not violated. (IF, Aff. E).

<u>Hostile Work Environment/Harassment</u>

The essential elements of a hostile environment harassment claim are: 1) The complainant belongs to a protected category; 2) The complainant was subjected to unwelcome verbal or physical conduct; 3) The conduct was based on the complainant's protected status; and 4) The conduct was sufficiently severe or pervasive that it created a hostile, abusive or offensive work environment or unreasonably interfered with the complainant's work performance; and (5) There is a basis for imputing liability to the employer. *See* <u>McCleod v. Social Security Administration</u>, EEOC Appeal No. 01963810 (August 5, 1999) (*citing* <u>Henson v. City of Dundee</u>, 682 F.2d 987, 903 (11th Cir. 1982).

You have not established the first element of your harassment claim in that you have failed to make a *prima facie* case of discrimination based upon physical disability.

However, considering for the purposes of arguendo only that you did meet the required elements of a disabled person based upon the definition under the Rehabilitation Act, which you have not, the analysis will continue.

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 24

You alleged that you were subjected to harassment over the past 5 or more years when your work hours were reduced, your sick and annual leave requests were not timely entered into the system, your lunch hour was lengthened, monthly doctors visits were required, you were forced to work outside your restrictions, you worked less hours than others and finally you received a notice of removal.

Record evidence and testimony disclosed that your work environment was not so sufficiently severe or pervasive that a reasonable person viewing the conduct from the victim's perspective would find it so hostile, offensive or abusive so as to alter the terms and conditions of your employment. There is no evidence of derogatory comments, work hours were based upon the average hours worked before your on the job injury, sick and annual leave requests in the timekeeping system were corrected on 2 occasions (one systemic & one a human error), lunch time was extended due to your restrictions, and monthly doctors visits were a requirement for all with restrictions. There is also no evidence of your being worked outside of your restrictions i.e. outside of the modified job offer you agreed to based upon your restrictions. Finally, there is no evidence that your notice of removal remotely was associated with any harassment, nor your alleged disability.

"Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, supra, at 371.

Based on the above, you have failed to establish a *prima facie* case of harassment.

## PRETEXT

It remains for you to show that in spite of the articulated non-discriminatory explanation, an overall inference of discrimination can be discerned by a preponderance of the evidence. U.S. Postal Service Board of Governors v. Aikens, 460 U.S. at 714-17. In other words, you must show that the Postal Service was "more likely motivated by discriminatory reasons. [Citation omitted]" than not. Hill v. Social Security Administration, EEOC Appeal No. 01970512 (June 8, 2000). You may also show that the proffered explanation of the Postal Service is unworthy of credence. Texas Department of Community Affairs v. Burdine, 450 U.S. at 256. Essentially, the record must show that the Postal Service articulated a false reason and that its real reason was discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. at 515. Even if you showed, for the sake of argument only (because you have not done so), that the Postal Service engaged in an action that was an unsound business decision, was unfair, or was

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1.  FORM NUMBER/TITLE/DATE: EEOC Form 573, Notice of Appeal/Petition, January 2001
2.  AUTHORITY: 42 U.S.C. § 2000e-16
3.  PRINCIPAL PURPOSE: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.
4.  ROUTINE USES: Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.
5.  WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

Send your appeal to:

The Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 25

motivated by an ill feeling or arbitrariness, that is insufficient to show pretext. Keyes v. Secretary of the Navy, 853 F.2d 1016, 1026 (1st Cir. 1988). The record does not reflect that you have proved pretext for your claim.

Your allegation is general and unspecific as it relates to your efforts to provide a connection between the action taken and unlawful discrimination. Your allegation is, furthermore, unsupported by the totality of the record. In other words, there is nothing that shows by a preponderance of the evidence that the legitimate explanations given by the Postal Service were a pretext for discrimination. Hammons v. HUD, Request No. 05971093, EEOC Appeal No. 01955704 (August 10, 1997). Hence, management's nondiscriminatory reasons have not been proven to be a pretext for illegal discrimination.

## CONCLUSION

After carefully considering the entire record, and applying the legal standards outlined in Prewitt v. U.S. Postal Service, 662 F .2d 292 (5th Cir. 1981). I find that you have failed to prove that you were subjected to discrimination as alleged. Consequently, your case is now closed with a finding of no discrimination.

## APPEAL TO EEOC

You have the right to appeal the Postal Service's final decision to the Director, Office of Federal Operations, Equal Employment Opportunity Commission (EEOC), P.O. Box 19848, Washington, DC 20036-9848, within 30 calendar days of your receipt of this decision. You must use EEOC Appeal Form 573, a copy of which is enclosed, in connection with your appeal. You may also deliver your appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with your appeal, you must submit proof to the EEOC that a copy of the appeal and any supporting documentation or brief were also submitted to the National EEO Investigative Services Office, NEEOISO -- FAD, USPS, P. O. Box 21979, Tampa, FL 33622-1979. You are advised that if you file your appeal beyond the 30-day period set forth in the Commission's regulations, you should provide an explanation as to why your appeal should be accepted despite its untimeliness. If you cannot explain why your untimeliness should be excused in accordance with 29 C.F.R. 1614.604, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Alternatively, if you are dissatisfied with the Postal Service's decision in this case, you may file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of the Postal Service's final decision, within 90 calendar days

# NOTICE OF APPEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS
P.O. Box 19848
Washington, DC 20036

**Complainant Information: (Please Print or Type)**

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code): | |
| E-mail address (if any): | |

**Attorney/Representative Information (if any):**

| | |
|---|---|
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

**General Information:**

| | |
|---|---|
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the complaint arose: | |
| Has a final action been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | ____Yes; Date Received _____(Remember to attach a copy) <br> ____No <br> ____This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, another agency, or through any other administrative or collective bargaining procedures? | ____No <br> ____Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | ____No <br> ____Yes (Attach a copy of the civil action filed) |

NOTICE: Please attach a copy of the final decision or order from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC and with the agency within 30 days of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| | |
|---|---|
| Signature of complainant or complainant's representative: | |
| Date: | |

EEOC Form 573 REV 1/01 (page 1 of 1)

Final Agency Decision
Cynthia Benson
Agency Case No. 4J-604-0045-07
Page 26

of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered. If you choose to file a civil action, that action should be styled **Cynthia Benson v. John E. Potter, Postmaster General**. You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the District Judge. Your application must be filed within the same 90-day time period for filing the civil action.

*Doris a Hill*

Doris A. Hill
EEO Services Analyst                    Date: 9/10/07
NEEOISO
P. O. Box 21979
Tampa, FL 33622-1979

**Enclosure:** EEOC Appeal Form 573
cc:

Complainant

Cynthia Benson
7337 Southshore Dr Apt. 1430
Chicago, IL 60649-3538
        **Delivery Confirmation No:** 0306 3030 0002 0446 7589

Representative

Diana Hayes
PO Box 188
Bedford Park, IL 60499-9411
        **Delivery Confirmation No:** 0306 3030 0002 0446 7596

Manager, Human Resources
USPS, Central Illinois District
6801 W 73rd St
Bedford Park, IL 60499-9994

Regional Manager, EEO Compliance and Appeals
USPS, Great Lakes Area
244 Knollwood Dr., 2nd Floor
Bloomingdale, Ill 60117-3010